UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CONNOR PULLIAM, ERIC TRUONG,**  CIVIL ACTION   **25-1341**
**MAJELLA VILLAEBA, KATHERINE TEMPLETON,**
**ASSATA SIMPSON, and PAKANAN TONSAKUL,**
individually and on behalf of those similarly situated.

JURY TRIAL DEMANDED

**VERSUS**

**BANANA BLOSSOM THAI CAFÉ, LLC,**   Putative Collective Action
**and, RATTANASAK "JIMMY"**    Pursuant to 29 U.S.C. § 216(b)
**CHOTIKARNUL**

## COMPLAINT

NOW INTO COURT, through counsel, come Plaintiffs to allege on their own behalf and on behalf of those similarly situated:

1.    The Plaintiffs are all employees who have worked at the Banana Blossom restaurant in Gretna. Banana Blossom is owned by Rattanasak Chotikarnul, who uses the alias "Jimmy Cho."

2.    Jimmy has engaged in persistent wage theft from his employees for years.

3.    Specifically, he refused to pay time-and-a-half for overtime, illegally deducted credit card fees from employees' tips, and required servers to participate in an illegal tip pool.

4.    As a result, on a typical night under the illegal tip pool, servers only receive $55.86 for every $100.00 collected in tips – and no overtime:



5.　　Jimmy uses the stolen wages from his employees for personal gain, including a lavish lifestyle of travel. In one year alone, he visited more than a dozen countries.[1]

6.　　Starting in April 2025, the employees began to point out how unfair and illegal their pay structure was.

7.　　At a May 2, 2025 meeting, Plaintiff Connor Pulliam confronted Jimmy with information about the wage problems and a chart showing what an extreme outlier this illegal tip pool was.

8.　　In response to Plaintiffs' complaints of wage theft, Jimmy retaliated against his employees instead of fixing the problems. He made the employees come into work earlier, removed some shift meals, and required them to put their cell phones in a box.

9.　　He also specifically targeted Connor, having manager Sara single him out for a prohibition on picking up shifts. On May 4, 2025, she wrote:



10.　　All of this is illegal. Accordingly, Plaintiffs bring suit for compensation and accountability.

---

[1] Ian McNulty, *Adventurous modern Thai eatery Banana Blossom steps up but stays rooted in Gretna*, Times-Picayune (April 18, 2018).

## I.    JURISDICTION AND VENUE

11.    This Court has jurisdiction over Plaintiffs' claims of Fair Labor Standards Act, 29 U.S.C. 201, *et seq.*, (hereinafter "FLSA") violations, pursuant to 28 U.S.C. §§ 1331, 1343(a)(3). This Court has jurisdiction over Plaintiff's state law claims in accordance with 28 U.S.C. § 1367.

12.    The venue is proper in the Eastern District of Louisiana under 28 U.S.C. §1391(b)(2).  The events giving rise to the claim occurred in the Eastern District of Louisiana.

## II.    PARTIES

13.    Plaintiff Connor Pulliam is a person of the full age of majority maintaining a residence in the Eastern District of Louisiana. Connor has worked for Banana Blossom Thai Café, LLC. Connor is a representative and member of the proposed classes.

14.    Plaintiff Eric Truong is a person of the full age of majority maintaining a residence in the Eastern District of Louisiana. Eric has worked for Banana Blossom Thai Café, LLC. Connor is a representative and member of the proposed classes.

15.    Plaintiff Majella "MJ" Villaeba is a person of the full age of majority maintaining a residence in the Eastern District of Louisiana. MJ has worked for Banana Blossom Thai Café, LLC. MJ is a representative and member of the proposed classes.

16.    Plaintiff Katherine Templeton is a person of the full age of majority maintaining a residence in the Eastern District of Louisiana. Katherine has worked for Banana Blossom Thai Café, LLC. Katherine is a representative and member of the proposed classes.

17.    Plaintiff Assata Simpson is a person of the full age of majority maintaining a residence in the Eastern District of Louisiana. Assata has worked for Banana Blossom Thai Café, LLC. Assata is a representative and member of the proposed classes.

18.    <u>Plaintiff Pakanan Tonsakul</u> is a person of the full age of majority maintaining a residence in the Eastern District of Louisiana. Pakanan has worked for Banana Blossom, LLC. Pakanan is a representative and member of the proposed classes.

