**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CONNOR PULLIAM, ET AL.** | **CAFÉ, LLC,  ET AL.** |
| **VERSUS** | **CIVIL ACTION CASE NO.** |
| **BANANA BLOSSOM THAI** | **25-1341 SECTION: "G"(5)** |

TO:    Connor Pulliam, ET AL.
         Through their attorney of record
         William Most
         201 St Charles Ave Ste. 2500 #9685
         New Orleans, LA 70170
         Tel: (504) 509-5023
         Fax: (504) 414-6400
         williammost@gmail.com

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS**

NOW through undersigned counsel comes Defendant, Banana Blossom Thai Café, who in response to the Request for Admission, Interrogatories, and Requests for Production of Documents upon Defendant, respond as follows:

**REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 1:**

Banana Blossom Thai Café, LLC ("Banana Blossom") is a restaurant in Gretna, Louisiana

owned  and operated by Rattanasak "Jimmy" Chotikarnkul since 2009.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Admitted.

**REQUEST FOR ADMISSION NO. 2:**

In the front of house, Banana Blossom employs servers and hosts.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Admitted.

**REQUEST FOR ADMISSION NO. 3:**

Until recently, servers were paid $5.00 per hour.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Denied for lack of sufficient information to justify a belief therein.. Define recently. Unclear from question what time frame is being asked about.

**REQUEST FOR ADMISSION NO. 4:**

Currently, servers are paid $7.25 per hour.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Admitted.

**REQUEST FOR ADMISSION NO. 5:**

Hosts and bussers have been paid $12.00 - $14.00 per hour "depending on performance."

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 6:**

Sometimes servers are required to work as "expediters" (also described as "expo").

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Admitted.

**REQUEST FOR ADMISSION NO. 7:**

When they are acting as expediters, servers garnish and hand-off dine-in orders, take to-go orders over the phone, and pack and hand-off to-go orders to the host.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Admitted.

**REQUEST FOR ADMISSION NO. 8:**

Banana Blossom servers alternate clocking in as server or expediter.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 9:**

In the expediter role, employees remain in the kitchen and only interact with customers over the phone.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 10:**

While working as expediters, despite working in the back of the house, employees were still only paid $5.00 per hour.

2

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 11:**

The kitchen is made up of five stations (not including expediters). Those stations are dishwasher (2- 3 people), roti grill (1 person), fry cook (1 person), sauce station (2 people), and then the head chef.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Admitted.

**REQUEST FOR ADMISSION NO. 12:**

Banana Blossom did not pay overtime to non-exempt employees who work over 40 hours per week.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Denied. There is no intention for employees to work overtime. Any failure to pay would likely be an error by CPA.

**REQUEST FOR ADMISSION NO. 13:**

Prior to mid-May 2025, Banana Blossom imposed a tip pool that allotted 10% of tips to kitchen staff,  5% to the host, a percentage to cover credit card processing fees, and split the remainder 50/50  between servers and "expeditors."

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Denied for lack of sufficient information to justify a belief therein. Subject to and without waiver of the foregoing, beginning in 2009 employees agreed to a tip pool with the remainder being split among the front of the house.

**REQUEST FOR ADMISSION NO. 14:**

Prior to mid-May 2025, servers and expeditors were paid below the minimum wage at $5.00 per  hour and Banana Blossom claimed a tip credit.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Denied for lack of sufficient information to justify a belief therein.

3

**REQUEST FOR ADMISSION NO. 15:**

Banana Blossom required servers to tip out back-of-house staff approximately $300,000

over a  three-year period.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 16:**

The tip-structure identified in this lawsuit was in place in for at least three years, and possibly

going  back further.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 17:**

On April 11, 2025, Plaintiff Connor Pulliam met with Jimmy to share concerns regarding

Banana  Blossom's illegal tip-out structure.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 18:**

Banana Blossom's salaried manager, Kulisara Jinawong (aka "Sara Saur"),

occasionally  clocked/clocksin as a server.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Admitted.

**REQUEST FOR ADMISSION NO. 18:**

When Sara clocks in as a server, she receives tips from the tip pool.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18.**

Admitted.

