**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CONNOR PULLIAM, ET AL.** | **CIVIL ACTION NO. 25-1341** |
| **VERSUS** | **SECTION "G" (5)** |
| **BANANA BLOSSOM THAI CAFÉ, LLC, ET AL.** | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR COLLECTIVE ACTION CERTIFICATION**

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs Connor Pulliam, Eric Truong, Majella Villaeba, Katherine Templeton, Assata Simpson, and Pakanan Tonsakul (collectively "Plaintiffs"), who file this *Memorandum in Support of Plaintiffs' Motion for Collective Action Certification*, to wit:

**I.    PROCEDURAL HISTORY**

Plaintiffs filed this putative collective action under 29 U.S.C. § 216(b) on behalf of themselves and other similarly situated Banana Blossom employees ("Putative Class Members") against Defendants for violations of the Fair Labor Standards Act ("FLSA").

Discovery closed on May 29, 2026, according to this Court's Scheduling Order (ECF No. 11). Over the last year, the parties engaged in discovery with respect to collective action certification in this matter.

On September 18, 2025, Plaintiffs propounded a set of written discovery requests on Defendants, including requests for admissions, interrogatories, and requests for production of documents. Banana Blossom propounded incomplete answers on October 20, 2025, and supplemental documents were produced on October 24, 2025, which included recent pages from the Tip Log Book, additional paystubs, and credit card processing fees. On November 26, 2025, Plaintiffs requested to meet and confer with Defendants on several missing discovery responses, including

communications and financial records. On December 5, 2025, Defendants agreed to produce the records within two weeks, but failed to do so. A second set of requests for admissions were served on Defendants on April 14, 2026, and due to Defendants' failure to respond, are deemed admitted by automatic operation of Fed. R. Civ. Proc. 36(a)(3). *See Gauthe v. Mercer*, Civil Action No. 15-26, 2015 WL 5320651, at * 2 (M.D. La. Sept. 11, 2015). These admissions are consistent with 30(b)(6) testimony that Banana Blossom failed to maintain records of timesheets and tip pool distributions.

The deposition of Banana Blossom's manager was noticed for May 19, 2026. The 30(b)(6) deposition of Banana Blossom was noticed for May 21, 2026 via Zoom. Jimmy Cho's deposition was also noticed (and Jimmy was subpoenaed) for May 21, 2026 to follow the 30(b)(6). Defendants' accountant was subpoenaed for their deposition for May, 22, 2026.

On May 19, 2026, Banana Blossom's manager was deposed, and counsel for Defendants did not appear to defend. On this date, Plaintiffs also learned that Defendant Rattanasak Chotikarnkul, who goes by the name, "Jimmy Cho," had just left the country. As Defendants failed to appear for the May 21, 2026 deposition, it was rescheduled for May 26. On May 22, 2026, Defendants' accountant was deposed, and counsel for Defendants did not appear to defend. On May 26, 2026, Defendant Cho was deposed both as Banana Blossom's corporate representative and as an individual.

Currently pending before this Court is a *Motion to Compel Production* (ECF No. 26) which will supplement the evidence regarding this motion. Additionally, Plaintiffs are awaiting completion of deposition transcripts that will supplement the evidence regarding this motion. Plaintiffs reserve the right, subject to court approval, to supplement this Motion once the Motion to Compel is resolved and depositions are fully transcribed. Finally, on June 25, 2026, Defendants are ordered to show cause why they should not be sanctioned for their failure to attend the May 19, 2026 settlement conference.

II.    LEGAL BACKGROUND

A. **Collective Actions are Intended to Promote the Efficient Enforcement of FLSA Violations by the Same Employers**

The FLSA establishes federal minimum wage, overtime, and tip regulations that cannot be modified by contract. Section 16(b) of the FLSA, 52 Stat. 1060, as amended, 29 U.S.C. § 216(b), gives employees the right to bring a private cause of action on their own behalf and on behalf of other employees similarly situated for specified violations of the FLSA. *See Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523, 1527 (U.S. 2013) (*citing Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989)).

