**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CONNOR PULLIAM, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-1341** |
| **BANANA BLOSSOM THAI CAFE, LLC.,** **ET AL.** | **SECTION: "G" (5)** |

## ORDER AND REASONS

Plaintiffs Connor Pulliam, Eric Truong, Majella Villaeba, Katherine Templeton, Assata Simpson, and Pakanan Tonsakul's (collectively, "Plaintiffs") bring this case against Defendants Banana Blossom Thai Café, LLC ("Banana Blossom") and Rattanasak Chotikarnul ("Jimmy Cho") (collectively, "Defendants") for allegedly violating the Fair Labor Standards Act ("FLSA"), retaliating against employees who complained of said violations, and violating various Louisiana statutes.[1] Pending before the Court is Plaintiffs' "Motion for Collective Action Certification."[2] Plaintiffs move the Court to certify two classes of "putative Opt-In Plaintiffs[.]"[3] The motion was filed on June 8, 2026, and set for submission on June 26, 2026.[4] Pursuant to Local Rule 7.5, opposition to a motion must be filed eight days before the noticed submission date.[5] To date, no opposition has been filed and the motion is therefore deemed to be unopposed. This Court has the authority to grant an unopposed motion, although it is not required to do so.[6] Having considered

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 31.

[3] *Id.* at 1–2.

[4] Rec. Doc. 31-8.

[5] EDLA Local Rule 7.5.

[6] *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 356 (5th Cir. 1993).

1

the motion, memorandum in support, the record, and the applicable law, the Court grants the motion.

### I. Background

Plaintiffs filed this putative class action on June 30, 2025, alleging violations of the FLSA and Louisiana law.[7] Plaintiffs allege that they are all employees of Banana Blossom.[8] Further, Plaintiffs allege that Jimmy Cho, who owns Banana Blossom, "has engaged in persistent wage theft from his employees for years."[9] Specifically, Plaintiffs claim that Jimmy Cho refused to pay time-and-a-half for overtime, illegally deducted credit card fees from employees' tips, and required servers to participate in an illegal tip pool.[10]

Plaintiffs assert that, along with other unnamed plaintiffs, they are part of two classes of putative plaintiffs, which consist of "Putative Overtime Class Members" and "Putative Tip Pool Class Members."[11] Plaintiffs contend that Putative Overtime Class Members consist of:

> All non-exempt individuals who (1) are or were employed by Banana Blossom Thai Café, LLC at any point from three years prior to the date of filing this complaint up to and including the date of final judgment in this matter, (2) are either the Named Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b); and (3) worked more than forty hours in at least one workweek and were subject to Banana Blossom's blanket practice and/or policy of not paying overtime wages to employees working more than forty (40) hour per week.[12]

Plaintiffs aver that the Putative Tip Pool Class Members consist of:

> All non-exempt individuals who (1) are or were employed by Banana Blossom Thai Café, LLC at any point from three years prior to the date of filing this complaint up to and including the date of final judgment in this matter, (2) are either the Named

---

[7] Rec. Doc. 1 at 3.

[8] *Id.* at 1.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 4–5.

[12] *Id.* at 4.

Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b); and (3) were subject to a tip credit being taken by Banana Blossom.[13]

Moreover, Plaintiffs assert that once the FLSA violations were brought to Defendants' attention Defendants retaliated against them by "imposing new restrictions on them and terminating benefits."[14] Further, Plaintiffs assert claims against Defendants under Louisiana law, contending that Defendants' actions amounted to: illegal fines due to the deduction of credit card processing fees from Plaintiffs' checks,[15] conversion and misappropriation of the monies wrongfully withheld from Plaintiffs' paychecks,[16] failure to pay wages,[17] and a violation of the Louisiana Unfair Trade Practices Act.[18]

On June 8, 2026, Plaintiffs filed the instant motion.[19] To date, no opposition has been filed. On June 18, 2026, Plaintiffs filed an "*Ex Parte* Motion for Expedited Consideration of Unopposed Motion to Certify Collective Action."[20] In that motion, Plaintiffs move the Court for expedited consideration of the Motion for Collective Action Certification.[21]

## II. Plaintiffs' Arguments in Support of the Motion

Plaintiffs assert that Defendants' common practice of not paying overtime is evidenced by: (1) employees' pay stubs, (2) written admissions (3) admissions by defendants' manager,

---

[13] *Id.*

[14] *Id.* at 22.

