**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| CONNOR PULLIAM, ET AL. | CIVIL ACTION NO. 25-1341 |
| VERSUS | SECTION "G" (5) |
| BANANA BLOSSOM THAI CAFÉ, LLC, ET AL. | |

## JOINT PROPOSED JURY INSTRUCTIONS

Plaintiffs Connor Pulliam, Eric Truong, Majella "MJ" Villaeba, Katherine Templeton, Assata "Ace" Simpson, Pakanan "Mew" Tonsakul, Camran White, Kaylen Marbry, and Vincent Nguyen (collectively, "Plaintiffs"), and Defendants Banana Blossom Thai Café, LLC and Rattanasak Chotikarnkul (collectively, "Defendants"), respectfully submit these proposed jury instructions in advance of the August 17, 2026 trial.

Respectfully submitted:

**MOST & ASSOCIATES**
*/s/ William Most*
WILLIAM MOST (La. Bar No. 36914)
HOPE PHELPS (La. Bar No. 37259)
201 St. Charles Ave., Ste. 2500, # 9685
New Orleans, LA 70170
Tel: 504-500-7974
hopeaphelps@outlook.com

**KENNETH C. BORDES,**
**ATTORNEY AT LAW, LLC**
KENNETH C. BORDES (La. Bar No. 35668)
ABIGAIL FLORESCA (La. Bar No. 41248)
3914 Canal St.
New Orleans, LA 70119
Tel: 504-588-2700
kcb@kennethbordes.com

*Counsel for Plaintiffs*

**BUTLER MCDONALD**

*/s/ John D. Perez*
JOHN D. PEREZ (#39302)
MARK R. LADD (#30847)
2450 Severn Avenue, Ste. 400
Metairie, Louisiana 70001
O: 504-285-5440
F: 504-407-2101
e-mail: jperez@bmcdlaw.com
e-mail: mladd@bmcdlaw.com
*Counsel for Defendants*

## GENERAL INSTRUCTIONS

The parties request that the Court give the following general form instructions from the Fifth Circuit Pattern Jury Instructions (Civil Cases) (2020 ed., with revisions through June 2020).

**Preliminary Instructions:**

- 1.1 ("Instruction for Beginning of Trial")

- 1.2 ("Preliminary Instruction to Jury")

**Closing Instructions:**

- 2.3 ("Stipulations as to Fact")

- 2.6 ("Limiting Instruction")

- 2.7 ("Charts and Summaries")

- 2.10 ("Similar Acts")

- 2.11 ("Impeachment by Witness Inconsistent Statements")

- 2.16 ("Bias — Corporate Party Involved")

- 3.1 ("Jury Charge")

- 3.2 ("Preponderance of the Evidence")

- 3.3 ("Evidence")

- 3.4 ("Witnesses")

- 3.7 ("Duty to Deliberate")

- 11.24 ("Fair Labor Standards Act"), as modified by the instructions below

- 11.25 ("FLSA Damages"), as modified by the instructions below

- 11.27 ("FLSA — Joint Employers")

## JURY INSTRUCTION NO. 1

### Nature of the Case

Plaintiffs are current and former employees of Banana Blossom Thai Café. They claim that Defendants failed to pay them overtime, failed to pay them the full minimum wage, took unlawful deductions from their tips, and retaliated against them after they reported that Defendants' pay practices were illegal. Plaintiffs also bring claims under Louisiana law.

Defendants have admitted that they implemented company-wide policies of not paying employees for all hours worked in excess of forty in a workweek at one and one-half times their regular hourly rate.[1] Defendants have further stipulated that they did not pay overtime as required by law.[2]

Because the parties agree that Defendants violated the overtime laws, you will not be asked to decide whether a violation occurred. You will be asked to decide how many overtime hours each Plaintiff worked, and to decide the remaining disputed issues described in these instructions. Where these instructions tell you that a fact has been stipulated or admitted, you must accept that fact as proven. You should not speculate about why the parties agreed to it.

## JURY INSTRUCTION NO. 2

### Employer Status; Individual and Joint Liability

Two Defendants are before you: Banana Blossom Thai Café, LLC, and Rattanasak "Jimmy" Chotikarnkul.

