**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CONNOR PULLIAM, ET AL.** | **CIVIL ACTION NO. 25-1341** |
| **VERSUS** | **SECTION "G" (5)** |
| **BANANA BLOSSOM THAI CAFÉ, LLC, ET AL.** | |

**Plaintiffs' Memorandum Regarding Summary Judgment**

In R. Doc. 54, the Court converted the Parties' pre-trial memoranda (R. Docs. 51 and 52) to be summary judgment briefing, and invited responsive briefing.

Given the stipulated facts and Defendants' pre-trial memorandum, Plaintiffs suggest that the issues below are amenable to summary judgment against Banana Blossom Thai Café, LLC and Rattanasak "Jimmy" Chotikarnkul. If they are not resolved prior to trial, the parties can follow up with Rule 50 motions during trial.

As described herein, because Defendants have stipulated to facts and liability on many of Plaintiffs' claims, summary judgment should issue in favor of Plaintiffs for several claims. That would narrow the issues at trial to primarily quantum.[1]

A.     **Factual Background**

The following is the parties' joint summary of the facts: "Defendants implemented company-wide policies of (1) not paying employees for all hours worked in excess of forty in a work week at one and one-half times their regular hourly rate, (2) deducting credit card fees from employees' tips, (3) requiring servers to participate in a tip pool with salaried kitchen staff and

---

[1] Concurrently filed are Plaintiffs'' *Motions in Limine* that address some additional narrowing issues be decided by the Court. As to the quantum issues remaining, the *Motions in Limine* address the law as it relates to an employer who does not maintain wage records as required by law.

managers while taking deducting a tip credit, and (4) not maintaining records as required pursuant to 29 CFR Part 516. Defendants responded to Plaintiffs complaints about these practices by barring Plaintiff Connor Pulliam from picking up shifts, terminating Plaintiff Katherin Templeton, and implementing more restrictive policies. To date, no employees have been paid their earned overtime or earned but unpaid tips." R. Doc. 50 at 2-3.

Liability of each Defendant is also established and stipulated to. "Banana Blossom has been owned and operated by Rattanasak Chotikarnkul, who uses the alias 'Jimmy Cho,' since 2009. The owner, Jimmy Cho, implemented and maintained all policies and practices complained of in this litigation and was the decision maker in all respects to how Banana Blossom operates. Banana Blossom has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r). . . Banana Blossom's managers and officers, specifically including and at the direction of Defendant Jimmy Cho, directed the means and manner in which Plaintiffs were compensated." R. Doc. 50 at 5-6. Thus, under the FLSA and prevailing law, liability of each Defendant is established.[2]

**B.**     **Standard of Review and Statement of Undisputed Material Facts**

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations

---

[2] *See Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 827 (5th Cir. 1973); *U.S. Dep't of Lab. v. Five Star Automatic Fire Prot., L.L.C.*, 987 F.3d 436, 444 (5th Cir. 2021) (finding employer individual liability due to constructive knowledge when employer instructed or implied that employees should not record overtime hours).

[3] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). This summary judgment standard section is drawn from *Banner v. Wright,* 23-cv-07296-NJB, R. Doc. 118 at *14-15 (E.D. La., Jan. 14, 2025) (ruling on cross-motions for summary judgment).

or weighing the evidence."[4] All reasonable inferences are drawn in favor of the nonmoving party.[5] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[6] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[7] The nonmoving party may not rest upon the pleadings.[8] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[9]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[10] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[11] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely

---

[4] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (*citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[5] *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007) (*quoting Reeves*, 530 U.S. at 150)

[6] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting First Nat'l Bank of Ariz. v. Cites Serv. Co.*, 391 U.S. 253, 289 (1968)).

[8] *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

[9] *See id.; Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998).

[10] *Celotex Corp.*, 477 U.S. at 323.

[11] *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 190 (5th Cir. 1991) (internal citation omitted).

how that evidence supports the nonmoving party's claims.[12] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[13]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[14] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[15]

Here, the statement of undisputed material facts is found at R. Doc. 50 at 2-3 ("Joint Summary of the Facts"), and 3-6 (Uncontested Materials Facts).

**C.      Overtime: Given the stipulated facts, this Court should grant summary judgment to Plaintiffs on their overtime claims, leaving quantum of damages for trial.**

In an action for unpaid overtime compensation, a plaintiff is entitled to recover for uncompensated overtime hours at "a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(2). A plaintiff is entitled to liquidated damages equal to the amount of unpaid wages for willful violations of the FLSA. 29 U.S.C. §216(b).