19.    <u>Defendant Banana Blossom Thai Café, LLC</u> ("Banana Blossom") is a Louisiana licensed Limited Liability Company, Charter No. 39003291K. Its principal place of business and headquarters are in Gretna, LA.

20.    <u>Defendant Rattanasak "Jimmy" Chotikarnul</u> is a person of the full age of majority maintaining a residence in the Eastern District of Louisiana. He is the owner of Banana Blossom. He goes by the alias "Jimmy Cho."[2]

21.    <u>Putative Overtime Class Members</u>: This class of similarly-situated employees ("Putative Overtime Class Members") generally consists of servers, expediters, hosts, bussers, and kitchen staff. More precisely, it consists of:

> All non-exempt individuals who (1) are or were employed by Banana Blossom Thai Café, LLC at any point from three years prior to the date of filing this complaint up to and including the date of final judgment in this matter, (2) are either the Named Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b); and (3) worked more than forty hours in at least one workweek, and were subject to Banana Blossom's blanket practice and/or policy of not paying overtime wages to employees working more than forty (40) hours per                                                                week.

22.    <u>Putative Tip Pool Class Members</u>: This class of similarly-situated employees ("Putative Tip Pool Class Members") generally consists of expediters and servers. More precisely, it consists of:

> All non-exempt individuals who (1) are or were employed by Banana Blossom Thai Café, LLC at any point from three years prior to the date of filing this complaint up to and including the date of final judgment in this matter, (2) are either the Named Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b); and (3) were subject to a tip credit being taken by Banana Blossom.

---

[2] Jabez Berniard, *Try This Dish: Barbecue shrimp and grits with a Thai twist at Banana Blossom in Gretna*, The Times-Picayune (Sept. 13, 2022).

23.     Each of the six Named Plaintiffs are a member of both the Putative Overtime Class and the Putative Tip Pool Class.

24.     Made Defendant herein is <u>XYZ Insurance Company</u>, which, upon information and belief, is the insurer providing coverage to Defendants for acts or omissions of officers and directors like the above-named Defendants.

### III.    FACTS

25.     Banana Blossom Thai Café, LLC ("Banana Blossom") is a restaurant in Gretna, Louisiana owned and operated by Rattanasak "Jimmy" Chotikarnkul since 2009.

26.     In the front of house, Banana Blossom employs servers and hosts.

27.     Until recently, servers were paid $5.00 per hour.

28.     Now they are paid $7.25 per hour.

29.     Hosts and bussers have been paid $12.00 - $14.00 per hour "depending on performance."

30.     Sometimes servers are required to work as "expediters" (also described as "expo").

31.     When they are acting as expediters, servers garnish and hand-off dine-in orders, take to-go orders over the phone, and pack and hand-off to-go orders to the host.

32.     Banana Blossom servers alternate clocking in as server or expediter.

33.     In the expediter role, employees remain in the kitchen and only interact with customers over the phone.

34.     While working as expediters, despite working in the back of the house, they were still only paid $5.00 per hour.[3]

35.     The kitchen is made up of five stations (not including expediters). Those stations are dishwasher (2-3 people), roti grill (1 person), fry cook (1 person), sauce station (2 people), and then the head chef.

**A.      Banana Blossom Violates the Law by Not Paying Overtime.**

36.     Banana Blossom does not pay overtime to non-exempt employees who work over 40 hours per week.

37.     This is evident from the face of employees' pay stubs.

38.     For example, one Plaintiff worked 94 hours in a two-week period in 2024, or 47 hours per week.

39.     She did not receive any overtime pay:



---

[3] Confusingly, on the pay stubs, host hours are labeled "EXPO." Expediter and server hours are combined and labeled "SERVER."

40.    Another Plaintiff worked 174 hours from April 1 to April 28, 2023 – or 43.5 hours per week.

41.    He also did not receive any overtime pay:



## B.    Banana Blossom Violates the Law by Requiring an Unlawful Tip Pool.

42.    Prior to mid-May 2025, Banana Blossom imposed a tip pool that allotted 10% of tips to kitchen staff, 5% to the host, a percentage to cover credit card processing fees, and split the remainder 50/50 between servers and "expeditors."

43.    Prior to mid-May 2025, servers and expeditors were paid below the minimum wage at $5.00 per hour and Banana Blossom claimed a tip credit.

44.    Connor estimated that Banana Blossom illegally required servers to tip out back-of-house staff approximately $300,000 over a three-year period.

45.    Connor has been employed by Banana Blossom for over three years and confirms that this tip-structure was in place in for at least those three years, and possibly going back further.