**REQUEST FOR ADMISSION NO. 19:**

The tip pool structure worked like this: (1) All of the tips received from tables and to-go orders

were  pooled; (2) Then a flat percentage (most recently 2%) was taken out to go towards a credit

4

card fee;  (3) Then 10% of the remaining pool was taken out and divided evenly amongst kitchen staff; (4)  Then 5% was taken out of the remaining pool and divided evenly between the host and busser; (5)  Then the servers and expediters would each get even shares of the remaining pool.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Denied for lack of sufficient evidence to justify a belief therein.

**REQUEST FOR ADMISSION NO. 20:**

On a typical weekend night (i.e., four servers, two expediters) or a typical lunch shift (i.e., two  servers, one expediter), the tip pool would look like the chart shown on the first page of this  complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Denied for lack of  sufficient information to justify a belief therein. Overly vague as it is unclear as what is being requested is unclear as written.

**REQUEST FOR ADMISSION NO. 21:**

From 2012 to 2015, Banana Blossom deducted 3% from the tip pool stating it was to cover credit card  processing fees.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 22:**

After 2015, Banana Blossom increased the deduction referred to in request 21 to 5%.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 23:**

Approximately one year ago, in 2024, Banana Blossom again adjusted the deduction referenced in  Requests 21 and 22: Banana Blossom deducted 2% from the tip pool, and also added a 3% surcharge  for customers.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 24:**

The above-described percentages referenced in Requests 21, 22, and 23 were not tied to the actual credit-card-processing fees.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 25:**

Banana Blossom made flat deductions from tips that did not reflect variation among card fees that may have been charged.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**
Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 26:**

Around mid-May 2025, Banana Blossom eliminated the credit card processing fee deduction.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Denied for lack of sufficient evidence to justify a belief therein.

**REQUEST FOR ADMISSION NO. 27:**

Before taking a tip credit under the FLSA, Defendants did not inform Plaintiffs and similarly situated class members, by either oral or written notice, of

1. the amount of the direct (or cash) wage the employer is paying a tipped employee, which must be at least $2.13 per hour;

2. the additional amount claimed by the employer as a tip credit, which cannot exceed $5.12 (the difference between the minimum required direct (or cash) wage of $2.13 and the current minimum wage of $7.25);

3. that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the tipped employee;

4. that all tips received by the tipped employee are to be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and

5. that the tip credit will not apply to any tipped employee unless the employee has been informed of these tip credit provisions.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

6

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 28:**

On May 2, 2025, Jimmy and Banana Blossom Manager Sara met with employees Connor, Eric, Majella, Katherine, Assata, Christina, Mariecar, and Pakanan per their request related to ongoing wage complaints.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 29:**

At the meeting on May 2, 2025, Connor Pulliam presented a chart to Jimmy that included information comparing Banana Blossom's pay structure with other local restaurants.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 30:**

At this second meeting, Connor and the other employees in attendance explained to Jimmy that, not only was the structure unusual in comparison to other local restaurants, but it was illegal.

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 31:**

Jimmy agreed to meet with the employees again, "next Friday," May 9, 2025.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

Admitted.

**REQUEST FOR ADMISSION NO. 32:**

After the meetings where employees collectively stood up against these pay practices, Banana Blossom subsequently adjusted the hourly rate for servers and expediters to meet the mandatory minimum wage of $7.25, and eliminated the credit card processing fee deductions.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 33:**

After the meetings where employees collectively stood up against these pay practices, Jimmy and  Banana Blossom retaliated against the Front of House employees and against Connor specifically.

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 34:**

After the meetings where employees collectively stood up against these pay practices, Banana  Blossom imposed new restrictions on Front of House employees.

**RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 35:**

On May 6, 2025, Banana Blossom began requiring employees to come in earlier for shifts, and threatened termination on the third occasion they arrive more than five minutes late, which was not  previously the practice.

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 36:**

After the meetings where employees collectively stood up against these pay practices, Banana  Blossom began requiring employees to keep their phones in a "cell phone box" during shifts.

**RESPONSE TO REQUEST FOR ADMISSION NO. 36:**

Admitted.

**REQUEST FOR ADMISSION NO. 37:**

The "cell phone box" rule prevented Plaintiffs from collecting certain evidence of pay and credit  card complaints at issue during their shift.

**RESPONSE TO REQUEST FOR ADMISSION NO. 37:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 38:**

After the meetings where employees collectively stood up against these pay practices, Banana Blossom revoked the benefit of a shift meal for Front of House employees three nights a week.