To participate in a collective action, each employee must give their consent in writing by notifying the court of their intent to opt in. *See* 29 U.S.C. ¶ 216(b)(5). A district court has broad discretion in deciding whether to grant or deny certification and broad authority over notice in order to prevent misuse of such actions. *Hoffman La Roche, Inc.*, 493 U.S. at 170. In *Swales*, the Fifth Circuit directed courts to (1) identify, at the outset of litigation, the facts and legal considerations material to a determination of whether workers are similarly situated for purposes of answering merits questions collectively, and (2) determine, based on all available evidence, whether and to whom the opt-in notice should be distributed. *Swales v. KLLM Transport Services, LLC*, 985 F.3d 430, 435-441 (5th Cir. 2021).

The FLSA's collective action provision is designed to promote two goals: "(1) enforcement (by preventing violations and letting employees pool resources when seeking relief); and (2) efficiency (by resolving common issues in a single action)." *Swales*, 985 F.3d 430, 435 (5th Cir. 2021).

Section 216(b) thus benefits courts and claimants alike: the "judicial system benefits by efficient resolution in one proceeding of common issues of law and fact" caused by the same unlawful employment practices, whereas employees harmed by an employer's unlawful pay practices receive "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche*, 493 U.S. at 170. However, these benefits depend upon the trial court's issuance of "accurate

3

and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate." *Id.* at 170.

### B. Swales Re-Urged Courts to Focus on the FLSA's "Similarly Situated" Requirement

In *Swales*, 985 F.3d 430 (5th Cir. 2021), the Fifth Circuit explicitly rejected the "near-universal" *Lusardi* two-stage certification process. In the Fifth Circuit's view, the *Lusardi* framework "distracts district courts from the ultimate issue[] before it" – whether employees who wish to challenge their employer's unlawful wage practices are "similarly situated" for the purposes of Section 216(b). *Id.* at 440. While the Fifth Circuit continued to refrain from formally adopting a legal standard regarding whether employees are "similarly situated," the Fifth Circuit reminded district courts that issuing notice is justified if the "pleadings and only preliminary discovery show sufficient similarity between the plaintiffs' employment situations." *Id.* at 441-442. In its conclusion, the Fifth Circuit reaffirmed that "the district court has broad, litigation-management discretion" to authorize collective actions under the FLSA. *Id.* at 443.

*Swales* ultimately <u>did not</u> limit the trial court's discretion in determining whether notice is justified, but rather confirmed this Court's wide latitude to make determination on certification. In the post-*Swales* Fifth Circuit, district courts have exercised broad discretion to certify collective actions.[1] For instance, in *Segovia v. Fuelco Energy LLC*, the Western District of Texas explained that:

> "[S]imilarly situated," as required for pursuit of an FLSA collective action, clearly differs from "identically situated." . . . They may do that by showing "some factual

---

[1] *See e.g., Powell v. One Source EHS, L.L.C.*, No. CV 20-161-SDD-RLB, 2021 WL 4227064 (M.D. La. Sept. 16, 2021) (certifying the proposed collective action after finding "any factual differences such as 'base' compensation, dates worked, worked performed, and job titles are irrelevant"); *Young v. Energy Drilling Co.*, No. Civ. A. 4:20-cv-1716, 2021 WL 1550343 (S.D. Tex. Apr. 20, 2021) (granting a motion to certify as "whether the employees in the identified positions were subjected to the same pay practice as Young, and therefore are similarly situated, does not depend on the employees' specific job duties or where the employee worked"); *T.S. v. The Burke Foundation*, No Civ. A. 1:19-cv-809, 2021 WL 1807994 (W.D. Tex. Feb. 22, 2021); *Hernandez v. Pritchard Indus. (Southwest), LLC*, No. Civ. A. 20-cv-0508, 2021 WL 1146005 (W.D. Tex. Mar. 25, 2021); *Badon v. Berry's Reliable Resource, LLC*, No. Civ. A. 19-cv-12317, 2021 WL 933033 (E.D. La. Mar. 11, 2021) (affirming certification of a collective action following *Swales*).

nexus which binds" them and opt-in plaintiffs . . .as alleged victims of a particular policy or practice . . . .