[15] *See* La. Rev. Stat. § 23:631.

[16] *See* La. Civ. Code art. 2315.

[17] *See* La. Rev. Stat. § 23:621, et seq.

[18] *See* La. Rev. Stat. § 51:1401, et seq.

[19] Rec. Doc. 31.

[20] Rec. Doc. 34.

[21] *Id.*

accountant, and owner, and (4) stipulation by Defendants' counsel.[22] Specifically regarding the Putative Overtime Class Members, Plaintiffs offer pay stubs from multiple employees which show those employees logging more than 40 hours on some weeks without any overtime payrate being applied to any of the logged hours.[23] Further, Plaintiffs submit that during the Rule 30(b)(6) deposition of Banana Blossom, Defendants' counsel stipulated that Defendants did not pay overtime during the relevant time periods.[24]

As to the Putative Tip Pool Class Members, Plaintiffs point to tip pool logs to show that severs and expediters shared 15% of the tip pool with back of the house staff, and that "the salaried manager Sara shared in the tip pool with the servers/expediters."[25] Moreover, Plaintiffs point to Banana Blossom's manager Kulisara Jinawong's ("Sara") deposition testimony wherein Sara allegedly admitted to clocking in as a server while working as a manager,[26] and Defendants' Response to Request for Admission No. 13, wherein Defendants confirmed that "beginning in 2009 employees agreed to a tip pool with the *remainder* being split among the front of the house."[27] Lastly, Plaintiffs assert that "Defendant's common policy of deducting credit card fees from all

---

[22] Rec. Doc. 31-1 at 5.

[23] Rec. Doc. 31-2. The paystubs provided are for four week pay periods and show in excess of 160 hours worked for each employee, allowing the Court to conclude that these employees were working in excess of 40 hours per week on at least some occasions without overtime pay.

[24] Rec. Doc. 31-1 at 7. On June 15, 2026, Plaintiffs filed a "Notice of Stipulation as to Partial Liability and FLSA Recordkeeping Violations Under 29 CFR Part 516," wherein Plaintiff provide the 30(b)(6) deposition transcript along with the page and line citations supporting their assertion that Defendants' counsel stipulated that no overtime was paid during the relevant time period. Rec. Doc. 33 (citing Rec. Doc. 32-1 at 45–46).

[25] Rec. Doc. 31-1 at 8.

[26] Plaintiffs note that Sara's deposition transcript would be provided upon receipt, but to date, said transcript has not been filed into the record.

[27] *Id.* (citing Rec. Doc. 31-3 at 3) (emphasis in original).

4

employee tips is evident from comparing sales reports showing the various percentage deductions implemented each year to the corresponding credit card fees actually deducted."[28]

Accordingly, Plaintiffs contend that they have met their burden because the "evidence shows that the aggrieved putative class members are similarly situated regarding the claims and defenses asserted, collective treatment is properly administered with this Court's discretion."[29] Particularly, Plaintiffs aver that each putative member of the "Overtime Class — including Banana Blossom servers, expediters, hosts, bussers, and kitchen staff —was subject to nonpayment of earned overtime through payment of their regular rate of pay only[,]" and that each putative member of the "Tip Pool class was paid less than minimum wage when Defendants claimed a tip credit without notice. As a result, these putative members meet the FLSA's requirements for being 'similarly situated' — especially considering the FLSA only requires that putative class members are similar, not identical to putative plaintiffs."[30]

### III. Legal Standard

Under Section 216(b) of the FLSA, one or more employees can pursue a class action in a representative capacity on behalf of similarly situated employees.[31] Such collective actions allow similarly situated plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources" and benefits the judicial system "by efficient resolution in one proceeding of common issues of law and fact."[32] A plaintiff may proceed collectively under the FLSA unless

---

[28] *Id.* (citing Rec. Docs. 31-5, 31-6).

[29] *Id.* at 10.

[30] *Id.* (citing *Walker v. Honghua America, LLC*, 870 F. Supp. 2d 462, 468 (S.D. Tex. 2012)).