Under the Fair Labor Standards Act the word "employer" is broader than in ordinary usage. It includes any person who acts directly or indirectly in the interest of an employer in relation to an employee. A company and an individual can both be the employer of the same worker at the same time. When that is so, each of them is fully responsible for complying with the law.

---

[1] R. Doc. 50 at 2 (Joint Summary of the Facts).
[2] R. Doc. 50 at 6, ¶ 7(xxiv); see also R. Doc. 32.

The Court has determined, as a matter of law, that both Banana Blossom Thai Café, LLC and Rattanasak Chotikarnkul ("Jimmy Cho") were employers of the Plaintiffs under the Fair Labor Standards Act. You must accept that determination as established.

Where these instructions and the verdict form refer to "Defendants," they refer to both of them. Both Defendants are fully responsible for any amount you award on the federal wage and retaliation claims. You should not divide responsibility between them, and you should not reduce any award because you believe one Defendant is more responsible than the other.

**Authority:** 29 U.S.C. § 203(d); *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971–72 (5th Cir. 1984); *Lee v. Coahoma County*, 937 F.2d 220, 226 (5th Cir. 1991); Fifth Circuit Pattern Jury Instruction 11.27.

## JURY INSTRUCTION NO. 3
### Overtime Pay

The FLSA requires an employer to pay an employee at least one and one-half times the employee's "regular rate" of pay for time worked over 40 hours in a workweek. A "workweek" is a regularly recurring period of seven consecutive days, or 168 hours. The phrase "hours worked" includes all time spent by an employee primarily for the benefit of the employer or the employer's business.

To determine the overtime pay owed for a particular workweek, multiply the number of hours the employee worked over 40 in that week by one and one-half times the employee's regular rate of pay.

Each workweek stands alone. An employee may be owed overtime for any one workweek, for several, or for all of them. Overtime hours in one week cannot be offset by hours under 40 in another week.

Because Defendants have stipulated that they did not pay overtime, each Plaintiff need only prove, by a preponderance of the evidence, that he or she worked more than 40 hours in at least one workweek while employed by Defendants, and how many such hours he or she worked.

You will not be asked to calculate a dollar amount of unpaid overtime. You will be asked to find the number of overtime hours. The Court will apply the rates the parties have agreed to and compute the amounts owed after you return your verdict.

**Authority:** 29 U.S.C. § 207(a); 29 C.F.R. § 778.104 (each workweek stands alone).

## <u>JURY INSTRUCTION NO. 4</u>
### Regular Rate of Pay

The "regular rate" is the hourly rate actually used to measure overtime. It is not necessarily the same as the cash wage an employee is handed.

For an employee who is paid a cash wage below the minimum wage on the theory that tips make up the difference, the regular rate includes both the cash wage paid and the amount of the tip credit claimed. It is therefore never less than the full statutory minimum wage of $7.25 per hour.

If you find, as explained in the following instructions, that Defendants were not entitled to claim a tip credit, then the regular rate for the Plaintiffs who worked as servers and expeditors at a $5.00 cash wage is $7.25 per hour.

If a Plaintiff worked at two or more different hourly rates during the same workweek — for example, some hours as a server and some as an expeditor — the regular rate for that week is the weighted average of those rates: the total straight-time earnings for the week divided by the total hours worked in the week.

**Authority:** 29 C.F.R. § 531.60; 29 C.F.R. § 778.115.

## JURY INSTRUCTION NO. 5
### Minimum Wage and the Tip Credit

The FLSA requires an employer to pay each employee a minimum wage of $7.25 per hour. An employer may pay a "tipped employee" a lower direct cash wage and count a portion of the employee's tips toward the minimum wage. That is called a "tip credit."

The tip credit is a narrow exception, and an employer bears the burden of proving it is entitled to claim it. An employer may take a tip credit only if it satisfies every requirement the law imposes. If the employer fails to satisfy any one of those requirements, it may not claim the tip credit at all for the period of the failure, and it must pay the full $7.25 minimum wage in direct cash for every hour worked, with no credit for the tips the employee received.

Defendants have stipulated that, before mid-May 2025, servers and expeditors were paid $5.00 per hour — below the minimum wage — and that Banana Blossom claimed a tip credit.[3] The following three instructions describe requirements that Plaintiffs contend Defendants failed to meet.