In their Complaint, Plaintiffs allege that Defendants violated the FLSA by not paying time-and-a-half for overtime hours in violation of Sections 6 and/or 7 of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(2). R. Doc. 1 at ¶ 101 *et seq.*

Defendants agree. They have "stipulated that Defendants did not pay overtime as required by law." R. Doc. 50 at 6, xxiv ("The parties have stipulated that Defendants did not pay overtime

---

[12] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).
[13] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012)
[14] *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted).
[15] *Morris*, 144 F.3d at 380.

as required by law"); see also R. Doc. 56 (Joint Verdict Form) at 3 ("Defendants have stipulated that they did not pay overtime as required by law."). Defendants explain that "[o]vertime violations under the FLSA have been stipulated to by Defendants leaving the calculation of those FLSA claims, liquidated damages, attorney fees, and costs the only remaining element to those claims." R. Doc. 50 at 6.

Accordingly, summary judgment should be granted to Plaintiffs on this claim, leaving the quantum of damages for trial.

**D.**    **Retaliation: Given the stipulated facts, this Court should grant summary judgment to Plaintiffs on their retaliation claims, leaving quantum of damages for trial.**

A FLSA retaliation claim has three elements: "(1) participation in a protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." *Rodriguez v. City of Corpus Christi*, 129 F.4th 890, 898 (5th Cir. 2025), *quoting Starnes v. Wallace,* 849 F.3d 627, 631-32 (5th Cir. 2017).

In this case, Defendants stipulate that "Plaintiff Connor Pulliam and the front of house employees met with Defendant Jimmy Cho and notified him that his and Banana Blossom's practices were in violation of the FLSA." R. Doc. 50 at pg. 5, xviii. That constituted participation in a protected activity. *See Allen v. Envirogreen Landscape Prof'ls, Inc.*, 721 F. App'x 322, 327 (5th Cir. 2017) ("Complaints about wages, hours of work, and working conditions are protected under § 15(a)(3) of the Fair Labor Standards Act").

Defendants also stipulate that they "limited Connor Pulliam's hours at Banana Blossom and prohibited him from covering shifts for other employees because [Defendant Cho] disagreed with Connor's position at the meeting." R. Doc. 50, p. 5, xix. Defendants admit that they "placed other employees who participated in the meeting on a 'chopping block list' for the same reason."

5

*Id.* at xix. Defendants further admit that their imposition of new restrictions, including scheduling shifts to start earlier, stricter punishment on tardiness, and a total ban on cellphone possession on the floor were in response to Plaintiffs' wage advocacy at the meeting. *Id.* at xx.

Defendants even concede in the "Joint Summary of the Facts" that "Defendants <u>responded to</u> Plaintiffs complaints about these practices by barring Plaintiff Connor Pulliam from picking up shifts, terminating Plaintiff Katherin Templeton, and implementing more restrictive policies." R. Doc. 50 at *3 (emphasis added). Similarly, in the Joint Verdict Form, Defendants explain that they have "stipulated that they imposed new workplace restrictions — earlier shift start times, stricter punishment for tardiness, and a ban on cell phones on the floor — in response to Plaintiffs' complaints about wages." R. Doc. 56 at 9. And in the Joint Jury Instructions, they concede that for most of this retaliation, all that "remains" for the jury is to award damages. R. Doc. 55 at 12.

Thus, all the elements of FLSA retaliation are stipulated. Defendants concede that (1) Plaintiffs raised the issue of FLSA violations with their employer (protected activity), (2) that Defendants cut hours, put people on a "chopping block list," and imposed a range of new restrictions (adverse employment action); and (3) that Defendants "responded to" the employees' wage complaints with the adverse actions (causal link). Summary judgment should issue on Plaintiffs' retaliation claim, leaving quantum of damages for trial.

E.     **Tip-Pooling: Given the stipulated facts, this Court should grant summary judgment to Plaintiffs on their conversion claims, leaving quantum of damages for trial.**

The FLSA contains an exception that permits employers to pay less than the general minimum wage—as little as $2.13 per hour—to a "tipped employee" as long as the employee's tips make up the difference between the $2.13 minimum wage and the general $7.25 minimum wage.

29 U.S.C. § 203(m); *see also Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 874 (8th Cir. 2011). Paying less than minimum wage is described as an employer taking a "tip credit" – because the tips are "credited" towards the minimum wage. *See Fast,* 638 F.3d at 874

Pursuant to 29 CFR 531.54 (d), an employer may impose a tip pooling arrangement between employees – but only if the tip pool does not include salaried workers <u>or</u> the employer does not take a Section 3(m)(2)(A) tip credit. *See Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 189 (5th Cir. 2015).