46.     On April 11, 2025, Plaintiff Connor Pulliam met with Jimmy to share concerns regarding Banana Blossom's illegal tip-out structure.

47.     Also, Banana Blossom's salaried manager, Kulisara Jinawong (aka "Sara Saur"), occasionally clocks in as a server.

48.     When Sara clocks in as a server, she receives tips from the tip pool.

49.     The tip pool structure worked like this:

   A.  All of the tips received from tables and to-go orders were pooled.

   B.  Then a flat percentage (most recently 2%) was taken out to go towards a credit card fee.

   C.  Then 10% of the remaining pool was taken out and divided evenly amongst kitchen staff.

   D.  Then 5% was taken out of the remaining pool and divided evenly between the host and busser.

   E.  Then the servers and expediters would each get even shares of the remaining pool.

50.     Thus, on a typical weekend night (*i.e.*, four servers, two expediters) or a typical lunch shift (*i.e.*, two servers, one expediter), the tip pool would look like the chart shown on the first page of this complaint.

51.     The following are Banana Blossom records showing the kitchen, host, and manager

Sara being included in the tip pool:

 

**C.**     **Banana Blossom Violates the Law by Unlawfully Deducting Credit Card Processing Fees from Employees' Tips**

52.     From 2012 to 2015, Banana Blossom deducted 3% from the tip pool to cover credit

card processing fees.

53.     After 2015, Banana Blossom increased the deduction to 5%.

54.     See below:



55.     Approximately one year ago, in 2024, Banana Blossom again adjusted the deduction: Banana Blossom deducted 2% from the tip pool, and also added a 3% surcharge for customers.

56.     None of these percentages were tied to the actual credit-card-processing fees.

57.     They were a flat deduction from tips that did not reflect variation among cards.

58.     Around mid-May 2025, Banana Blossom eliminated the credit card processing fee deduction.

**D.     Banana Blossom Violates the Law by Failing to Provide Required Notices.**

59.     Under the FLSA, Employers must provide the following information to tipped employees *before* taking a tip credit under the FLSA:

1.  the amount of the direct (or cash) wage the employer is paying a tipped employee, which must be at least $2.13 per hour;

2.  the additional amount claimed by the employer as a tip credit, which cannot exceed $5.12 (the difference between the minimum required direct (or cash) wage of $2.13 and the current minimum wage of $7.25);

3.  that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the tipped employee;

4.  that all tips received by the tipped employee are to be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and

5.  that the tip credit will not apply to any tipped employee unless the employee has been informed of these tip credit provisions.[4]

60.     An employer that fails to provide the required information cannot take the section 3(m)(2)(A) tip credit.[5]

---

[4] See https://www.dol.gov/agencies/whd/fact-sheets/15-tipped-employees-flsa.
[5] *Id.*

61.     Defendants did not inform Plaintiffs and similarly situated class members, by either oral or written notice, of items 1-5 above.

**E.    Banana Blossom Violates the Law by Retaliating Against Employees Who Complain About Wage Theft.**

62.     Starting in April 2025, Connor and other employees began raising concerns about the legality of their pay structure.

63.     On May 2, 2025, Jimmy and Banana Blossom Manager Sara met with employees Connor, Eric, Majella, Katherine, Assata, Christina, Mariecar, and Pakanan.

64.     Connor contacted other restaurants and workers and created a chart comparing Banana Blossom's pay structure with other local restaurants.

65.     Connor presented this chart to Jimmy at the May 2, 2025 meeting:

| Restaurant | Server Pay | Required Tip Out |
|---|---|---|
| Banana Blossom | $5/hr | ~41% |
| Reginelli's (NOLA) | $2.15/hr | 0% |
| Tchefuncte's (Madisonville) | $2.15/hr | 0% |
| High Hat Cafe (NOLA) | $2.13/hr | 0% |
| Romacelli (Lafayette) | $5/hr | 1% |
| Commander's Palace (NOLA) | $2.13/hr | 1% |
| Sushi Nami (Metairie) | $2.50/hr | 2% |
| Shaya (NOLA) | $2.13/hr | ~3% |
| Gyu Kaku (NOLA) | $5/hr | 3% |
| Kozoku (Mandeville) | $2.50/hr | 4% |
| Mint (NOLA) | $2.13/hr | 10% |

66.     At this second meeting, Connor and the other employees in attendance explained to Jimmy that, not only was the structure unusual in comparison to other local restaurants, but it was illegal.