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

Denied for lack of sufficient information to justify a belief therein

**REQUEST FOR ADMISSION NO. 39:**
Banana Blossom retaliated against Plaintiff Connor Pulliam directly and other Front of House employees who needed shifts covered indirectly.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 40:**

On May 4, Manager Sara sent a group text to all Front of House employees prohibiting Connor from picking up anyone's shifts.

**RESPONSE TO REQUEST FOR ADMISSION NO. 40:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 41:**

Despite repeated requests for an explanation by both Connor and other employees related to the prohibiting Connor from picking up anyone's shifts, Sara and Jimmy refused to provide one.

**RESPONSE TO REQUEST FOR ADMISSION NO. 41:**

Admitted.

**REQUEST FOR ADMISSION NO. 42:**

Connor was informed Banana Blossom's management that the prohibition from picking up shifts related to Connor was "Jimmy's decision."

**RESPONSE TO REQUEST FOR ADMISSION NO. 42:**
Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 42:**

Sara intervened to stop Connor from aiding other employees by covering their shifts.

**RESPONSE TO REQUEST FOR ADMISSION NO. 42:**

9

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 43**

On May 5, 2025, Jimmy called the parents of Connor's best friend, who are regulars at

Banana  Blossom.

**RESPONSE TO REQUEST FOR ADMISSION NO. 43:**
Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 44:**

Jimmy told the parents of Connor's best friend that "Connor hasn't been acting right at work"

and  insinuated that Connor was mentally ill.

**RESPONSE TO REQUEST FOR ADMISSION NO. 44:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 45:**

Jimmy went to the home of Connor's best friend's parents and talked to them about

Connor.

**RESPONSE TO REQUEST FOR ADMISSION NO. 45:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 46:**

On May 9, 2025, Jimmy and Manager Sara Saur met with employees Connor, Eric,

Katherine,  Christina, Marie, and Mew.

**RESPONSE TO REQUEST FOR ADMISSION NO. 46:**

Admitted.

**REQUEST FOR ADMISSION NO. 47:**

At the meeting on May 9, 2025, Jimmy gave his employees a letter from his

attorney.

**RESPONSE TO REQUEST FOR ADMISSION NO. 47:**

Admitted.

**REQUEST FOR ADMISSION NO. 48:**

The letter from Jimmy's attorney, dated May 9, 2025 suggested that the tip pool is legal

because  Banana Blossom "does not take a tip credit."

**RESPONSE TO REQUEST FOR ADMISSION NO. 48:**

Admitted.

**REQUEST FOR ADMISSION NO. 49:**

At the time of the May 9, 2025 letter, it was true that Defendant did not take a tip credit, but it had  not been true at any time prior to those last few weeks.

**RESPONSE TO REQUEST FOR ADMISSION NO. 49:**

Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 50:**

Admit that Jimmy has the power to hire employees

**RESPONSE TO REQUEST FOR ADMISSION NO. 50:**

Admitted.

**REQUEST FOR ADMISSION NO. 51:**

Admit that Jimmy has the power to fire employees

**RESPONSE TO REQUEST FOR ADMISSION NO. 51:**

Admitted.

**REQUEST FOR ADMISSION NO. 52:**

Admit that Jimmy supervises employees.

**RESPONSE TO REQUEST FOR ADMISSION NO. 52:**

Admitted.

**REQUEST FOR ADMISSION NO. 53:**

Admit that Jimmy controls the work schedules of employees.

**RESPONSE TO REQUEST FOR ADMISSION NO. 53:**
Denied for lack of sufficient information to justify a belief therein.

**REQUEST FOR ADMISSION NO. 54:**

Admit that Jimmy determines the method and rate of pay of employees.

**RESPONSE TO REQUEST FOR ADMISSION NO. 54:**

Admitted.

**REQUEST FOR ADMISSION NO. 55:**

Admit that you violated the FLSA overtime rules as described in paragraphs 101-104 of the  Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 55:**

Denied for lack of sufficient information to justify a belief therein. Legal conclusion reserved to the trier of fact.

**REQUEST FOR ADMISSION NO. 56:**

Admit that you violated the FLSA tip-pooling rules as described in paragraphs 105-113 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 56:**

Denied for lack of sufficient information to justify a belief therein. Legal conclusion reserved to the trier of fact.