Even if there are "numerous differences between individual plaintiffs," such differences will not preclude a collective action unless they are material to ultimate issues before the trial court. Undoubtedly, when "one zooms in close enough on anything, differences will abound;" but courts must consider the claims asserted "at a higher level of abstraction."

*Segovia v. Fuelco Energy LLC*, 2021 U.S. Dist. LEXIS 101258, at *21-23 (W.D. Tex. May 28, 2021)

(internal citations omitted).

### III.    DISCUSSION

**A. Banana Blossom's Common Practice of Not Paying Overtime is Evidenced by  (1) Employees' Pay Stubs, (2) Written Admissions (3) Admissions by Defendants' Manager, Accountant, and Owner, (4) and Stipulation by Defendants' Counsel.**

Employee's paystubs prove the common practice of failing to pay overtime. Attached as an exhibit herein is a sample of employee paystubs between 2022-2024 produced by Defendants' accountant reflecting various employees (including named Plaintiffs) in the server and expediter positions who worked more than 40 hours per week who were not paid at an overtime rate. *See* Exhibit 1, Employee Pay Stub Excerpt. As demonstrated in this exhibit, all the employees who worked more than 40 hours per week were compensated straight time only. *Id.* Employees were paid straight-time only regardless of pay rate (ranging from $5.00 - $10.00 per hour). *Id.*

This practice is corroborated by Defendants' responses/failure to respond to Plaintiffs' Requests for Admissions. Attached as an exhibit herein are Defendants' Responses to Plaintiffs' First Set of Request for Admission Responses and Plaintiffs' Second Set of Requests for Admissions. *See* Exhibit 2, Defendants' Discovery Responses. Plaintiff requested Defendants to admit "Banana Blossom did not pay overtime to non-exempt employees who work over 40 hours per week." Defendants partially denied the request, stating, "[t]here is no intention for employees to work overtime. Any failure to pay would likely be an error by CPA." Exhibit 2, Defendants' Response to Request for Admission No. 12. Defendants failed to provide any documentation evidencing this policy

5

that employees did not work overtime, nor any documentation supporting the contention that the CPA made a unilateral error. Defendants also admitted that Jimmy determined all employee's rates and methods of pay. This denial is very clearly refuted by the numerous paystubs showing employees worked far more than 160 hours within a one-month period, or 40 hours per week. For example, see Plaintiff Katherine Templeton's check on June 5, 2024:



Within a four-week period, Katherine worked an average of 60.5 hours per week. Exhibit 1. However, she was only compensated at a rate of $5.00 for all those hours. Although Defendants admitted they destroyed employee time records (ECF. No. 27-1, Exhibit 2, RFA No. 70), the remaining records available support the existence of a long-time company-wide policy of failing to pay overtime. Exhibit 1.

Defendants' accountant clarified in his deposition that Jimmy Cho had sole authority to identify costs, expenses, reimbursements, and supplied all documents personally and would answer all accounting questions.[2] Based on Jimmy Cho's involvement with accounting, it's highly unlikely Defendants were unaware of the failure to pay employees at an overtime rate. Likewise, Banana

---

[2] A transcript will be supplemented upon receipt.

6

Blossom's manager affirmed Jimmy Cho had full control over all policies and practices.[3] Moreover, during the 30(b)(6) deposition of Defendant Banana Blossom, Defendant Cho, as the corporate representative, admitted that these policies were applied to all Banana Blossom employees.[4]  In response to questioning during the 30(b)(6) deposition regarding Defendants' practice of not paying overtime, Defendants' counsel represented that Defendants would agree to a stipulation that they did not pay overtime during the relevant time periods.[5]

### B. Banana Blossom's Common Practice of Illegal Tip Pooling is Evidenced by Defendant's Log book, (2) Admissions by Defendants' Manager and Owner, and (3) Sales Records.