[31] 29 U.S.C. § 216(b) ("An action to recover the liability . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.").

[32] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

"the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice."[33] There are two requirements to proceed as a representative action: (1) all plaintiffs must be "similarly situated" and (2) a plaintiff must consent in writing to take part in the suit.[34] This latter requirement means that a representative action follows an "opt-in" rather than an "opt-out" procedure.[35]

The FLSA does not define the requirements for employees to be deemed "similarly situated." However, in *Swales v. KLLM Transport Services, LLC*, the Fifth Circuit held that at the outset of the litigation, the district court should "rigorously enforce" Section 216(b)'s requirement that parties be "similarly situated."[36] The Fifth Circuit also held that plaintiffs have the burden of demonstrating that the plaintiffs and opt-ins are similarly situated.[37] Once, the parties have exchanged preliminary discovery, the second step under *Swales* is for the Court to look at all the evidence before it and determine whether the proposed collective is in fact "similarly situated," with an eye toward ensuring that the collective action does not "devolve into a cacophony of individual actions."[38] The three factors used by courts to make this determination are: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and

---

[33] *Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 877 (E.D. La. 2008) (Zainey, J.) (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)).

[34] 29 U.S.C. § 216(b).

[35] *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

[36] 985 F.3d 430, 443 (5th Cir. 2021).

[37] *Id.*

[38] *Id.* at 442–443.

procedural considerations."[39] However, "[t]he bottom line is that the district court has broad, litigation-management discretion here."[40]

Only those employees who affirmatively "opt-in" to the suit are bound by a collective action under the FLSA.[41] Affidavits from potential opt-in plaintiffs may be probative, but "in the Fifth Circuit, there is no categorical rule that Plaintiffs must submit evidence at this time that other [individuals] seek to opt-in to this case."[42]

### IV. Analysis

Here, Plaintiffs have presented abundant evidence to the Court including sworn testimony; admissions from Defendants; financial records consistent with Plaintiffs' allegations of illegal tip pooling and lack of overtime pay; and Defendants' counsel's stipulation that overtime was not paid out during the relevant time period. Further, Defendants have not responded to the instant motion. Therefore, the Court finds that Plaintiffs have met their burden of showing that the putative plaintiffs of the two requested classes are similarly situated to the named Plaintiffs. Specifically, Plaintiffs have shown that the putative plaintiffs were subject to similar disparate factual and employment settings, the potential defenses Defendants' may have against claims from said classes of plaintiffs appear to be similar, and the interest of fairness is served by this Court certifying the requested classes at this stage of litigation, now that discovery has closed.

Accordingly,

---

[39] *Id.* at 437.

[40] *Id.* at 443.

[41] 29 U.S.C. § 216(b) ("[N]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

[42] *Perkins v. Manson Gulf, L.L.C.*, No. 14 – 2199, 2015 WL 771531, at *4 (E.D. La. Feb. 23, 2015) (Africk, J.) (quoting *White v. Integrated Elec. Techs., Inc.*, No. 12-359, 2013 WL 2903070, at *7 (E.D. La. June 13, 2013) (Morgan, J.)).

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Collective Action Certification[43] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Expedited Consideration[44] is **MOOT**.

**IT IS FURTHER ORDERED** that within 10 days of entry of this order, Defendants will disclose to Plaintiffs the names, last known home addresses, email addresses (business and home), and home and cellular telephone numbers for the above-defined potential opt-in plaintiffs.

**IT IS FURTHER ORDERED** that Plaintiffs shall send the Proposed Notice and Consent Forms to be mailed, texted, and emailed to the class members.

**IT IS FURTHER ORDERED** that opt-in plaintiffs shall opt in within thirty (30) days of the date that notice is sent to members of the collective, and any opt-ins who seek to join the action after that deadline must establish good cause for their delay.

**IT IS FURTHER ORDERED** that Plaintiffs shall send a reminder notice by telephone, 21 days prior to the close of the opt-in period, to any putative class members who have not yet opted in.

**NEW ORLEANS, LOUISIANA**, this 23rd day of June, 2026.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[43] Rec. Doc. 31.

[44] Rec. Doc. 34.

8