**Authority:** 29 U.S.C. §§ 206(a)(1)(C), 203(m)(2)(A); Fifth Circuit Pattern Jury Instruction 11.24.

## JURY INSTRUCTION NO. 6
### Tip Credit — Required Advance Notice

An employer may not take a tip credit unless it first informs the employee of all of the following:

1.      The amount of the direct cash wage the employer will pay the employee per hour;

2.      The additional per-hour amount the employer will claim as a tip credit;

3.      That the tip credit claimed cannot exceed the amount of tips the employee actually receives;

4.      That all tips received by the employee are to be retained by the employee, except for a valid tip pool limited to employees who customarily and regularly receive tips; and

---

[3]R. Doc. 50 at 4, ¶ 7(xiii).

5.    That the tip credit will not apply unless the employee has been informed of these provisions.

Defendants have stipulated that, before taking a tip credit, they failed to inform Plaintiffs — by either oral or written notice — of any of these five items.[4]

Because that notice was not given, Defendants were not entitled to claim a tip credit at any time before mid-May 2025.

**Authority:** 29 U.S.C. § 203(m)(2)(A); 29 C.F.R. § 531.59(b).

## JURY INSTRUCTION NO. 7
### Tip Pooling With Ineligible Employees

An employer that claims a tip credit may require employees to share tips, but only through a pool limited to employees in occupations that customarily and regularly receive tips. If the employer requires a tipped employee to share tips with employees who do not customarily and regularly receive tips — such as salaried kitchen staff — the tip pool is unlawful and the employer may not claim a tip credit.

Defendants have stipulated that Banana Blossom imposed a required tip pool that allotted 10% of tips to salaried kitchen staff.[5] Defendants have also stipulated that servers and expeditors participated in that pool while being paid $5.00 per hour.[6]

**Authority:** 29 U.S.C. § 203(m)(2)(A); *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 189 (5th Cir. 2015).

## JURY INSTRUCTION NO. 8
### Manager or Supervisor Participation in a Tip Pool

An employer may not keep tips received by its employees for any purpose. This includes allowing a manager or supervisor to keep any portion of employee tips, and it applies whether or not

---

[4]R. Doc. 50 at 5, ¶ 7(xvii).
[5]R. Doc. 50 at 4, ¶ 7(xi).
[6]R. Doc. 50 at 4, ¶ 7(xi), (xiii).

the employer claims a tip credit. Tips that a manager or supervisor keeps are treated as tips kept by the employer.

A "manager" or "supervisor" is an employee who: (a) has a primary duty of managing the business or a recognized department of it; (b) customarily and regularly directs the work of two or more full-time employees or their equivalent; and (c) has the authority to hire or fire, or whose recommendations on hiring, firing, advancement, or promotion are given particular weight.

Defendants have stipulated that Kulisara "Sara" Jinawong was the salaried general manager of Banana Blossom and that she received tips from the tip pool when she clocked in and worked as a server while also still receiving a salary.[7]

If you find that Ms. Jinawong was a manager or supervisor and received any portion of the tip pool, then Defendants unlawfully kept those tips, and Plaintiffs are entitled to recover the tips she received from the pool.

**Authority:** 29 U.S.C. § 203(m)(2)(B); 29 C.F.R. §§ 531.52(b)(2), 541.100.

## <u>JURY INSTRUCTION NO. 9</u>
### Deductions from Tips for Card Processing Fees

Tips are the property of the employee who receives them. When a customer leaves a tip on a credit or debit card, the employer may deduct from that tip only the actual cost the card processor charges the employer to convert that tip into cash. An employer has a legal right to deduct only those costs that are required to make such a collection. An employer may not use a tip deduction to generate a profit or to cover general business expenses.

Defendants have stipulated that from approximately 2015 to mid-2024 they deducted 5% from the tip pool for "credit card processing fees," and that from mid-2024 until mid-May 2025 they deducted 2%. They have further stipulated that the deduction was taken on debit card sales as well as

---

[7]R. Doc. 50 at 4, ¶ 7(xi), (xiv).

credit card sales, and that it was greater than the actual transactional fees charged by the credit card companies.[8]

You will be asked to determine the actual percentage cost Defendants paid to process card transactions during the relevant period. The Court will apply your finding to the tip records to determine the amount each Plaintiff is owed.