Here, Defendants both required a tip pool including salaried workers (and managers) and also took a tip credit for tipped employees. They stipulate that they "implemented company-wide policies of . . . requiring servers to participate in a tip pool with salaried kitchen staff and managers while taking deducting a tip credit." R. Doc. 50 at 2. Specifically, Defendants "imposed a required tip pool that allotted 10% of tips to salaried kitchen staff, 5% to the host, a percentage to credit card fees, and split the remainder between servers and expeditors." R. Doc. 50 at 4, xi. It is not disputed that these are not those the FLSA recognizes as customarily receiving tips, especially when they were being reduced and taken by those with significantly higher hourly wages. Thus, Defendants have stipulated that their tip pool violated the FLSA. See also R. Doc. 56 (Joint Verdict Form) at 6-7 (asking only about damages, not liability, for tip pooling claim); R. Doc. 55 (Joint Jury Instructions) at 7 ("Defendants have stipulated that Banana Blossom imposed a required tip pool that allotted 10% of tips to salaried kitchen staff.5 Defendants have also stipulated that servers and expeditors participated in that pool while being paid $5.00 per hour.")

Additionally, 29 CFR 531.54 (c)(3) and (d) provide that an employer may not receive tips from such a tip pool and may not allow supervisors and managers to receive tips from the tip pool.

7

Here, Defendants stipulate that on occasion, "a salaried Banana Blossom manager, Kulisara Jinawong, received tips from the tip pool when she clock[ed] in and work[ed] as a server." R. Doc. 50 at 4, xiv. This too was a violation of the FLSA's tip pool rules.

Given these stipulations, the Court should grant summary judgment to Plaintiffs on their tip pool claims, leaving quantum for trial.

**F.**   <u>Credit Card Fees:</u> **Given the stipulated facts, this Court should grant summary judgment to Plaintiffs on their FLSA card fee claims, leaving quantum of damages for trial.**

Generally, an employer may not retain any portion of employee tips for any reason. 29 U.S.C. § 203(m)(2)(b). One exception, however, is that an employer may deduct the actual cost of credit card processing fees from tips. *Steele v. Leason Enters., Ltd.* 826 F.3d 237, 241 (5th Cir. 2016). The Fifth Circuit affirmed that charging a transactional fee in excess of actual transactional credit card fees violates the FLSA, concluding "an employer only has a legal right to deduct those costs that are required to make such a collection." *Id.* at 245.

Here, Defendants stipulate that from "approximately 2015 to mid-2024, Banana Blossom deducted 5% from the tip pool for 'credit card processing fees,' taken for both credit card and debit card sales." R. Doc. 50 at 4, xv. They further stipulate that this 5% is "greater than the actual transactional fees charged by the credit card companies." *Id.;* see also R. Doc. 55 (Joint Jury Instructions) at 8-9 (stipulating the same). They stipulate that later, the "the credit card fee deduction was reduced to 2%, but was still taken for both credit card and debit card sales." R. Doc. 50 at 4, xvi.

Given that Defendants concede they exacted a "credit card processing fee" from tips greater than the actual fees charged by credit card companies – and obviously greater than the no

fee for debit cards – the Court should grant summary judgment to plaintiffs on their card fee claim, leaving quantum for trial.

**G.      Notice: Given the stipulated facts, this Court should grant summary judgment to Plaintiffs on their required-notice claims, leaving quantum of damages for trial.**

Under the FLSA, employers must provide a range of specific information to tipped employees before taking a tip credit under the FLSA.[16] An employer that fails to provide the required information may not take the section 3(m)(2)(A) tip credit.[17]

Here, Defendants stipulated that they "failed to inform Plaintiffs by either oral or written notice" of the required information prior to taking a tip credit. R. Doc. 50 at 4, xvii; see also R. Doc. 55 (Joint Jury Instructions) at 7 ("Defendants have stipulated that, before taking a tip credit, they failed to inform Plaintiffs — by either oral or written notice — of any of these five items. Because that notice was not given, Defendants were not entitled to claim a tip credit at any time before mid-May 2025.")

Accordingly, the Court should grant summary judgment to plaintiffs on their required-notice claims, leaving the quantum of damages for trial.

**H.      Illegal Fines: Given the stipulated facts, this Court should grant summary judgment to Plaintiffs on their illegal fines claims, leaving quantum of damages for trial.**

Under section 635 of the Louisiana Wage Payment Act ("LWPA"), "[n]o person, acting either for himself or as agent or otherwise, shall assess any fines against his employees or deduct any sum as fines from their wages." La. R.S. 23:635. The three narrow exceptions allowing assessment of fines under the LWPA are cases where (1) the employees willfully or negligently

---

[16] 29 C.F.R. § 531.59(b); see also https://www.dol.gov/agencies/whd/fact-sheets/15-tipped-employees-flsa.

[17] 29 C.F.R. § 531.59(b) ("an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance. . . .").

damage goods or works, (2) where the employees willfully or negligently damage or break the property of the employer, and (3) where the employee is convicted or has pled guilty to the crime of theft of employer funds. Defendants agree that "These are the only exceptions. If Defendants fail to prove that a deduction falls within one of them, the deduction was unlawful." R. Doc. 55 (Joint Jury Instructions) at 17.