67.     The employees reiterated that this was a collective complaint they all shared, not only Connor.

68.     They attempted to resolve the matter amicably and privately with Jimmy and requested only that the pay structure and wages be adjusted going forward.

69.     Jimmy agreed to meet with them again, "next Friday," May 9, 2025.

70.     After the meetings where employees notified Jimmy of these illegal practices, Banana Blossom subsequently adjusted the hourly rate for servers and expediters to meet the mandatory minimum wage of $7.25, and eliminated the credit card processing fee deductions.

71.     However, shortly thereafter, Jimmy and Banana Blossom retaliated against the Front of House employees and against Connor specifically.

72.     Banana Blossom imposed new restrictions on Front of House employees.

73.     For example, on May 6, 2025, it required employees to come in earlier for shifts, and threatened termination on the third occasion they arrive more than five minutes late, which was not previously the practice.

74.     See as follows:



75.    Banana Blossom also began requiring those employees to keep their phones in a "cell phone box" during shifts.

76.    See as follows:



77.    The "cell phone box" rule may have been intended to prevent Plaintiffs from collecting evidence.

78.    Also previously, employment at Banana Blossom included the benefit of a shift meal.

79.     After the meetings, Banana Blossom revoked that benefit for Front of House employees three nights a week:



80.     Banana Blossom also retaliated against Connor directly and other Front of House employees who needed shifts covered indirectly.

81.     On May 4, Manager Sara sent a group text to all Front of House employees prohibiting Connor from picking up anyone's shifts.

82.     Despite repeated requests for an explanation by both Connor and other employees, Sara and Jimmy refused to provide one.

83.     Connor was informed that this was "Jimmy's decision."

84.     Sara even intervened to stop Connor from aiding other employees by covering their shifts:



85.     On May 5, 2025, Jimmy called the parents of Connor's best friend, who are regulars at Banana Blossom.

86.     Jimmy told them that "Connor hasn't been acting right at work" and insinuated that Connor was mentally ill.

87.     Then he went to their house and talked to them further about Connor.

**F.    Banana Blossom Hires a Lawyer to Issue a Deceptive Opinion**

88.     On May 9, 2025, Jimmy and Manager Sara Saur met with employees Connor, Eric, Katherine, Christina, Marie, and Mew.

89.     At this meeting, Jimmy gave his employees a letter from his attorney.

90.     The letter from Jimmy's attorney, dated May 9, 2025 suggested that the tip pool is legal because Banana Blossom "does not take a tip credit."

91.     That was true *on May 9, 2025* – but it had not been true at any time prior to those last few weeks.

92.     That letter was therefore deceptive, because it suggested that Banana Blossom had complied with the law – when it had not.

93.     Plaintiffs have no indication that the lawyer intended to deceive; Jimmy may have deceived the lawyer.

94.     Banana Blossom is liable for period of time during which the tip structure they imposed was illegal, as well as for overtime violations, unlawful credit card processing fee deductions, retaliation, and ongoing illegal inclusion of Manager Sara in the tip pool.

## IV.    CLAIMS

### Count 1: Violation of the FLSA and Retaliation

95.     At all times hereinafter mentioned, Defendants have been employers within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

96.     At all times hereinafter mentioned, Defendant Banana Blossom has been an enterprise within the  meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

97.     At all times hereinafter mentioned, Defendant Banana Blossom has been an enterprise engaged in  commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in  commerce or in the production of goods for commerce, or employees handling, selling, or  otherwise working on goods or materials that have been moved in or produced for commerce by  any person and in that said enterprises have had and have an annual gross volume of sales made or  business done of not less than $500,000 (exclusive of excise taxes at the retail level which are  separately stated).

98.     At all times hereinafter mentioned, Plaintiffs and all those similarly situated were individual employees engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.23.

99.     Plaintiffs and the members of the putative class do not fall within any exemption of the FLSA and were required to be paid according to the dictates of that section.

100.     Defendant Banana Blossom's managers and officers, including Defendant Jimmy, directed the means and manner in which Plaintiffs were compensated.

### A. *Unlawful Overtime Violations*

101.      During the relevant time period, Defendants have violated, and are violating, the provisions of Sections 6 and/or 7 of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(2), by employing employees engaged in commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees minimum wages and/or for their employment in excess of 40 hours per week at rates no less than one and one-half the regular rates for which they were employed.