**REQUEST FOR ADMISSION NO. 57:**

Admit that you violated the FLSA credit card fee deduction rules as described in paragraphs 114- 122 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 57:**

Denied for lack of sufficient information to justify a belief therein.Legal conclusion reserved to the trier of fact.

**REQUEST FOR ADMISSION NO. 58:**

Admit that you violated the FLSA notice rules as described in paragraphs 123-129 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 58**:

Denied for lack of sufficient information to justify a belief therein. Legal conclusion reserved to the trier of fact.

**REQUEST FOR ADMISSION NO. 59:**

Admit that you violated the FLSA retaliation prohibitions as described in paragraphs 130-134 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 59**:

Denied for lack of sufficient information to justify a belief therein.Legal conclusion reserved to the trier of fact.

**REQUEST FOR ADMISSION NO. 60:**

Admit that you violated the R.S. 23:631 as described in paragraphs 135-137 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 60**:

Denied for lack of sufficient information to justify a belief therein. Legal conclusion reserved to the trier of fact.

**REQUEST FOR ADMISSION NO. 61:**

Admit that you violated the R.S. 23:631 as described in paragraphs 135-137 of the

Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 61**:

Denied for lack of sufficient information to justify a belief therein.Legal conclusion reserved to the trier of fact.

**REQUEST FOR ADMISSION NO. 62:**

Admit that you engaged in conversion and misappropriation of funds as described in paragraphs

138-139 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 62**:

Denied for lack of sufficient information to justify a belief therein. Legal conclusion reserved to the trier of fact.

**REQUEST FOR ADMISSION NO. 63:**

Admit that you violated 23:621 et seq. as described in paragraphs 140-145 of the

Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 63**:

Denied for lack of sufficient information to justify a belief therein. Legal conclusion reserved to the trier of fact.

**REQUEST FOR ADMISSION NO. 64:**

Admit that you violated LUTPA as described in paragraphs 146-162 of the

Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 64**:

Denied for lack of sufficient information to justify a belief therein. Legal conclusion reserved to the trier of fact.

**REQUEST FOR ADMISSION NO. 65:**

Admit that the diagram on page 1 of Plaintiff's complaint is an accurate depiction of how tips

are  divided at Banana Blossom.

13

**RESPONSE TO REQUEST FOR ADMISSION NO. 65**:

Denied for lack of sufficient information to justify a belief therein.

**INTERROGATORIES**

**INTERROGATORY NO. 1**

For each Defendant, identify all your sources of income, and the amounts

thereof.

**RESPONSE TO INTERROGATORY NO. 1:**

Defendant objects to Interrogatory No. 1. as overly broad, burdensome and not reasonably directed

towards the discovery of relevant, admissible evidence.

**INTERROGATORY NO. 2:**

For each Defendant, detail all your assets (including financial assets, real property, moveable property, ownership interests in businesses, etc.) and income from January 1, 2020 to present.

**RESPONSE TO INTERROGATORY NO. 2:**

Defendant objects to Interrogatory No. 2 as overly broad, burdensome and not reasonably directed towards the discovery of relevant, admissible evidence.

**INTERROGATORY NO. 4:**

For each Defendant, describe your net worth for fiscal years 2020, 2021, 2022, 2023, 2024, and  2025.

**RESPONSE TO INTERROGATORY NO. 4:**

Defendant objects to Interrogatory No. 4 as overly broad, burdensome and not reasonably directed towards the discovery of relevant, admissible evidence.

**INTERROGATORY NO. 5:**

For each Defendant, identify all bank accounts owned or controlled by you, or that you have  access to.

**RESPONSE TO INTERROGATORY NO. 5:**

Defendant objects to Interrogatory No. 4 as overly broad, burdensome and not reasonably directed towards the discovery of relevant, admissible evidence.

**INTERROGATORY NO. 6:**

Identify all job positions of your employees that you contend are exempt from overtime pay under the FLSA.

**RESPONSE TO INTERROGATORY NO. 6.**

Defendant objects to this interrogatory as it is a legal conclusion reserved to the trier of fact.

14

**INTERROGATORY NO. 7:**

Identify all employees of yours, from January 2020 to the present, that you contend are exempt from overtime pay under the FLSA.