Defendants produced a copy of its tip log book reflecting tip allocations from July to August 2025. Defendant Cho admitted that any prior tip allocation records were destroyed. However, comparing Plaintiff's photographs of the logbook prior to these dates, it is evident that there was a long-standing tip pool in place. See, for example, this 10/05/2024 log book page compared to a log book page ten months later 08/05/2025:



---

[3] A transcript will be supplemented upon receipt.

[4] A transcript will be supplemented upon receipt.

[5] A transcript will be supplemented upon receipt.

On both dates, the salaried manager Sara shared in the tip pool with the servers/expediters. On both dates, ten percent of the tips are first divided amongst kitchen staff (top line), five percent of the tips to the host that shift (third line), and finally the *remainder* to the servers and expediters. This structure was applied accordingly each shift. Attached herein as an exhibit are the referenced tip log book pages. *See* Exhibit 3, Tip Log Book Excerpt.

In response to Plaintiff's request for admissions regarding the tip pool, Defendants confirmed that, "beginning in 2009 employees agreed to a tip pool with the *remainder* being split among the front of the house." Exhibit 2, Defendants' Response to Request for Admission No. 13 (emphasis added). This verifies that this tip pool policy was applied to all putative class members.

The existence and structure of the tip pool as applied to all employees and deductions was also admitted by Banana Blossom's manager, Kulisara "Sara" Jinawong. Ms. Jinawong testified that, after meeting with Plaintiffs, she tried to tell Defendant Jimmy Cho to stop splitting the tip pool with back of house, but Jimmy ignored her because he can do what he wants.[6] Additionally, Ms. Jinawong confirmed clocking in for server shifts despite being a salaried manager. Finally, she confirmed that tips were recorded manually in the tip log notebooks and distributed in cash. In Banana Blossom's 30(b)(6) deposition, Defendant Cho also confirmed application of this policy to all employees.

Defendant's common policy of deducting credit card fees from all employee tips is evident from comparing sales reports showing the various percentage deductions implemented each year to the corresponding credit card fees actually deducted. *See* Exhibit 4, Sales Reports, *cf.* Exhibit 5, Credit Card Processing Fees.

---

[6] A transcript will be supplemented upon receipt.

**C. On These Facts, This Court Should Approve Collective Certification and Notice**

In *Swales*, the Fifth Circuit directed trial courts presiding over FLSA collective actions to order preliminary discovery in order to determine "whether merits questions can be answered collectively." *Swales*, 985 F.3d at 441. A Plaintiff bears the burden of making a preliminary factual showing that similarly situated individuals exist, but "need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons may exist." *Dean v. Akal Security, Inc.*, 17-cv-00543-DDD JPM, ECF No. 116 at *5 (W.D. La. Nov. 20, 2017) *citing Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 797 (E.D. La. 2007). Collective certification is not the time to address merit issues or affirmative defenses; instead the task is just to ascertain whether there are plausibly similarly situated individuals in Banana Blossom's operation, and whether those individuals have common merits questions that can be resolved collectively.

Here, there are a range of merit questions that can be resolved collectively. Those questions include:

1) Whether Defendants' pay policies/practices violated the FLSA's overtime pay and minimum wage requirements;

2) Whether Defendants' tip pool violated the FLSA's tip and minimum wage requirements;

3) Whether Defendants violated the FLSA's notice requirements for tipped employees;

4) Whether Defendants are a covered enterprise under the FLSA;

5) Whether any exemption applies to the putative class members who allege FLSA violations;

6) The correct statute of limitations for Plaintiffs' claims and putative class members' claims;

7) Calculation of damages, etc.