An employer that deducts more than its actual processing cost while also claiming a tip credit forfeits the tip credit for that period, in addition to owing the amount unlawfully deducted.

**Authority:** 29 U.S.C. § 203(m)(2); *Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 244–45 (5th Cir. 2016).

## JURY INSTRUCTION NO. 10
### Effect of an Invalid Tip Credit; Alternative Measures of Recovery

If you find that Defendants were not entitled to claim a tip credit, the law gives Plaintiffs a remedy measured in one of two ways. Plaintiffs advance both, in the alternative.

First measure — the forfeited tip credit. Defendants must pay each affected Plaintiff the full $7.25 minimum wage in direct cash for every hour worked during the period the tip credit was invalid, without any credit for tips. Because Defendants paid $5.00 per hour, this measure equals $2.25 for every such hour.

Second measure — the tips unlawfully diverted. Defendants must return the tips that were taken out of the pool and given to employees who were not eligible to share in it.

These are alternative measures of the same wrong. If you make findings supporting both, the Court will award only the greater of the two. Plaintiffs will not receive both. This is explained further in Jury Instruction No. 25.

---

[8]R. Doc. 50 at 4, ¶ 7(xv)–(xvi).

Separate from either measure, Plaintiffs may also recover tips that Defendants themselves kept — that is, the amounts retained as excessive card processing fees and any portion of the tip pool received by a manager or supervisor. Those amounts are not duplicative of either measure above.

**Authority:** 29 U.S.C. § 216(b).

**JURY INSTRUCTION NO. 11**

**Employer Recordkeeping; Approximation of Damages**

The FLSA requires an employer to make, keep, and preserve records of the hours its employees work and the wages they are paid. This duty rests on the employer, not the employee.

An employee ordinarily has the burden of proving the hours he or she worked without proper compensation. But when an employer's records are inaccurate or inadequate, the employee satisfies that burden by proving that he or she performed work that was improperly compensated and by producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. An employee's own recollection and testimony may be sufficient to meet this burden.

The burden then shifts to the employer to come forward with evidence of the precise amount of work performed, or with evidence to negate the reasonableness of the inference drawn from the employee's evidence. If the employer fails to produce such evidence, you may award damages to the employee even though the result is only approximate.

Defendants have stipulated that employee hours were recorded and retained only monthly, and later bi-weekly, and that after each workweek they did not preserve the printed schedule sheets showing the hours actually scheduled per week.[9] Defendants have further stipulated that tip

---

[9]R. Doc. 50 at 4, ¶ 7(x).

distributions were tracked in a notebook called the "Tip Log Book," and that after a notebook was full they discarded it.[10]

**Authority:** 29 U.S.C. § 211(c); 29 C.F.R. Part 516; *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946), *superseded by statute on other grounds*, 29 U.S.C. § 251; *U.S. Dep't of Labor v. Five Star Automatic Fire Prot., L.L.C.*, 987 F.3d 436, 439–40 (5th Cir. 2021); *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).

## JURY INSTRUCTION NO. 12
### Willfulness and the Applicable Time Period

The period of time for which Plaintiffs may recover depends on whether Defendants' violation was willful.

A violation is willful if the employer either knew that its conduct was prohibited by the FLSA or showed reckless disregard for whether its conduct was prohibited. Reckless disregard means failing to make adequate inquiry into whether the conduct complied with the law. A violation is not willful merely because the employer was negligent or acted unreasonably.

Plaintiffs bear the burden of proving willfulness by a preponderance of the evidence.

If you find the violation was willful, recovery extends back three years. If you find it was not, recovery extends back two years. You do not need to calculate any dates. The Court will apply your finding.

**Authority:** 29 U.S.C. § 255(a); McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

## JURY INSTRUCTION NO. 13
### Retaliation — Elements

Plaintiffs Connor Pulliam, Eric Truong, Majella "MJ" Villaeba, Katherine Templeton, Assata "Ace" Simpson, and Pakanan "Mew" Tonsakul claim that Defendants retaliated against them because they complained about Defendants' pay practices.

---

[10]R. Doc. 50 at 4, ¶ 7(xii).

It is unlawful for an employer to take an adverse employment action against an employee because that employee asserted rights or made a complaint under the FLSA.