Here, Defendant's deduction of a flat 5% fee from tips for credit card and debit cards was in violation of Louisiana law under La. R.S. 23:631, *et seq.* as an illegal fine.

Defendants respond that "reimbursing the business for third-party transactional costs incurred to convert a customer's credit charge into cash for the server is a administrative pass-through expense, not a penalty or fine." R. Doc. 52 at 3. But they cite no authority whatsoever for that proposition. And in any case, they have already stipulated that the percent they charged was "greater than the actual transactional fees charged by the credit card companies." R. Doc. 50 at 4, xv. So it was not an actual "transactional cost" as Defendants contend. Accordingly, even considering the Defendants' excuse, summary judgment should be granted to Plaintiffs on their LWPA claim.

I.    <u>Conversion</u>: **Given the stipulated facts, this Court should grant summary judgment to Plaintiffs on their conversion claims, leaving quantum of damages for trial.**

As described in R. Doc. 51, state law provides that any "wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion." *Aymond v. State of Louisiana, Dep't of Revenue and Taxation*, 672 So. 2d 273, 275 (La. Ct. App. 1st Cir. 1996) (internal citations omitted). And "[w]ages and bonuses, once earned, are the property of the employee, not the employer." *Foshee v. Georgia Gulf Chems. & Vinyls, LLC,* 42 So.3d 346, 351 (La. 2010).

10

Thus, Defendants engaged in the tort of conversion when they failed to pay overtime, forced employees to participate in an illegal tip pool, and took a flat percentage off the top for credit and debit card tips.

Defendants respond that permitting "a parallel common-law tort claim for conversion would circumvent statutory remedies, result in impermissible double recovery, and disrupt settled labor law jurisprudence." R. Doc. 52 at 3-4. They do not, however, cite any authority whatsoever for that position. And Plaintiffs do not seek double recovery, and the verdict form and judgment can be structured to ensure that.

Given that Defendants provide no authority rebutting Plaintiffs' conversion claim, summary judgment should be granted on that point.

**J.**     <u>**Louisiana Wage Payment Act**</u>**: Given Defendants' stipulation to liability, this Court should grant summary judgment to Plaintiffs on their LWPA claim, leaving quantum of penalties for calculation by the Court.**

Under the Louisiana Wage Payment Act, when an employer does not pay earned wages after a demand, the employer "shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages." La. R.S. 23:632(A).

Here, it is stipulated that Defendants owe wages to Plaintiffs. *E.g.*, R. Doc. 50 at 6, xxiv ("The parties have stipulated that Defendants did not pay overtime as required by law"). And it is stipulated that the Plaintiffs "made a demand for their wages via letter on June 9, 2025" and "remain unpaid." *Id.* at 5, xxii. Indeed, Defendants concede their LWPA liability, explaining that:

> While we agree that the Plaintiffs may be eligible for those particular items of damage, the underlying calculations of the damages themselves are in dispute. Once

properly calculated, the attributable penalty wages, costs and reasonable attorney's fees are not contested.

R. Doc. 52 at 3.

Accordingly, the Court should grant summary judgment to Plaintiffs on their LWPA claim. These damages should be readily calculable by the Court (with assistance from the parties), given that ninety days of wages will certainly be less than full wages from June 9, 2025 to the present. Once the parties stipulate to and submit the Plaintiffs' hourly rates, the LWPA damages can be calculated by multiplying 90 days times 8 hours per day times each Plaintiff's hourly rate.

**K.     Defendants do not contest Plaintiffs' right to reasonable attorneys fees and costs.**

Defendants have stipulated to liability under the FLSA and the LWPA, both of which are fee-shifting statutes. R. Doc. 50 at 6, xxiv, R. Doc. 52 at 3. Defendants have noted that "costs and reasonable attorney's fees are not contested." R. Doc. 52 at 3.

Given that, this Court should find Defendants liable for Plaintiffs' costs and reasonable attorneys fees, and order that they file a fee petition within thirty days of the close of trial.

**CONCLUSION**

Given Defendants' stipulations, summary judgment should issue for Plaintiffs.

Respectfully Submitted:

*/s/ William Most*
WILLIAM MOST (La. Bar No. 36914)
HOPE PHELPS (La. Bar No. 37259)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 2500, # 9685
New Orleans, LA 70170
Tel: 504-500-7974
E-Mail: hopeaphelps@outlook.com

KENNETH C. BORDES (La. Bar No. 35668)
ABIGAIL FLORESCA (La. Bar No. 41248)
3914 Canal St.
New Orleans, Louisiana 70119
Telephone: 504-588-2700
Facsimile: 504-708-1717
E-Mail: kcb@kennethbordes.com

*Counsel for Plaintiffs*