102.     Defendants' failure to properly pay employees was done so knowingly, willfully or in reckless disregard in carrying out its illegal pattern or practice.

103.     The decision by Defendants not to properly pay minimum and/or overtime compensation to its hourly employees was neither reasonable, nor in good faith.

104.     Accordingly, Plaintiffs and all those who are similarly situated are entitled to wages under the FLSA in an amount equal to one and one-half times their rate of pay, plus liquidated damages, attorney's fees and costs.

### B. *Illegal Tip-Pooling*

105.     Pursuant to 29 CFR 531.54 (d), an employer that pays its tipped employees the full minimum wage and does not take a Section 3(m)(2)(A) tip credit may impose a tip pooling arrangement that includes dishwashers, cooks, or other employees in the establishment who are not employed in an occupation in which employees customarily and regularly receive tips.

106.     Here, Banana Blossom imposed a required tip pool that allotted 10% of tips to kitchen staff, 5% to the host, a percentage to credit card fees, and split the remainder 50/50 between servers and "expeditors."

107.     Prior to mid-May 2025, servers and expeditors were paid below the minimum wage at $5.00 per hour and Banana Blossom claimed a tip credit. This was illegal.

108.     Additionally, 29 CFR 531.54 (c)(3) and (d) provide that an employer may not receive tips from such a tip pool and may not allow supervisors and managers to receive tips from the tip pool.

109.     A manager who works a shift as a server may keep tips they receive directly from customers based on service that they directly and solely provided, and they may be required to contribute some or all of those tips to a tip pool, but they cannot receive tips from the tip pool.[6]

110.     On occasion, a Banana Blossom manager, Kulisara Jinawong (aka "Sara Saur"), clocks in and works as a server.

111.     When Sara works a server shift, she receives tips from the tip pool.

112.     Based upon information and belief, Sara is continuing to work shifts as a server and receives tips from the tip-pool for those shifts.

113.     Accordingly, all of the servers and expediters are owed years of back wages for illegal tip pooling during all shifts when they were paid below the minimum wage and when Sara clocked in as a server.

---

[6] See https://www.dol.gov/agencies/whd/fact-sheets/15b-managers-supervisors-tips-flsa.

### C. Illegal Credit Card Processing Fee Deductions

114.    Under the FLSA, when tips are charged on customers' credit cards and the employer can show that it pays the credit card company a percentage on such sales as a fee for payment using a credit card, the employer may pay the employee the tip, less that percentage.[7]

115.    However, pursuant to section 3(m)(2)(B) of the FLSA, the employer cannot reduce the amount of tips paid to the employee by any amount greater than the transactional fee charged by the credit card company, regardless of whether or not it takes a tip credit.[8]

116.    Historically, Banana Blossom deducted 5% from the tip pool for credit card processing fees.

117.    That deduction was taken for both credit card and debit card sales.

118.    The amount deducted from the tip pool for purported "credit card processing" was greater than the actual transactional fees charged by the credit card companies.

119.    Later, the "credit card" deduction was reduced to 2%.

120.    But that 2% deduction was still charged for debit cards.

---

[7] https://www.dol.gov/agencies/whd/fact-sheets/15-tipped-employees-flsa.
[8] *Id.*; *see also*, 29 U.S.C. § 203(m)(2)(B)

121.    This is corroborated by the "Sales Report" forms, which had no line item for debit card sales:



122.    Accordingly, Banana Blossom is liable for statutory attorney fees and costs, and also up to 90 days penalty wages.

### D. Failure to Provide Notice to Tipped Employees

123.    As noted above, the tip pool was illegal because it shared tips between below-minimum-wage employees and above-minimum-wage employees, and also because tips were shared with a manager.

124.    But it was also illegal for another reason.

125.    Under the FLSA, employers must provide the following information to tipped employees *before* taking a tip credit under the FLSA:

1. the amount of the direct (or cash) wage the employer is paying a tipped employee, which must be at least $2.13 per hour;

2. the additional amount claimed by the employer as a tip credit, which cannot exceed $5.12 (the difference between the minimum required direct (or cash) wage of $2.13 and the current minimum wage of $7.25);

3.   that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the tipped employee;

4.   that all tips received by the tipped employee are to be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and

5.   that the tip credit will not apply to any tipped employee unless the employee has been informed of these tip credit provisions.[9]

126.    Employers may provide oral or written notice to tipped employees informing them of items 1-5 above.[10]

127.    An employer that fails to provide the required information cannot take the section 3(m)(2)(A) tip credit.[11]

128.    Defendants did not inform Plaintiffs and similarly situated class members, by either oral or written notice, of items 1-5 above.