**RESPONSE TO INTERROGATORY NO. 7:**

Defendant objects to this interrogatory as it is a legal conclusion reserved to the trier of fact.

**INTERROGATORY NO. 8:**

Identify all persons or entities with ownership interests in Banana Blossom Thai Café,

LLC.

**RESPONSE TO INTERROGATORY NO. 8:**

Jimmy Chotikarnul is the sole owner.

**INTERROGATORY NO. 9:**

Describe each individual who creates, implements, and/or changes, your corporate policies (or has the authority to create, implement, and/or change), procedures, and/or practices applicable to the Plaintiffs regarding the following (in your response, please include the process, persons, and/or personnel responsible for communicating and overseeing these policies, procedures, and/or practices):

a. employment agreements,
b. wages (including all shift differentials and overtime and calculation of same),
c. recording all hours worked,
d. meal breaks (including automatic deductions and monitoring, recording, confirming, discouraging, and/or compensating interrupted meal breaks),  e. bonuses,
f. incentive pay (i.e. picking up shifts, recommending new hires, or otherwise),  g. 401k matches,
h. ERISA,
i. termination, and
j. employees filing any concerns or complaints regarding any of the above.

**RESPONSE TO INTERROGATORY NO. 9:**

a. There are no  written employment agreements.

b. CPA.

c. Time sheet to punch card.

d. Not applicable since meals are provided at end of shift.

e. No one

f. No one.

h. No retirement plan.

i. Only defendant is involved in termination.

j. Defendant has discussed issue with other business owners but makes policies alone.

**INTERROGATORY NO. 10:**

Please describe any and all complaints you have received regarding Plaintiffs' pay, compensation,  meal break policies (automatically deducted or otherwise), contracts, and/or Defendants' failure  to properly compensate Plaintiffs and/or pay Plaintiffs' overtime compensation.

 In your answer please be sure to identify and describe any system(s) for lodging such complaints  and where they are stored. Please include the date(s) such conversation(s) or communication(s)  took place, any witness(es) that were present to those conversations or communications, a  description of the substance of those communications or conversations, and the resulting action  that took place.

**RESPONSE TO INTERROGATORY NO. 10:**

Defendant objects to Interrogatory No. 10 as overly broad, burdensome and not reasonably directed towards the discovery of relevant, admissible evidence.

**INTERROGATORY NO. 11:**

Please identify the individual(s) or employee(s) responsible for computing the weekly wages due  to and/or paid to Plaintiffs, any payroll systems used, as well as the amount of any employee  benefit plan for which Plaintiffs are/were eligible during their employment with Defendants.

**RESPONSE TO INTERROGATORY NO. 11:**

On information and belief the CPA and ADP are responsible.

**INTERROGATORY No. 12:**

If you contend the diagram on page 1 of Plaintiff's complaint is not an accurate depiction of

how  tips are divided at Banana Blossom, explain how you contend it is wrong.

**RESPONSE TO INTERROGATORY NO. 12:**

Objection. Subject to work product privilege.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:**

If your response to any Request for Admission is less than an unequivocal admission, produce all documents supporting your response.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Documents responsive to this request have been asked for and will be provided upon receipt.

**REQUEST FOR PRODUCTION NO. 2:**

Produce all documents comprising the entire personnel files of Plaintiffs Connor Pulliam, Eric Truong, Majella "MJ" Villaeba, Katherine Templeton, Assata Simpson, and Pakanan Tonsakul.

16

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

None.

**REQUEST FOR PRODUCTION NO. 3:**

All employee handbooks, company policy manuals, and/or personnel manuals in effect from January 1, 2020 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

None.

**REQUEST FOR PRODUCTION NO. 4:**

All policies regarding overtime, including handbooks, manuals, written procedures and policies, emails, and memoranda.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Defendant does not have information responsive to this Request for Production other than to say all policies and procedures were made orally.

**REQUEST FOR PRODUCTION NO. 5:**

All payroll records from January 1, 2020 to the present, including but not limited to the pay received by Plaintiffs on a weekly basis and/or any compensation made to Plaintiffs by either cash, check, or any other form of payment. This would include all ADP Earnings Statements, as depicted in para. 39 of the Complaint, all paycheck stubs, as depicted in para. 41 of the Complaint, and all credit card records reflecting tips received.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Documents responsive to this request have already been provided to opposing counsel. Any additional documents responsive to this request will be supplemented as they are discovered.