At the close of discovery, Plaintiffs present overwhelming evidence in support of widely-applied policies and practices in violation of the FLSA, inclusive of sworn deposition testimony from Banana Blossom's manager, Banana Blossom's accountant, and Defendant Cho himself confirming

the policies whereby all non-exempt employees were paid straight time only, and tip pool structure that was applied to all servers/expediters. Additionally, Defendants/subpoenaed witnesses have produced the records identifying the employees subject to these common illegal pay practices within the relevant time period.

And because this evidence shows that the aggrieved putative class members are similarly situated regarding the claims and defenses asserted, collective treatment is properly administered with this Court's discretion. Each of the putative class members worked for Defendant Banana Blossom at the restaurant. All employees of Banana Blossom — including servers, expediters, hosts, bussers, and kitchen staff — were subject to the oversight of Defendant Cho. Each putative member of the Overtime Class — including Banana Blossom servers, expediters, hosts, bussers, and kitchen staff — was subject to nonpayment of earned overtime through payment of their regular rate of pay only. Each putative member of the Tip Pool class — including Banana Blossom severs and expediters — was subject to a tip pool with salaried employees. Each putative member of the Tip Pool class was paid less than minimum wage when Defendants claimed a tip credit without notice. As a result, these putative members meet the FLSA's requirements for being 'similarly situated' — especially considering the FLSA only requires that putative class members are similar, not identical to putative plaintiffs." *Walker v. Honghua America, LLC*, 870 F. Supp. 2d 462, 468 (S.D. Tex. 2012). Accordingly, collective certification should be granted.

### IV.    CONCLUSION AND RELIEF SOUGHT

WHEREFORE, Plaintiffs respectfully request that this Court grant the *Motion for Collective Certification* for the following:

1)    <u>Overtime Class</u>
All non-exempt individuals who (1) are or were employed by Banana Blossom Thai Café, LLC at any point from three years prior to the date of filing this complaint up to and including the date of final judgment in this matter, (2) are either the Named Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b); and (3) worked

more than forty hours in at least one workweek, and were subject to Banana Blossom's blanket practice and/or policy of not paying overtime wages to employees working more than forty (40) hours per week.

2) Tip Pool Class
All non-exempt individuals who (1) are or were employed by Banana Blossom Thai Café, LLC at any point from three years prior to the date of filing this complaint up to and including the date of final judgment in this matter, (2) are either the Named Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b); and (3) were subject to a tip credit being taken by Banana Blossom.

Plaintiffs respectfully request an Order from this Court requiring Defendants to disclose the names, last known home addresses, email addresses (business and home), and home and cellular telephone numbers for the above-defined potential opt-in plaintiffs.[7] Plaintiffs request that this information be provided within ten (10) days from the entry of the Court's Order and in usable electronic form to reduce any delays in sending out the Notices. Plaintiffs respectfully request an Order directing the parties to meet and confer within ten (10) days from the entry of the Court's Order to confer on a proposed Notice and Consent Form to Putative Class Members.

Plaintiffs respectfully request that the Court allow the proposed Notice and Consent Forms to be mailed, texted, and emailed to the class members.[8]