To prove retaliation, each Plaintiff must prove each of the following by a preponderance of the evidence:

1.     The Plaintiff engaged in protected activity;

2.     Defendants subjected the Plaintiff to an adverse employment action; and

3.     Defendants took that action because of the protected activity.

Certain of these facts have been stipulated. Defendants have stipulated that Connor Pulliam and the front-of-house employees met with Mr. Chotikarnkul and notified him that Banana Blossom's practices violated the FLSA.[11] Defendants have stipulated that they limited Mr. Pulliam's hours and prohibited him from covering shifts for other employees because Mr. Chotikarnkul disagreed with his position at that meeting, and that they placed other employees who participated in the meeting on a "chopping block list" for the same reason.[12] Defendants have further stipulated that they imposed new requirements — scheduling shifts to start earlier, stricter punishment for tardiness, and a total ban on cell phone possession on the floor — because they felt it was necessary to "set a new rule" for employees after the meeting.[13]

You must accept these stipulated facts as proven. What remains for you to decide as to these actions is the amount of damages, if any, each Plaintiff sustained. Plaintiff Katherine Templeton separately claims that she was terminated in retaliation for joining this lawsuit; that claim is not stipulated, and you must decide it under the elements above.

**Authority:** 29 U.S.C. § 215(a)(3).

---

[11]R. Doc. 50 at 5, ¶ 7(xviii).
[12]R. Doc. 50 at 5, ¶ 7(xix).
[13]R. Doc. 50 at 5, ¶ 7(xx).

## JURY INSTRUCTION NO. 14
### Retaliation — Protected Activity

An employee engages in "protected activity" when he or she makes a complaint to the employer, a supervisor, or a government agency asserting a violation of the FLSA. The complaint may be written or oral.

To qualify, the complaint must be clear enough and detailed enough that a reasonable employer would understand it as an assertion of rights protected by the FLSA. General feedback, informal expressions of concern, and routine workplace disputes do not qualify.

A Plaintiff does not have to prove that Defendants actually violated the FLSA in the manner complained of. A Plaintiff must prove that he or she held a reasonable, good-faith belief that the practice complained of violated the FLSA.

**Authority:** *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011); *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 626 (5th Cir. 2008).

## JURY INSTRUCTION NO. 15
### Retaliation — Adverse Employment Action

An "adverse employment action" is an action that would dissuade a reasonable worker from making or supporting a complaint under the FLSA. Terminating employment, reducing hours, barring an employee from picking up shifts, and withdrawing benefits can all be adverse employment actions.

Minor annoyances and trivial slights that would not dissuade a reasonable employee are not adverse employment actions. You should consider the actions in context and from the perspective of a reasonable employee in the Plaintiff's position.

**Authority:** *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Starnes v. Wallace*, 849 F.3d 627, 631–32 (5th Cir. 2017).

## JURY INSTRUCTION NO. 16

### Retaliation — Causation

A Plaintiff must prove that the adverse employment action would not have occurred but for his or her protected activity. A Plaintiff does not have to prove that the protected activity was the only reason for Defendants' decision.

If you disbelieve a non-retaliatory reason Defendants have offered for an action, you may — but are not required to — infer that Defendants would not have taken that action but for the Plaintiff's protected activity.

**Authority:** *Starnes v. Wallace*, 849 F.3d 627, 632 (5th Cir. 2017); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

## JURY INSTRUCTION NO. 17

### Retaliation — Damages

If you find for a Plaintiff on a retaliation claim, you should award the amount you find will fairly and reasonably compensate that Plaintiff for the harm caused by the retaliation. That may include:

1.  Wages and tips the Plaintiff lost as a result of the retaliation, from the time of the adverse action to the present; and

2.  Emotional harm, including mental anguish, humiliation, and loss of enjoyment of life.

A Plaintiff need not present evidence of a monetary value for emotional harm. You may award such damages based on the testimony and the circumstances. Any award must be based on the evidence and not on speculation, sympathy, or a desire to punish.

Do not add any amount for interest, attorney fees, costs, or any statutory doubling of damages. Those matters are for the Court.

Award damages for each Plaintiff separately. Do not award the same loss twice under different questions on the verdict form.