129.    Despite not informing tipped employees as required by the FLSA, Defendants took a tip credit under the FLSA.

### E.    Retaliation

130.    Defendants had a policy of retaliation and punishment in direct violation of 29 USC 215(a)(3) for those who complained of and attempted to hold Defendants accountable for Defendants' FLSA violations.

131.    It is a violation of the FLSA for any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act…" *Fact Sheet # 73* (quotations omitted); 29 USC 215(a)(3). "Employees are protected regardless of whether the complaint is

---

[9] See https://www.dol.gov/agencies/whd/fact-sheets/15-tipped-employees-flsa.
[10] *Id.*
[11] *Id.*

made orally or in writing." *Id.*

132.    Defendants punished and retaliated against Plaintiff Connor Pulliam and the front of house employees after they notified Jimmy that Banana Blossom's practices were in violation of the FLSA.

133.    Defendants retaliated against Connor specifically by limiting his hours at Banana Blossom and prohibiting him from covering shifts for other employees.

134.    Defendants further retaliated against all Front of House employees by imposing new restrictions on them and terminating benefits.

**<u>Count 2 – Violation of Louisiana State Law: Illegal Fines</u>**

135.    Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth herein.

136.    Defendant's deduction of credit card processing fees was in violation of Louisiana law under La. R.S. 23:631, *et seq.* as an illegal fine.

137.    Violations of this section of the Louisiana Wage Payment Act also state that "[w]hoever violates the provisions of R.S. 23:634 or R.S. 23:635, shall be fined not less than twenty-five dollars nor more than one hundred dollars, or imprisoned for not less than thirty days nor more than three months." La. R.S. 23:636.

**<u>Count 3 – Violation of Louisiana State law: Conversion and Misappropriation</u>**

138.    Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth herein.

139.    Defendants' actions in withholding monies from employee paychecks, which said employees were owed, amounts to their conversion of funds under Louisiana law.  See La. Civ. Code art. 2315.

**Count 4 – Violation of Louisiana State Law: Failure to Pay Wages**
**Under LA. R.S. 23:621 *ET. SEQ.***

140.    Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth herein.

141.    Upon termination of an employee's employment, Defendants have refused to pay all past due earned wages to said employees.

142.    Several Plaintiffs' employment with Banana Blossom has terminated.

143.    They made a demand for their wages by letter on June 9, 2025.

144.    They have not been paid their full wages.

145.    They are entitled to statutory penalty wages, costs, attorney fees.

**Count 5- Louisiana Unfair Trade Practices Act**

146.    Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth therein.

147.    The Louisiana Unfair Trade Practices Act (LUTPA) makes it illegal to engage in unfair or deceptive acts of commerce.[12] LUTPA liability can attach to a wide range of practices that involve "fraud, misrepresentation, deception, breach of fiduciary duty, or other unethical conduct."[13]

148.    What constitutes an "unfair trade practice" is decided on a fact-intensive, case-to-case basis, but it is defined as a practice that is "unethical, oppressive, unscrupulous, or substantially injurious."[14]

149.    Plaintiffs notified Defendants that their business practices were illegal.

---

[12] La. R.S. 51:1401, *et seq.*

[13] *Tyler v. Rapid Cash, LLC*, 40,656 (La. App. 2 Cir. 5/17/06), 930 So. 2d 1135, 1140, quoting *A & W Sheet Metal Inc. v. Berg Mechanical, Inc.*, 26,799 (La.App.2d Cir.4/5/95), 653 So.2d 15.

[14] *Chem. Distributors, Inc. v. Exxon Corp.*, 1 F.3d 1478, 1485 (5th Cir. 1993), quoting *Marshall v. Citicorp Mortg., Inc.*, 601 So.2d 669, 670 (La.App.1992).

150. Defendants then retaliated against Plaintiffs.

151. This conduct is "unethical, oppressive, unscrupulous, or substantially injurious" conduct that triggers LUTPA. *Chem. Distributors, Inc. v. Exxon Corp.*, 1 F.3d 1478, 1485 (5th Cir. 1993).

152. Additionally, Defendants engaged in a fraudulent or deceptive practices related to the deduction of credit card processing fees.