**REQUEST FOR PRODUCTION NO. 6:**

All time records, time cards, time sheets or other documents identifying or describing the hours worked by employees each week from January 1, 2020 to the present. This request includes but is not limited to any attendance sheets, all work or shift schedules, any time entered into Defendant's time keeping system (both written and electronic), any time kept by an office manager or supervisor, or other documents identifying or describing the hours worked.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Documents responsive to this request have been asked for and will be provided upon receipt.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce a copy of all contracts for work on which Plaintiffs were employed.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

There are no formal contracts between Defendants and Plaintiffs.

**REQUEST FOR PRODUCTION NO. 8:**

Each Defendant's tax returns for all years 2020 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Objection overly burdensome, not reasonably directed to the relevance of admissible evidence.

**REQUEST FOR PRODUCTION NO. 9:**

All documents reflecting a summary of each Defendant's assets and liabilities, in any of the years 2020 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Objection overly burdensome, not reasonably directed to the relevance of admissible evidence.

**REQUEST FOR PRODUCTION NO. 10:**

All documents reflecting your net worth, in any of the 2020 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Objection overly burdensome, not reasonably directed to the relevance of admissible evidence.

**REQUEST FOR PRODUCTION NO. 11:**

All photographs, films, videotapes, or audio recordings of Plaintiffs, which are in Defendants' possession, custody or control.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Defendant is not in possession of any items responsive to this request.

**REQUEST FOR PRODUCTION NO. 12:**

All emails and text messages of any Defendant or manager containing the terms "overtime" or "over 40" or "over forty" or "more than 40" or "more than forty" or "time and a half" or "salary."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

None.

**REQUEST FOR PRODUCTION NO. 13:**

All electronic communications, including e-mails, text messages, and other electronic messages concerning Plaintiffs, Plaintiffs' time worked, time keeping, time cards, time sheets, time worked, overtime, overtime policies, calculation of overtime, tip compensation, Plaintiffs' pay, and Plaintiffs' job duties or responsibilities.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Documents responsive to this request have been asked for and will be provided upon receipt.

**REQUEST FOR PRODUCTION NO. 14:**

All offers of employment to Plaintiffs, including any offer letters, employment contracts, job descriptions, etc.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Defendant is not in possession of any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 15:**

All job descriptions or other documents identifying or describing job duties from January 1, 2020 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Defendant is not in possession of any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 16:**

All documents reflecting, indicating or relating to any statements taken or received by Defendant, its attorneys or representatives, from any person who has information or knowledge relating to the events alleged in Plaintiffs' complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Objection. Subject to work product privilege.

**REQUEST FOR PRODUCTION NO. 17:**

All documents, including but not limited to e-mails, concerning claims of any employee regarding  Defendants' failure to properly pay wages and/or overtime wages.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

None.

**REQUEST FOR PRODUCTION NO. 18:**

All documents prepared for government agencies (e.g. Internal Revenue Service, Immigration Customs Enforcement, Department of Labor, Equal Employment Opportunity Commission, etc.) demonstrating the employment and compensation of Plaintiffs if any such documents exist.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Documents responsive to this request have been asked for and will be provided upon receipt.

**REQUEST FOR PRODUCTION NO. 19:**

All lists of employees from January 1, 2020 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Documents responsive to this request have been asked for and will be provided upon receipt.

**REQUEST FOR PRODUCTION NO. 20:**

All personnel and payroll records regarding named Plaintiffs, as well as any other file or collection  of documents maintained by Defendant and/or its employees concerning Plaintiffs

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Objection. Duplicative.

**REQUEST FOR PRODUCTION NO. 21:**

All correspondence, including emails and text messages, between Jimmy and

Sara.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Objection overly broad, burdensome and not reasonably directed towards the discovery of relevant, admissible evidence.

**REQUEST FOR PRODUCTION NO. 22:**

All documents that identify, describe, or relate to any claim that Defendants' method of compensating Plaintiff was performed with a good faith, reasonable belief that Defendant was complying with the Fair Labor Standards Act relating to minimum wage and overtime compensation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Objection. Legal conclusion reserved to the trier of fact.