---

[7] In the Fifth Circuit, and others, "courts often grant this kind of request in connection with a conditional certification of an FLSA collective action." *Hernandez v. Bare Burger Dio Inc.*, 2013 WL 3199292, at *5 (S.D.N.Y. June 25, 2013) (collecting cases); s*ee, e.g., Mairena-Rivera v. Langston Construction, LLC*, No. 16-850-JJB-EWD, 2017 WL 2778346, at *6 (M.D. La. June 27, 2017) (ordering the production of names, last-known addresses, and e-mail addresses of potential claimants in order granting conditional certification); *Jones v. Cretic Energy Servs., LLC*,149 F. Supp. 3d 761 (S.D. Tex. Dec. 9, 2015); *Ramirez v. Load Trail, LLC*, 333 F.R.D. 89, 96 (E.D. Tex. 2019) (ordering production of names, job titles, addresses, telephone numbers, social security numbers, and e-mail addresses of putative class members, and permitting e-mail notice and a 30-day reminder notice); *Dyson v. Stuart Petrol. Testers, Inc.*, 308 F.R.D. 510, 517 (W.D. Tex. 2015) (ordering production of names, addresses, email addresses, and phone numbers); *Beall v. Tyler Techs., Inc.*, No. 2-08-cv-422, 2009 WL 3064689, at *1 (E.D. Tex. Sept. 23, 2009) (granting class notice via email and compelling the employer to produce all email addresses, both personal and work); *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. 2:08-cv-00722-RCJ-PAL, 2009 WL 102735, at * 15 (D. Nev. Jan. 12, 2009) (granting circulation of notice via U.S. mail and email); *Ortiz v. Rain King, Inc.,* No. 4:02-cv-04012, 2003 WL 23741409, at *1 (S.D. Tex. Mar. 10, 2003) (ordering the defendant to produce the names, addresses, and phone numbers of class in a readable computer format)*; Alba v. Madden Bolt Corp.*, 2002 WL 32639827, at *1 (S.D. Tex. June 5, 2002) (ordering the defendant to produce the full name, last known address, telephone numbers, dates and location of employment for prior three years); *see also Hoffmann-LaRoche*, 493 U.S. 165, 170 ("The District Court was correct to permit discovery of the names and addresses …."); *Ndita v. Am. Cargo Assurance, LLC*, 2013 U.S. Dist. LEXIS 63923, at *3 (E.D. La. Feb. 25, 2013) (ordering Defendant to provide Plaintiff with the last known addresses, e-mail addresses, and telephone numbers of members of the collective).

[8] Email notice has become an accepted—and even a preferred—form of notice in FLSA collective actions. *See Thrower v. Universal Pegasus, Int'l Inc.*, No. 3:19-CV-00068, 2020 WL 5258521, at *9 (S.D. Tex. Sept. 3, 2020) (approving mail, e-mail,

Plaintiffs also respectfully request that the Court order the posting of the Notice and Consent forms in common areas of Defendants' operational locations for the entire length of the approved opt-in period, for example next to where Defendant currently posts employee schedules and other notices.[9]

Plaintiffs request that the court set an opt-in deadline 30 days after the date in which notice is sent to members of the collective, and that any opt-ins who seek to join the action after that deadline must establish good cause for their delay. Although a 60-day opt-in period is standard in Louisiana,[10] a 30-day period is appropriate in this case given the proximity of trial in mid-August 2026.

Finally, Plaintiffs request authorization for a reminder notice by telephone, 21 days prior to the close of the opt-in period, to any putative class members who have not yet opted in. Employees who have left the employment of a company frequently do not provide their former employer with up-to-date contact information. *See Lopez v. WS Energy Servs., LLC*, No. 2:15-cv-135, Doc. 33, at *3 (S.D. Tex. Oct. 15, 2015); *see also Richard v. Flower Foods, Inc.*, 222 F.Supp.3d 516, 528 (W.D. La. 2016) (ordering the production of last known telephone numbers of putative class members). As courts have noted, "telephone numbers … provide a more stable means of contacting a person who has moved than a mailing address." *Jaso Jr. v. Bulldog Connection Specialists, LLC*, No. 2:15-cv-269, Doc. 17 at *6 (S.D. Tex. 2915) (*citing Dyson*, 308 F.R.D. at 516-17); *see also, Jones v Creitc Energy Services*, 149 F. Supp.