**Authority:** 29 U.S.C. § 216(b); *Pineda v. JTCH Apartments, L.L.C.*, 843 F.3d 1062, 1066 (5th Cir. 2016).

## JURY INSTRUCTION NO. 18
### Louisiana Wage Payment Act — Payment of Final Wages

Plaintiffs also bring claims under the Louisiana Wage Payment Act, sometimes called the "final paycheck" law.

Under that Act, when an employee is discharged or resigns, the employer must pay the amount then due under the terms of employment on or before the next regular payday, or within fifteen days after the end of employment, whichever comes first. Payment must be made in the manner customary during the employment, or by prepaid, properly addressed United States mail.

If there is a dispute over the amount due, the employer must still pay the undisputed portion. The employee may then sue for the remainder.

To recover, a Plaintiff must prove by a preponderance of the evidence that: (a) wages were due at the time employment ended; (b) the employer failed to pay them within the statutory period; and (c) the Plaintiff made a demand for payment at the place where he or she was usually paid, or the employer was otherwise on notice of the claim.

Defendants have stipulated that, after their employment ended, employees made a demand for their wages by letter dated June 9, 2025, and that they remain unpaid.[14]
Any statutory penalty that may follow from a violation is determined by the Court, not by you.

**Authority:** La. R.S. 23:631, 23:632.

## JURY INSTRUCTION NO. 19
### Louisiana Wage Payment Act — Unlawful Fines and Deductions

Louisiana law makes it unlawful for an employer to assess any fine against an employee, or to deduct any sum as a fine from an employee's wages.

---

[14]R. Doc. 50 at 5, ¶ 7(xxii).

A "fine," for this purpose, is a pecuniary penalty imposed for the violation of some law, rule, or regulation, or a monetary charge or offset imposed on an employee for a workplace event or shortfall. An employer may not deduct a fine even if the employee agreed to it, because such deductions are against public policy.

To establish a violation, a Plaintiff must prove each of the following by a preponderance of the evidence:

1.    The Plaintiff was employed by Defendants;

2.    Defendants withheld or deducted a sum from wages or tips that had already been earned by the Plaintiff; and

3.    The deduction was imposed as a penalty, charge, or offset rather than as payment of an actual, documented cost that the law permits the employer to pass on.

Plaintiffs contend that the percentage Defendants withheld from the tip pool, to the extent it exceeded Defendants' actual card processing cost, was such a deduction.

**Authority:** La. R.S. 23:635; *Brown v. Navarre Chevrolet, Inc.*, 610 So. 2d 165, 170 (La. App. 3 Cir. 1992); *Stegall v. Orr Motors of Little Rock, Inc.*, 121 So. 3d 684, 690 (La. App. 2 Cir. 2013).

**JURY INSTRUCTION NO. 20**

**Louisiana Wage Payment Act — Statutory Exceptions**

If a Plaintiff proves that Defendants assessed a fine or made a penalty deduction from wages, that fine or deduction is unlawful unless Defendants prove, by a preponderance of the evidence, that it falls within one of the three exceptions the statute allows:

1.    The employee willfully or negligently damaged goods or works;

2.    The employee willfully or negligently damaged or broke the property of the employer; or

3.    The employee was convicted of, or pled guilty to, the crime of theft of employer funds.

Even where one of these exceptions applies, the fine may not exceed the actual damage done.

These are the only exceptions. If Defendants fail to prove that a deduction falls within one of them, the deduction was unlawful.

**Authority:** La. R.S. 23:635.

## JURY INSTRUCTION NO. 21
### Good Faith

Defendants contend that they acted in good faith with respect to the payment of wages.

On this issue the burden is on Defendants, not on Plaintiffs. Defendants must prove both that they acted in subjective good faith and that they had objectively reasonable grounds for believing that their conduct complied with the law. It is not enough for Defendants to show an absence of bad faith. Negligence, or a failure to inquire into what the law required, does not establish good faith.

An employer does not act in good faith by refusing to pay an amount it admits is owed simply because some other amount is disputed. Where a portion of the wages due is undisputed, that portion must be paid.

Your answer on this question is advisory. The Court will decide whether any additional statutory amounts are awarded.

**Authority:** 29 U.S.C. § 260; *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 928 (5th Cir. 1999); *Singer v. City of Waco*, 324 F.3d 813, 823 (5th Cir. 2003); La. R.S. 23:631(B), 23:632(B); *Dixon v. City of Alexandria*, 222 So. 3d 739, 755 (La. App. 3 Cir. 2017); Duhon v. Prof'l Erny's Music Co., 328 So. 2d 788, 790 (La. App. 3 Cir. 1976).