153. From approximately 2015 to mid-2024, Defendants unlawfully deducted a 5% credit card processing fee from the employee tip pool, which is above the actual transactional fees charged by the credit card companies.

154. Then for an approximately one-year period from mid-2024 to mid-2025, Defendants deducted a 2% credit card processing fees from the employee tip pool, while also charging customers an added 3% surcharge for credit card processing to maintain a total of 5%.

155. That is to say, Banana Blossom took money from employees and told them it was to pay the credit card fees and *also* took money from the customers and told *them* that it was to pay the credit card fees.

156. That is explicitly deceptive double-dipping.

157. Furthermore, Defendants attempted to deceive Plaintiffs about the legality of the tip pool by having John D. Perez send a letter contending that the tip pool was legal.

158. Mr. Perez' letter contended that the tip pool was legal because Banana Blossom "does not take a tip credit."

159. But that was extremely misleading.

160. Banana Blossom had taken a tip credit for front-of-house employees for a decade and a half – and had only stopped days before Mr. Perez' letter.

161.    It was also wrong: the tip pool was still illegal because a manager continued to participate in it, and the required notices had not been provided.

162.    Furthermore, the employees notified the owner of Banana Blossom that his business practices were illegal. He then retaliated against them. This conduct is "unethical, oppressive, unscrupulous, or substantially injurious" conduct that triggers LUTPA.[15]

## V.    Collective Action Allegations

163.    Defendants employ or employed Plaintiffs and those similarly situated and were responsible for establishing and administering pay policies and practices, including pay classifications, salaries and overtime pay rates, during all times relevant to this Complaint.

164.    Defendants implemented common plans, policies and practices of not paying employees for any hours worked over 40, illegal tip-pooling, illegal credit card processing fee deductions, failure to provide notice to tipped employees, etc.

165.    Numerous employees have been victimized by this pattern, practice, and/or policy which are in willful violation of the FLSA.

166.    Many of these employees have worked with the named Plaintiffs, and named Plaintiffs have reported that the members of the putative classes were paid in the same manner and were not properly compensated as required by the FLSA.

167.    Thus, from their observations and discussions with these employees, Plaintiffs are aware that the illegal practices or policies of Defendants have been imposed on the members of the putative classes.

---

[15] Chem. Distributors, Inc. v. Exxon Corp., 1 F.3d 1478, 1485 (5th Cir. 1993).

168.    These employees are victims of Defendants' unlawful compensation practices and illegal pay schemes and are similarly situated to the Plaintiffs in terms of job duties, pay provisions and employment practices.

169.    Defendants' failure to pay wages at the rates required by the FLSA result from generally applicable, systematic policy and practice and which is not dependent on the personal circumstances of the members of the putative classes.

170.    Thus, Plaintiffs' experiences are typical of the experiences of the members of the putative classes.

171.    The specific job titles or precise job requirements of the various members of the putative classes does not prevent collective treatment.

172.    All of the members of the putative classes, regardless of their precise job requirements or rates of pay, are entitled to be properly compensated.

173.    Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

174.    Plaintiffs bring this action on behalf of themselves and the class as a collective action pursuant to the FLSA, 29 U.S.C. §§ 206, 207, and 216(b).

175.    The claims under the FLSA may be pursued by those who opt-in to this case under 29 U.S.C. § 216(b).

176.    The members of the class are so numerous that joinder of all other members of the class is impracticable.

177.    While the exact number of the other members of the class is unknown to Plaintiffs at this time and, can only be ascertained through applicable discovery, Plaintiffs believes there are more than 30 individuals in the class.

178.    The claims of Plaintiffs are typical of the claims of the class. The "No Overtime" policy, and illegal tip-pooling and deductions applied to Plaintiffs as well as other class-members.

179.    Common questions of law and fact exist as to the class which predominate over any questions only affecting other members of the class individually and include, but are not limited to, the following:

A.  Whether Plaintiffs and other members of the class were expected and/or required to work hours without proper compensation;

B.  Whether Defendants suffered and permitted Plaintiffs and other members of the class to work hours without proper compensation;

C.  Whether Defendants failed to pay Plaintiffs and other members of the class all overtime compensation due them for all hours worked in excess of forty (40) hours per week;

D.  Whether the tip-pooling structure implemented by Defendants was unlawful as imposed on Plaintiffs and other members of the class who were paid less than minimum wage when Defendants claimed a tip credit;