**REQUEST FOR PRODUCTION NO. 23:**

All documents obtained as a result of releases and/or subpoenas relating to this case.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Documents responsive to this request have been asked for and will be provided upon receipt.

**REQUEST FOR PRODUCTION NO. 24:**

All documents reflecting evidence of ownership, control, or management of

Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Documents responsive to this request have been asked for and will be provided upon receipt.

**REQUEST FOR PRODUCTION NO. 25:**

All form W-2s or 1099s prepared for Plaintiffs by Defendants and/or their agents or

accountants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Defendant objects to the Request as redundant.

**REQUEST FOR PRODUCTION NO. 26:**

All documents reflecting the number of employees of Defendants, including government report forms reflecting the number of employees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Defendant objects to the Request as redundant.

**REQUEST FOR PRODUCTION NO. 27:**

Any documented work schedules reflecting when Plaintiffs worked for Defendants from January 1, 2020 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Defendant objects to this request as overly broad, burdensome and not reasonably directed towards the discovery of relevant, admissible evidence.

**REQUEST FOR PRODUCTION NO. 28:**

If any Defendant claims that it relied upon any opinion, ruling, regulation, document, or interpretation or decision of any kind issued, promulgated, or drafted by the United States Department of Labor as a basis for its failure to pay Plaintiffs minimum wage or overtime compensation or as a basis for claiming that it has paid Plaintiffs overtime compensation, please produce all such documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Defendant objects to this request; it is a legal conclusion reserved to the trier of fact.

**REQUEST FOR PRODUCTION NO. 29:**

With respect to any audits, reconciliations, reviews, or investigations by the U.S. Department of Labor, Wage and Hour Division, on or after 2015 of any Defendant or any entity owned in whole or in part by Defendants, produce all correspondence, reports, schedules, work papers, opinions and other documents that relate to or pertain to said inquiry by the DOL of Defendants' compensation policies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

None.

**REQUEST FOR PRODUCTION NO. 30**

With respect to any lawsuits filed against any Defendant on or after 2015 relating to the payment of overtime compensation, produce all pleadings, all answers to interrogatories, all responses to requests for admissions, all settlement documents, releases, waivers, and confidentiality agreements.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

None.

**REQUEST FOR PRODUCTION NO. 31:**

Any and all documents identifying retroactive payment of wages or compensation under the supervision of the administrator of the Wage and Hour Division, U.S. Department of Labor, including the amount of such payment to each employee, the period covered by such employment,

the date of the payment, and the name(s) of the employee(s) to whom such payment was made.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

None.

**REQUEST FOR PRODUCTION NO. 32:**

Defendants' policies/procedures (and any evidence thereof, including any evidence contained in any company manual, policy book, orientation program, and/or online website or portal, or in any other storage mechanism), regarding Defendants' wage and hour pay policies, tip policies, procedures and practices, including payroll practice guidelines, record keeping guidelines, directives, memoranda or other documents to supervisors or other managerial personnel regarding the number of hours worked by Defendant's employees employed in a similar capacity, Defendant's practices with respect to the payment of overtime compensation to employees such as Plaintiffs, and the policies and practices of the Defendant relating to maintenance of records of hours worked by employees similarly situated to Plaintiffs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

None.

**REQUEST FOR PRODUCTION NO. 33:**

Any records or documents of any kind (including video, audio or other digital tapes) that may establish when and how many hours (and what hours on each particular day) Plaintiffs performed work for Defendants from January 2018 to the present, whether Plaintiff was compensated properly or not for all such hours.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

None.

**REQUEST FOR PRODUCTION NO. 34:**

All documents that evidence the terms and conditions of Plaintiffs' employment with Defendant, including any written contracts and/or agreements of any nature between Plaintiffs and Defendants and all company and personnel manuals, employee handbooks, and memos that Defendant provided to Plaintiffs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

None.

**REQUEST FOR PRODUCTION NO. 35:**

Any and all indexes, matrixes, scales, schematics, charts, ratios, analysis, records, emails, text messages, logs, data files, calendar notes, correspondence or other documents relating to the Defendants' budgeted labor policies, plans, practices and/or schemes (including those for certain units, facilities, or otherwise).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Objection overly burdensome, not reasonably directed to the relevance of admissible evidence.