---

[9] and text message notice in an FLSA collective action); *Mairena-Rivera*, 2017 WL 2778346, at *6 (M.D. La. June 27, 2017) (approving e-mail notice);*Ramirez*, 333 F.R.D. at 96;*Wade v. Furmanite America, Inc.,* No. 3:17-cv-00169, 2018 WL 2088011, at *7-8 (S.D. Tex. May 4, 2018); *Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-cv-603-RP, Doc. 57, at *2 (W.D. Tex. Mar. 16, 2015)(*citing Jones v. JGC Dallas LLC*, 2012 WL 6928101, at *5 n.9 (N.D. Tex. Nov. 29, 2012)); *Hester*, 4:18-cv-1078, Doc. 69, at *10-12 (describing email as a "common, and often primary, means of communication for many workers" and allowing notice to be sent via email). The production of email addresses and allowing notice by way of email and text message is particularly important due to recent complications arising from the Covid-19 pandemic, Hurricane Ida damage and relocations in Louisiana and elsewhere.

[9] *See Whitehorn v Wolfgang's Steakhouse, Inc.*, 2011 WL 420528, at *2 (S.D.N.Y. 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 96 (E.D.N.Y. 2010) ("[W]hile Defendant object to the posting of the Notice at their business locations--and request an order prohibiting it--such a practice has been routinely approved in other cases.").

[10] *See White v. Integrated Elec. Techs., Inc.*, 2013 U.S. Dist. LEXIS 83298, at *41 (E.D. La. June 13, 2013) (approving 60 day opt-in period); *Brewer v. BP P.L.C.*, 2011 U.S. Dist. LEXIS 151692, at *1 (E.D. La. May 11, 2011) (same).

3d at 776.  For this reason, follow-up telephone calls by Class Counsel to those certain Putative Class Members who have not responded, or whose contact information during the notice period is shown to be incorrect or no longer valid, is appropriate to ensure notice.  Many courts have authorized this practice because "notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in."[11]  Indeed, courts within this district approve such reminder notices.[12] The cost and administrative expense of this notice will be borne entirely by Plaintiffs' counsel and a second reminder notice is appropriate to help ensure that all potential class members are given fair notice of their rights.

Respectfully Submitted:

/s/ Abigail L. Floresca

WILLIAM MOST (La. Bar No. 36914)
HOPE PHELPS (La. Bar No. 37259)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 2500, # 9685
New Orleans, LA 70170
Tel: 504-500-7974
E-Mail: hopeaphelps@outlook.com

KENNETH C. BORDES (La. Bar No. 35668)
ABIGAIL FLORESCA (La. Bar No. 41248)
3914 Canal St.
New Orleans, Louisiana 70119
Telephone: 504-588-2700
Facsimile: 504-708-1717
E-Mail: kcb@kennethbordes.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 8th day of June, 2026, a true and correct copy of the foregoing was delivered via ECF to mladd@bmcdlaw.com and jperez@jcbtax.com.

/s/    Abigail L. Floresca
ABIGAIL L. FLORESCA

---

[11] *Morris v. Lettire Const., Corp.*, 896 F. Supp. 2D 265, 274-275 (S.D.N.Y. 2012); *see also Dickensheets v. Arc Marine, LLC,* 2020 WL 855172, at *2 (S.D. Tex. Feb. 19, 2020) (same)*; Agerbrink v. Model Serv. LLC,* 2016 WL 406385, at *8 (S.D.N.Y. Feb. 2, 2016) (same)*; Sanchez v. Sephora USA, Inc.*, 2012 WL 2945753, at *6 (N.D. Cal. July 18, 2012) (approving distribution of reminder notice); *Jennings v. Cellco P'ship*, 2012 WL 2568146, at *6 (D. Minn. July 2, 2012) (same); *Gee v. Suntrust Mortg., Inc.*, 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011)(same).

[12] *Sandlin v. Grand Isle Shipyard, Inc.*, 2018 WL 2065595 (E.D. La. May 3, 2018) ("Thirty (30) days after the first mailing, Sandlin's counsel shall send a reminder notice consisting of the notice of rights and consent form…"); *DeArmond v. Alliance Energy Servs.*, LLC, 2017 WL 3173553 (E.D. La. July 26, 2017) (same); *White v. Integrated Elec. Techs., Inc.*, 2013 WL 2903070 (E.D. La. June 13, 2013) (same).