## JURY INSTRUCTION NO. 22
### Conversion

Plaintiffs claim that Defendants converted their tips by deducting excessive card processing fees.

Conversion is an act of wrongful dominion or control over another person's property, in a manner inconsistent with that person's rights of ownership. A conversion occurs, among other ways,

when possession of property is acquired without authority, when possession is withheld from the owner, or when the property is used improperly.

Wages and tips, once earned, are the property of the employee and not of the employer. An employer may not retroactively take away wages an employee has already earned.

To prevail on a conversion claim, a Plaintiff must prove each of the following by a preponderance of the evidence:

1.      The Plaintiff owned, possessed, or had the right to possess the tips at issue;

2.      Defendants intentionally exercised dominion or control over those tips in a manner inconsistent with the Plaintiff's rights; and

3.      The Plaintiff suffered a loss as a direct result.

If you find for a Plaintiff on this claim, the damages are the value of the tips converted. Those are the same dollars addressed by the tip deduction questions elsewhere on the verdict form. The Court will ensure that no Plaintiff recovers the same money twice.

**Authority:** La. Civ. Code art. 2315; *Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853, 857 (La. 1998); *Importsales, Inc. v. Lindeman*, 92 So. 2d 574 (La. 1957); *Louisiana State Bar Ass'n v. Hinrichs*, 486 So. 2d 116 (La. 1986); *Foshee v. Georgia Gulf Chems. & Vinyls, LLC*, 42 So. 3d 346, 351 (La. 2010).

## <u>JURY INSTRUCTION NO. 23</u>
### Louisiana Unfair Trade Practices Act — Elements

Plaintiffs claim that Defendants violated the Louisiana Unfair Trade Practices Act, which makes unlawful any unfair or deceptive act or practice in the conduct of any trade or commerce.

To prevail, a Plaintiff must prove each of the following by a preponderance of the evidence:

1.      Defendants were engaged in trade or commerce;

2.      Defendants engaged in an unfair or deceptive act or practice;

3.      The Plaintiff suffered an ascertainable loss of money or movable property; and

4.      The loss resulted from Defendants' unfair or deceptive act or practice.

The range of conduct this statute reaches is narrow. An act or practice is "unfair" only when it offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious. An act or practice is "deceptive" when it involves fraud, misrepresentation, deception, or other unethical conduct. Conduct that is merely a breach of a contract or a mistake, without more, is not enough. What is unfair or deceptive depends on the facts of each case.

If you find for a Plaintiff on this claim, the damages are the actual loss that Plaintiff sustained. Where those dollars are the same as amounts you have awarded under another question, the Court will ensure that no Plaintiff recovers them twice.

**Authority:** La. R.S. 51:1405(A), 51:1409(A); *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1059 (La. 2010); *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co.*, 144 So. 3d 1011, 1025 (La. 2014).

## JURY INSTRUCTION NO. 24
### Louisiana Unfair Trade Practices Act — Knowing Conduct after Notice

If you find that Defendants engaged in an unfair or deceptive act or practice, you must also answer whether Defendants continued that conduct knowingly after being put on notice by the Louisiana Attorney General.

Answer this question "Yes" only if you find, by a preponderance of the evidence, both that the Louisiana Attorney General put Defendants on notice of the practice and that Defendants knowingly continued it afterward. If there is no evidence that the Attorney General gave such notice, you must answer "No."

You should not increase any damage award based on your answer. If a multiplier applies, the Court will apply it.

**Authority:** La. R.S. 51:1409(A).

## JURY INSTRUCTION NO. 25
### No Double Recovery

Several of Plaintiffs' claims arise from the same underlying conduct. The same dollars may appear in more than one question on the verdict form.

Answer each question you are directed to answer, based only on the evidence and the instruction that applies to it. Do not reduce an answer because you have already awarded a similar amount elsewhere, and do not increase an answer to make up for one you left blank.

Plaintiffs are entitled to be made whole once. They are not entitled to be paid twice for the same loss. After you return your verdict, the Court will review your answers and enter a judgment that avoids any duplication.