E.  Whether the tip-pooling structure implemented by Defendants was unlawful as imposed on Plaintiffs and other members of the class who were forced to share in the tip-pool with a salaried manager;

F.  Whether Defendants unlawfully deducted credit card processing fees from the wages of Plaintiffs and other members of the class;

G.  Whether tipped employees were provided notice of the statutory requirements;

H.  The correct statutes of limitations for Plaintiffs' claims and the claims of the other members of the class;

I.    Whether Plaintiffs and other members of the classes are entitled to damages, including but not limited to liquidated damages, and the measure of the damages; and,

J.    Whether Defendants are liable for interest, attorneys' interest, fees, and costs.

180.    Plaintiffs will fairly and adequately protect the interests of the class as their interests are aligned with those of the other members of the classes. Plaintiffs have no interests adverse to the classes and, Plaintiffs have retained competent counsel who are experienced in class action litigation.

181.    At all times relevant, Defendants did not have a good faith basis for its failure to pay the federal applicable overtime compensation to Plaintiffs and other members of the class for all hours worked in excess of forty hours per week, for implementing an unlawful tip-pool, and for unlawfully deducting credit card processing fees, and for failing to provide required notices.

**RELIEF REQUESTED**

182.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all questions of fact raised by the complaint.

183.    Wherefore Plaintiffs request judgment be entered against Defendants and that the Court grant the following:

A.    Designation of this cause as a collective action on behalf of the classes and promptly issue notice pursuant to 29 U.S.C. § 216(a), apprising class members of the pendency of this action and permitting other members of the classes to assert timely FLSA claims in this action by filing individual Consents under 29 U.S.C. § 216(b);

B.    For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiffs (and those who have joined in the suit) and for

liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs;[16]

C.   For an Order pursuant to Section 16(b) of the FLSA returning the unlawfully distributed tips from the illegal tip pool and an equal amount of liquidated damages;[17]

D.   For an Order awarding Plaintiffs (and those who have joined in the suit) the costs of this action;

E.   For an Order awarding Plaintiffs (and those who have joined in the suit) their attorneys' fees;

F.   For an Order awarding Plaintiffs unpaid benefits and compensation in connection with the FLSA violations;

G.   For an Order awarding Plaintiffs (and those who have joined in the suit) post-judgment interest at the highest rates allowed by law;

H.   Punitive damages for Defendants' retaliation against Plaintiffs per 29 USC 215(a)(3) as called for and described under 29 USC 216(b);

I.   All damages and remedies as called for in the FLSA;

J.   All relief as allowed under applicable Louisiana law, including late payment penalties and attorneys' fees pursuant La. R.S. 23:632, and all damages allowed by law related to Defendants' conversion, retaliation, unjust enrichment, and

---

[16] Notably, the back-of-house employees' wage for the purpose of calculating time-and-a-half should include their tips. Field Operations Handbook (FOH § 30d10(c) ("When an employee who is ineligible to participate in a tip pooling arrangement receives funds from a mandatory tip pool, those monies must be included in calculating the employee's regular rate of pay for purposes of overtime compensation.")

[17] Per 29 U.S.C. 216(b), remedies for an illegal tip pool include that the employer "shall be liable to the employee" for "all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages." The DOL's Field Operations Handbook (FOH § 30d10(b)) explains that "when an employer requires employees to contribute tips to a mandatory tip pool that includes an employer or ineligible employees or otherwise fails to meet the requirements of 29 CFR 531.54(b)-(d), the employer 'keep[s]' those tips in violation of 3(m)(2)(B)."

violations of the Louisiana Unfair Trade Practices Act, including attorneys' fees

and costs where appropriate;

K.  Declaratory relief;

L.  Judgment against Defendants for Plaintiffs' asserted causes of action; and

M. Order such further relief, at law or in equity, to which Plaintiffs may be entitled.

Respectfully Submitted:

/s/ Hope Phelps
WILLIAM MOST (La. Bar No. 36914)
HOPE PHELPS (La. Bar No. 37259)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 2500, # 9685
New Orleans, LA 70170
Tel: 504-500-7974
E-Mail: hopeaphelps@outlook.com

/s/ Kenneth C. Bordes
KENNETH C. BORDES (La. Bar No. 35668)
ABIGAIL FLORESCA (La. Bar No. 41248)
2725 Lapeyrouse St.
New Orleans, Louisiana 70119
Telephone: 504-588-2700
Facsimile: 504-708-1717
E-Mail: kcb@kennethbordes.com