**REQUEST FOR PRODUCTION NO. 36:**

Any and all documents Defendant intends to use in defense of Plaintiffs' claims in the

Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**
Documents responsive to this request have been asked for and will be provided upon receipt.

**REQUEST FOR PRODUCTION NO. 37:**

Any and all documents in Defendant's possession identified in the Defendants' Rule 26(a)(1) disclosures.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**
Documents responsive to this request have been asked for and will be provided upon receipt.

**REQUEST FOR PRODUCTION NO. 38:**

Any and all documents Defendant relied upon as a basis for responding to Plaintiffs' Interrogatories to Defendant.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Defendant objects to the Request as redundant.

**REQUEST FOR PRODUCTION NO. 39:**

All documents evidencing the reporting of Plaintiffs' earnings to all third parties, which shall include, but shall not be limited to, insurance carriers, insurance agents and/or representatives, federal, state and local taxing authorities and the Louisiana Unemployment Compensation Fund.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Defendant objects to the Request as redundant.

**REQUEST FOR PRODUCTION NO. 40:**

To the extent that any part of the remuneration and/or compensatio

n paid to Plaintiffs was not reflected in Plaintiffs' pay check, produce all documents evidencing the amount, date and nature and purpose of all such payments.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

None.

**REQUEST FOR PRODUCTION NO. 41:**

If any Defendant claims that he relied on an attorney's opinion indicating that his pay policy at issue in this case was FLSA compliant, please provide all notes, documents, writing and/or correspondence, wherein Defendant discussed the pay policy at issue with their attorney(s), prior to the commencement of the instant lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

None.

**REQUEST FOR PRODUCTION NO. 42:**

If any Defendant claims that he relied on an opinion from the United States Department of Labor, that his pay policy, which is at issue in this case, was FLSA compliant, provide all notes,

documents, writings and/or correspondence wherein Defendant discussed the pay policy at issue with its attorney(s) prior to the commencement of the instant.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

None.

**REQUEST FOR PRODUCTION NO. 43:**

All EEOC charges naming Banana Blossom Thai Café, LLC, as a responding party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

None.

**REQUEST FOR PRODUCTION NO. 44:**

All complaints (including resignation letters) complaining of the pay structure or retaliation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

None.

**REQUEST FOR PRODUCTION NO. 45:**

All loan applications for any Defendant.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Objection not reasonably directed towards the discovery of relevant, admissible evidence

**REQUEST FOR PRODUCTION NO. 46:**

All applications submitted to the state or federal government for loans or funding, including PPE, EIDL, etc. applications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Objection not reasonably directed towards the discovery of relevant, admissible evidence

**REQUEST FOR PRODUCTION NO. 47:**

All records, including Toast Statements, showing the credit card processing fee information from January 1, 2020 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Documents responsive to this request have been asked for and will be provided upon receipt.

**REQUEST FOR PRODUCTION NO. 48:**

All tip pool workbooks (see para 51 of the complaint) and "Sale Report" worksheets (see para 54 of the complaint) from January 1, 2020 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Documents responsive to this request have been asked for and will be provided upon receipt.

**REQUEST FOR PRODUCTION NO. 49:**

All versions, including native versions, of the "Chopping block list."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Documents responsive to this request have been asked for and will be provided upon receipt.

Respectfully submitted, this the 20th day of October, 2025

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney hereby certifies that he has served a copy of the foregoing pleading to all counsel of record, by hand delivery, electronic mail, facsimile or by placing a copy of the same properly addressed in the U.S. Mail, with adequate postage affixed thereto on the 20th day of October 2025.

<u>/s/ Julia Holt</u>
**KATHERINE JULIA HOLT(#39915)**

**BUTLER MCDONALD**

BY:    <u>/s/ Julia Holt</u>
DAVID M. MCDONALD (#30625)
JOHN D. PEREZ (#39302)
MARK R. LADD (#30847)
**KATHERINE JULIA HOLT(#39915)**
3939 N. Causeway Blvd., Suite 301
Metairie, Louisiana 70002
Telephone: (504) 285-5440
Facsimile: (504) 407-2101
e-mail: jperez@bmcdlaw.com
e-mail: jholt@bmcdlaw.com
**Counsel for Defendants**