**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CONNOR PULLIAM, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-1341** |
| **BANANA BLOSSOM THAI CAFE, LLC., ET AL.** | **SECTION: "G" (5)** |

## ORDER AND REASONS

Plaintiffs Connor Pulliam, Eric Truong, Majella Villaeba, Katherine Templeton, Assata Simpson, and Pakanan Tonsakul, Camran White, Kaylen Marbry, and Vincent Nguyen's (collectively, "Plaintiffs") bring this case against Defendants Banana Blossom Thai Café, LLC ("Banana Blossom") and Rattanasak Chotikarnul ("Jimmy Cho") (collectively, "Defendants") for allegedly violating the Fair Labor Standards Act ("FLSA"), retaliating against employees who complained of said violations, violating the Louisiana Wage Payment Act ("LWPA"), and other violations of Louisiana law.[1] Pending before the Court are Plaintiffs' "Pretrial Memorandum of Contested Issues of Law"[2] and Defendants' Pretrial Memorandum on Contested Issues of Law."[3] The parties' memoranda identify each party's position on contested issues of law to be resolved at trial or in pretrial rulings.[4] Specifically, the parties stipulate to Defendants' liability for unpaid overtime wages under the FLSA, but dispute the process for calculating damages and whether

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 51.

[3] Rec. Doc. 52.

[4] Rec. Docs. 51, 52.

1

Defendants' conduct amounts to illegal tip pooling, credit card processing fees, and violations of Louisiana law.[5]

On August 3, 2026, the Court converted the parties' pretrial memoranda into motions for summary judgment, with any opposition due by August 5, 2026.[6] Having considered the motions, memoranda in support and opposition, the record, and the applicable law, the Court grants Defendants' motion in part and denies it in part. The Court grants Defendants' motion to the extent that it seeks dismissal of the LWPA illegal fines claims and denies it in all other respects. The Court grants Plaintiffs' motion in part and denies it in part. The Court grants Plaintiffs' motion to the extent that it seeks a determination of liability as to the FLSA unpaid overtime claims, improper credit card fee claims, failure to provide notice claims, Plaintiff Connor Pulliam's retaliation claim, and the LWPA unpaid wages claims. Plaintiffs' motion is denied in all other respects.

## I. Background

Plaintiffs filed this putative class action on June 30, 2025, alleging violations of the FLSA and Louisiana law.[7] Plaintiffs allege that they are all employees of Banana Blossom.[8] Further, Plaintiffs allege that Jimmy Cho, who owns Banana Blossom, "has engaged in persistent wage theft from his employees for years."[9] Specifically, Plaintiffs claim that Jimmy Cho refused to pay time-and-a-half for overtime, illegally deducted credit card fees from employees' tips, and required servers to participate in an illegal tip pool.[10]

---

[5] *Id.*

[6] Rec. Doc. 54.

[7] Rec. Doc. 1 at 3.

[8] *Id.* at 1.

[9] *Id.*

[10] *Id.*

Plaintiffs assert that, along with other unnamed plaintiffs, they are part of two classes of putative plaintiffs, which consist of "Putative Overtime Class Members" and "Putative Tip Pool Class Members."[11] Plaintiffs contend that Putative Overtime Class Members consist of:

> All non-exempt individuals who (1) are or were employed by Banana Blossom Thai Café, LLC at any point from three years prior to the date of filing this complaint up to and including the date of final judgment in this matter, (2) are either the Named Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b); and (3) worked more than forty hours in at least one workweek and were subject to Banana Blossom's blanket practice and/or policy of not paying overtime wages to employees working more than forty (40) hour per week.[12]

Plaintiffs aver that the Putative Tip Pool Class Members consist of:

> All non-exempt individuals who (1) are or were employed by Banana Blossom Thai Café, LLC at any point from three years prior to the date of filing this complaint up to and including the date of final judgment in this matter, (2) are either the Named Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b); and (3) were subject to a tip credit being taken by Banana Blossom.[13]

Moreover, Plaintiffs assert that once the FLSA violations were brought to Defendants' attention Defendants retaliated against them by "imposing new restrictions on them and terminating benefits."[14] Further, Plaintiffs assert claims against Defendants under Louisiana law, contending that Defendants' actions amounted to: illegal fines due to the deduction of credit card processing fees from Plaintiffs' checks,[15] conversion and misappropriation of the monies

---

[11] *Id.* at 4–5.

[12] *Id.* at 4.

[13] *Id.*

[14] *Id.* at 22.

[15] *See* La. Rev. Stat. § 23:631.

wrongfully withheld from Plaintiffs' paychecks,[16] failure to pay wages,[17] and a violation of the Louisiana Unfair Trade Practices Act.[18]

On June 24, 2026, the Court granted Plaintiffs' "Motion for Collective Action Certification."[19] On July 27, 2026, the parties filed a "Joint Proposed Pretrial Order."[20] Both parties also filed pretrial memoranda on contested issues of law.[21] On August 3, 2026, the Court held a pretrial conference with the parties. On that same day, the Court converted the parties' pretrial memoranda into motions for summary judgment, with any opposition due by August 5, 2026.[22] On August 4, 2026 the parties filed "Joint Proposed Jury Instructions" and "Joint Proposed Jury Interrogatories."[23] On August 5, 2026 Plaintiffs filed a "Memorandum Regarding Summary Judgment," in accordance with the Court's August 3, 2026 Order.[24] Defendants did not file any supplemental briefing.

**II. Parties' Arguments**

### A.     *Plaintiffs' Arguments*

Plaintiffs assert that they are owed unpaid overtime, liquidated damages, attorneys' fees, and costs pursuant to the FLSA.[25] Further, Plaintiffs contend that servers and expeditors are owed

---

[16] *See* La. Civ. Code art. 2315.

[17] *See* La. Rev. Stat. § 23:621, et seq.

[18] *See* La. Rev. Stat. § 51:1401, et seq.

[19] Rec. Docs. 31, 37.

[20] Rec. Doc. 50.

[21] Rec. Docs. 52, 53.

[22] Rec. Doc. 54.

[23] Rec. Docs. 55, 56.

[24] Rec. Doc. 60.

[25] Rec. Doc. 51 at 2.

back wages for tip pooling and improper credit card processing fees under the FLSA.[26] Moreover, Plaintiffs aver that "Defendants' actions in withholding monies from employee paychecks, which said employees were owed, amount to their conversion of funds under Louisiana law."[27] Additionally, Plaintiffs assert that they "are entitled to statutory penalty wages, costs, and attorney fees under the Louisiana Wage Payment Act."[28]

As to the amount of overtime owed, Plaintiffs contend that because Defendants "admit that they did not maintain weekly hour records for employees in violation of the requirements under the FLSA until at least the filing of the instant lawsuit[,] . . . Plaintiffs are prepared to testify to an approximate amount of overtime owed by Defendants."[29] Further, Plaintiffs aver that Defendants bear the burden of producing evidence of the exact amount of hours worked by Plaintiffs, or any evidence that contradicts Plaintiffs' proposed calculation.[30] In the event Defendants are unable to meet this burden, Plaintiffs assert that the Court may then award damages to Plaintiffs, "even though the result be only approximate."[31]

Turning to the tip pooling claim, Plaintiffs contend that Defendants improperly required servers and expeditors to pay out tips to "salaried kitchen staff and/or managers who do not normally receive tips."[32] Specifically, Plaintiffs aver that prior to May 2025 servers were paid

---

[26] *Id.* at 3–4.

[27] *Id.* at 6.

[28] *Id.* at 7.

[29] *Id.* at 2–3.

[30] *Id.* at 3.

[31] *Id.* at 2 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

[32] *Id.* at 4.

$5.00 per hour, that is less than the minimum wage of $7.25 per hour.[33] Plaintiffs assert that because Defendants took a $2.25 per hour tip credit from servers and expeditors, while simultaneously requiring them to pool tips with non-eligible employees, Defendants are liable for the $2.25 per hour tip credit taken from each server/expeditor each shift, "the value of tips given out to other employees in the tip pool, and liquidated damages."[34] Further, Plaintiffs submit the Joint Pretrial Order contains factual stipulations, which warrant summary judgment as to Defendants' liability for this claim because the Joint Summary of Facts within that document states that Defendants "imposed a required tip pool that allotted 10% of tips to salaried kitchen staff, 5% to the host, a percentage to credit card fees, and split the remainder between servers and expeditors."[35]

Looking to the improper credit card processing fees claim, Plaintiffs assert that since 2012 Defendants retained a percentage from the tip pool to cover credit card fees, which did not reflect the actual credit card fees charged to Defendants.[36] Therefore, Plaintiffs contend that Defendants are "liable to [Plaintiffs] for the difference between the actual credit card fees charged and the value of the tips retained by [Defendants] as a 'credit card fee,' plus that same amount in liquidated damages."[37] Further, Plaintiffs submit the Joint Pretrial Order contains factual stipulations warranting summary judgment as to Defendants' liability for this claim because the Joint Summary of Facts within that document states that from "approximately 2015 to mid-2024, Banana Blossom deducted 5% from the tip pool for 'credit card processing fees,' taken for both credit card and debit

---

[33] *Id.*

[34] *Id.*

[35] Rec. Doc. 60 at 7 (quoting Rec. Doc. 50 at 4).

[36] *Id.* at 5.

[37] *Id.*

card sales."[38] Moreover, the Joint Summary of Facts states that 5% is "greater than the actual transactional fees charged by the credit card companies."[39]

Turning to the FLSA retaliation claim, Plaintiffs assert that the Court should grant summary judgment in their favor because they allege that Defendants have stipulated all the elements of this claim.[40] Plaintiffs point to the Joint Summary of Facts within the Joint Proposed Pretrial Order and the Joint Proposed Jury Interrogatories as evidence of those stipulations.[41]

Plaintiffs also allege that Defendants failed to provide the notice required under the FLSA to Plaintiffs before taking a tip credit.[42] Additionally, Plaintiffs assert that the stipulated facts within the Joint Summary of Facts warrant summary judgment as to Defendants' liability for this claim.[43] Specifically, Plaintiffs allege that the Joint Summary of Facts states that Defendants "failed to inform Plaintiffs by either oral or written notice" of the required information prior to taking a tip credit.[44]

Focusing next on the state law claims, Plaintiffs bring claims under the LWPA and for conversion of funds under Louisiana law.[45] Plaintiffs aver excessive credit card fees that were retained by Defendants, without a good faith belief that the amounts were withheld legally, amount

---

[38] Rec. Doc. 60 at 7 (quoting Rec. Doc. 50 at 4).

[39] *Id.* at 8.

[40] *Id.* at 6.

[41] Rec. Docs. 50, 56.

[42] Rec. Doc. 60 at 9.

[43] *Id.*

[44] *Id.* (quoting Rec. Doc. 50 at 4).

[45] Rec. Doc. 1.

to illegal "fines" under the LWPA.[46] Therefore, Plaintiffs assert that they are entitled to statutory penalty wages, costs, and attorneys' fees under the LWPA.[47] Further, Plaintiffs contend that "Banana Blossom testified to retaining employee tips for an excessive and arbitrary fee."[48] Thus, Plaintiffs argue that Defendants are liable for the tort of conversion under Louisiana law.[49] Accordingly, Plaintiffs argue that summary judgment is appropriate for Defendants' liability for these claims.[50]

Lastly, Plaintiffs aver that Defendants do not contest Plaintiffs' right to attorneys' fees and costs.[51] Instead, Plaintiffs contend that Defendants merely assert their right to have the attorneys' fees and costs properly calculated after trial.[52] Thus, Plaintiffs move the Court to grant summary judgment as to Defendants' liability for attorneys' fees and costs, and leave the calculation and determination of reasonableness of these amounts for post-trial briefings.[53]

**B.    Defendants' Arguments**

Defendants concede that they have stipulated to overtime violations under the FLSA "leaving the calculation of those FLSA claims, liquidated damages, attorneys' fees, and costs the only remaining element[s] to those claims."[54] However, Defendants assert that "establishing a

---

[46] Rec. Doc. 51 at 5, 7.

[47] *Id.* at 7.

[48] *Id.* at 6.

[49] *Id.*

[50] Rec. Doc. 60 at 9–11.

[51] *Id.* at 12.

[52] *Id.*

[53] *Id.*

[54] Rec. Doc. 52 at 1.

historical work pattern to average the amount of weeks an employee worked overtime as well as the amount of hours worked over 40 hours in an overtime week would be the most prudent method to" recalculate overtime "where weekly hours cannot be recalled[.]"[55] Further, Defendants contend that they acted in "good-faith reliance on standard industry payroll practices and reasonable interpretations of applicable labor statutes."[56] Thus, "this Court should exercise its statutory discretion to deny or substantially reduce liquidated damages."[57]

Turning to the improper tip pooling claim, Defendants aver that even if the tip pooling sometimes violated the Department of Labor's (the "DOL") guidance regarding managers retaining tips, "the proper legal remedy is not to invalidate the entire tip pool for all employees for all shifts. The appropriate remedy—if any—is strictly limited to disgorging the specific tip amounts [the manager] directly received on those specific shifts and redistributing them to eligible participating staff."[58]

As to the credit card fee claims, Defendants contend that because the fees withheld from Plaintiffs' pay "reflect the actual third-party costs borne out to facilitate tip payouts, they do not constitute unlawful withholdings and cannot be used to retroactively alter or inflate the regular rate of pay for overtime claims."[59]

As to the LWPA claims, Defendants "agree that the Plaintiffs may be eligible for those particular items of damage, the underlying calculations of the damages themselves are in dispute. Once properly calculated, the attributable penalty wages, costs and reasonable attorney's fees are

---

[55] *Id.* at 1–2.

[56] *Id.* at 2.

[57] *Id.*

[58] *Id.*

[59] *Id.* at 3.

not contested."[60] However, Defendants contend that the conversion claims are duplicative and inappropriate here, where the FLSA and LWPA "provide comprehensive statutory schemes designed specifically to address unpaid wages, overtime, and improper deductions."[61]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[62] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[63] All reasonable inferences are drawn in favor of the nonmoving party.[64] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[65] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[66] The nonmoving party may not rest upon the pleadings.[67] Instead, the nonmoving

---

[60] *Id.*

[61] *Id.*

[62] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[63] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)).

[64] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 150).

[65] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[66] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cites Serv. Co.,* 391 U.S. 253, 289 (1968)).

[67] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[68]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[69] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[70] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[71] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[72]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[73] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[74]

---

[68] *See id.*; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[69] *Celotex Corp.*, 477 U.S. at 323.

[70] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (internal citation omitted).

[71] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[72] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[73] *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted).

[74] *Morris*, 144 F.3d at 380.

**IV. Analysis**

The parties stipulate as to Defendants' liability under the FLSA for withholding earned overtime wages for Plaintiffs but dispute the amount of overtime wages owed. Defendants do not appear to outright stipulate liability for any other claims, but they stipulate to facts within the Joint Summary of Facts, which the Court addresses below in relation to liability for the remaining claims.[75] Accordingly, the Court addresses the parties' arguments regarding the overtime wage calculations and each claim in turn. Plaintiffs assert that Defendants bear the burden of producing evidence of the exact amount of hours worked by Plaintiffs, or any evidence that contradicts Plaintiffs' proposed calculation.[76] In the event Defendants are unable to meet this burden, Plaintiffs assert that the Court may then award damages to Plaintiffs, "even though the result be only approximate."[77] Defendants contend that "establishing a historical work pattern to average the amount of weeks an employee worked overtime as well as the amount of hours worked over 40 hours in an overtime week would be the most prudent method to" recalculate overtime "where weekly hours cannot be recalled[.]"[78]

"The FLSA sets the standard workweek at forty hours and requires employers to pay non-exempt employees no less than one and one-half times their regular rate of pay for any hours worked in excess of forty."[79] "The DOL provides to employers various methods for calculating

---

[75] *McGehee v. Certaineed Corp.*, 101 F.3d 1078, 1080 (5th Cir. 1996) ("It is a well-settled rule that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial.").

[76] Rec. Doc. 51 at 3.

[77] *Id.* at 2 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

[78] Rec. Doc. 52 at 1–2.

[79] *Black v. SettlePou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013) (citing 29 U.S.C. § 207(a)(1)).

overtime compensation to suit different employment needs while still complying with § 207(a)."[80]

However, the regular method of calculating overtime pay for an FLSA claim, under which

employees are paid an hourly rate, is to allocate 1.5 times that rate for overtime hours.[81] Here, the

Court finds the regular method of calculating overtime pay is applicable because all Plaintiffs were

hourly employees.

Defendants have failed to maintain or produce complete timekeeping records for each

Plaintiff, thus failing to establish exactly how many hours each person worked during the relevant

period. Where "'the employer's records are inaccurate or inadequate,' a plaintiff need only show

by 'just and reasonable inference' that she was an employee, worked the hours, and wasn't paid."[82]

"It's a lenient standard rooted in the view that an employer shouldn't benefit from its failure to

keep required payroll records, thereby making the best evidence of damages unavailable."[83]

Accordingly, Plaintiffs will be afforded the opportunity at trial to show by "just and reasonable

inference" the hours worked.

If Plaintiffs establish this inference, then the burden "shifts to the employer to come

forward with evidence of the precise amount of work performed or with evidence to negate the

reasonableness of the inference."[84] "When an action involves a group of employees, a

'representative sample,' if reliable, can shift the burden to the employer."[85] "The representative

---

[80] *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 633 (5th Cir. 2001).

[81] *Fraser v. Patrick O'Connor & Associates, L.P.*, 954 F.3d 742, 748 (5th Cir. 2020) (citing 29 U.S.C. § 207(a)(1)); *see also* 29 C.F.R. § 778.110.

[82] *United States Dept. of Labor v. Five Star Automatic Fire Prot., LLC*, 987 F.3d 436, 439 (5th Cir. 2021) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

[83] *Id.*

[84] *Id.* at 442.

[85] *Id.* (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 136 (2016)).

proof is reliable 'if the sample could have sustained a reasonable jury finding . . . in each employee's individual action.'"[86] "If the employer fails to negate the inferences raised by the representative evidence, 'the court may then award damages to the employee[s], even though the result be only approximate.'"[87] Therefore, Plaintiffs will be permitted to present individualized and/or representative evidence to establish a just and reasonable inference as to the amount of work performed. However, Defendants will also be allowed to present evidence to attempt to negate the inferences raised by Plaintiffs' evidence. Accordingly, the Court grants Plaintiffs' motion to the extent that it seeks summary judgment as to Defendants' liability on the unpaid overtime claims but leaves the calculation of said damages to the jury.

In addition to unpaid overtime, Plaintiffs assert that they are owed liquidated damages, attorneys' fees, and costs. Defendants contend that liquidated damages should be denied or substantially reduced because Defendants were acting in good faith at all times, and the attorneys' fees must be limited to a reasonable amount. The FLSA provides that a successful claimant for unpaid wages shall be entitled to his "unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages."[88] Further, "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."[89]  The parties do not dispute that an award of attorneys' fees and costs to Plaintiffs is warranted. Instead, Defendants simply insist that Plaintiffs' attorneys' fees be reasonably limited. Because Plaintiffs do not oppose Defendants' position and

---

[86] *Id.*

[87] *Id.* (quoting *Anderson*, 328 U.S. at 688).

[88] 29 U.S.C. § 216(b).

[89] *Id.*

Plaintiffs continue to incur attorneys' fees as this litigation proceeds, the determination of a reasonable attorneys' fee award and costs shall be the subject of post-trial briefings.

As to liquidated damages, if Defendants sustain their burden of showing that their failure to obey the FLSA was in good faith, the Court may exercise its discretion "to reduce or to eliminate a liquidated damages award[.]"[90] However, even if Defendants meet their burden of showing that they were acting in good faith, the Court still has the discretion to award liquidated damages up to the amount allowed by the FLSA.[91] The parties will have an opportunity at trial to present evidence as to Defendants' good faith or lack thereof. Hence, the issue of whether to award liquidated damages to Plaintiffs, and if so for what amount, must be resolved after trial.

The Court next turns to Plaintiffs' claims that they are owed back wages for illegal tip pooling and improper credit card processing fees pursuant to the FLSA. Generally, an employer may not retain any portion of employee tips for any reason.[92] The FLSA contains an exception that permits employers to pay less than the general minimum wage—as little as $2.13 per hour—to a "tipped employee" as long as the employee's tips make up the difference between the $2.13 minimum wage and the general $7.25 minimum wage.[93] Paying less than minimum wage is described as an employer taking a "tip credit" because the tips are "credited" towards the minimum wage.[94] "A restaurant may not claim a tip credit unless "'all tips received by [a tipped] employee

---

[90] *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 928 (5th Cir. 1999).

[91] *Id.*

[92] 29 U.S.C. § 203(m)(2)(B).

[93] 29 U.S.C. § 203(m).

[94] *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 874 (8th Cir. 2011).

have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.'"[95]

Defendants stipulate that Plaintiffs were required to participate in tip pooling that "allotted 10% of tips to salaried kitchen staff, 5% to the host, a percentage to credit card fees, and split the remainder between servers and expeditors. If Sara, the salaried general manager of Banana Blossom, clocked in as a server, she received a share of the tips."[96] While this appears to be a violation of the FLSA tip credit provision on its face, the key determination of whether other employees may receive a share of the tip pool hinges on whether those employees "customarily and regularly receive tips" excluding the tips received through the tip pool.[97] Further, the Fifth Circuit has made clear that the factfinder must consider an employee's job duties with a particular emphasis on the "extent of an employee's customer interaction" and whether the employee is "engaging in customer service functions[,]" when determining if that employee "customarily and regularly receive tips."[98] Because the parties dispute Defendants' liability as to this claim and the determinative factor is a question of fact, the Court denies summary judgment on this claim, leaving the determination of liability to the jury.

Focusing on the back wages allegedly owed for improper credit card processing fees, another FLSA exception under which an employer may retain employee tips, is that an employer may deduct the actual cost of credit card processing fees from tips.[99] Defendants stipulate that "[f]rom approximately 2015 to mid-2024, Banana Blossom deducted 5% from the tip pool for

---

[95] *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015).

[96] Rec. Doc. 50 at 4.

[97] *Montano*, 800 F.3d at 189.

[98] *Id.* at 193.

[99] *See Steele v. Leason Enters., Ltd.*, 826 F.3d 237, 244 (5th Cir. 2016).

16

'credit card processing fees,' taken for both credit card and debit card sales, greater than the actual transactional fees charged by the credit card companies."[100] Accordingly, there is no genuine dispute of material fact as to Defendants' liability for the excessive credit card fee claim, because they admit to taking a fee from Plaintiffs in excess of the actual fee charged by the credit card companies. Therefore, the Court grants summary judgment in favor of Plaintiffs as to Defendants' liability for the improper credit card fee FLSA claim but leaves the calculation of damages to the jury at trial.

Looking at Plaintiffs' FLSA retaliation claim, Plaintiffs assert that Defendants retaliated against Plaintiffs in response to Plaintiff Connor Pulliam and other employees informing Jimmy Cho that Banana Blossom's practices were in violation of the FLSA. In support, Plaintiffs point to the Joint Summary of Facts where Defendants stipulated that "Defendants limited Connor Pulliam's hours at Banana Blossom and prohibited him from covering shifts for other employees because he disagreed with Connor's position at the meeting. Defendants also placed other employees who participated in the meeting on a 'chopping block list' for the same reason."[101]

The FLSA retaliation claim has three elements: "(1) participation in a protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action."[102] Defendants stipulate that employees met with Jimmy Cho to notify him that his practices were in violation of the FLSA, which is a protected activity under the FLSA.[103] However, while Defendants appear to stipulate that they limited Pulliam's hours and placed other

---

[100] Rec. Doc. 50 at 4.

[101] *Id.* at 5.

[102] *Rodriguez v. City of Corpus Christi*, 129 F.4th 890, 898 (5th Cir. 2025).

[103] Rec. Doc. 50 at 5; *See Allen v. Envirogreen Landscape Prof'ls, Inc.*, 721 F. App'x 322, 327 (5th Cir. 2017) ("Complaints about wages, hours of work, and working conditions are protected under § 15(a)(3) of the Fair Labor Standards Act").

17

employees on a "chopping block" for taking part in this meeting, Defendants do not stipulate what effect being on the "chopping block list" had on the other employees. Accordingly, the Court grants summary judgment as to Defendants' liability for the retaliation claim against Pulliam, but the Court leaves the calculation of damages to the jury at trial. Further, the Court denies summary judgment as to any other Plaintiffs' retaliation claims. The parties will have the opportunity to present evidence as to the elements of retaliation claims asserted by the other Plaintiffs at trial.

Turning to the failure to provide the required tip credit notice FLSA claim, under the FLSA, employers must provide a range of specific information to tipped employees before taking a tip credit under the FLSA.[104] An employer that fails to provide the required information may not take the section 3(m)(2)(A) tip credit.[105] Here, Defendants stipulated that they "failed to inform Plaintiffs by either oral or written notice" of the required information prior to taking a tip credit.[106] Therefore, the Court grants summary judgment in favor of Plaintiffs as to Defendants' liability on the failure to provide notice claims, leaving the damages calculation to the jury at trial.

Next, the Court looks to the state law claims asserted by Plaintiffs. Plaintiffs assert unpaid wage and illegal fine claims under the LWPA and state law conversion claims. Under the Louisiana Wage Payment Act, when an employer does not pay earned wages after a demand, the employer "shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser

---

[104] 29 C.F.R. § 531.59(b).

[105] *Id.*

[106] Rec. Doc. 50 at 9.

amount of penalty wages."[107] Here, Defendants have stipulated that "Defendants did not pay overtime as required by law."[108] Therefore, there is no genuine dispute of material fact as to Defendants' liability for the unpaid wage LWPA claim. However, because Plaintiffs' hourly rates have yet to be calculated, the Court is unable to grant summary judgment on the damages amount despite a clear formula for doing so. Hence, the Court grants summary judgment in favor of Plaintiffs as to Defendants' liability for the LWPA unpaid wages claims, but the Court leaves the calculation of damages until trial.

As to the LWPA illegal fine claims, under section 635 of the LWPA, "[n]o person, acting either for himself or as agent or otherwise, shall assess any fines against his employees or deduct any sum as fines from their wages."[109] Plaintiffs argue that excessive credit card fees taken from the tip pool amount to an illegal fine within the definition of the LWPA. Defendants contest this assertion, insisting that not all withheld wages amount to fines under the LWPA. As this statute makes clear "not all deductions are prohibited; only fines or deductions made as fines are prohibited. The term 'fines' has a very specific and limited meaning. 'A fine, within the meaning of [section] 23:635, is a pecuniary penalty imposed for the violation of some law, rule or regulation.'"[110] Defendants have admitted to withholding pay from Plaintiffs. However, "[t]he few cases discussing [Section] 23:635 restrict employers from levying fines on the employee (via

---

[107] La. Rev. Stat. § 23:632(A).

[108] Rec. Doc. 50 at 6.

[109] La. Rev. Stat. § 23:635.

[110] *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 637 (5th Cir. 2001) (quoting *Brown v. Navarre Chevrolet, Inc.*, 610 So. 2d 165, 170 (La. App. 3 Cir. 1992)).

deductions from wages) for *failing to follow workplace procedures and regulations*."[111] The Complaint does not allege and Plaintiffs have not presented any evidence to suggest that the credit card fees or the other amounts owed were withheld as a penalty for failing to follow any law, rule, or regulation. Defendants also failed to file sufficient briefing on whether the withheld pay can be considered a fine under the LWPA. Nevertheless, Plaintiffs have the burden of alleging their claims with sufficient specificity and pointing to evidence that supports said claims at the summary judgment stage. Plaintiffs have not asserted enough facts or presented evidence sufficient to show that the withheld pay was a fine. Accordingly, the Court grants summary judgment in favor of Defendants as to the LWPA illegal fine claim, dismissing said claim with prejudice.

Turning to the state law conversion claim, Plaintiffs contend that Defendants committed the tort of conversion by withholding earned wages from Plaintiffs. "Conversion is an intentional tort and consists of an act in derogation of the plaintiff's possessory rights."[112] "The tort of conversion is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's rights."[113] "Any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion."[114] "Although the defendant may have rightfully come into possession of another's goods, the subsequent refusal to surrender the goods to one who is entitled to them may constitute conversion."[115] "In a conversion suit, it is no defense that the defendant

---

[111] *Id.* at 637–38 (citing *Brown v. Navarre Chevrolet, Inc.*, 610 So. 2d 165, 170 (La. App. 3 Cir. 1992); *Stoll v. Goodnight Corp.*, 469 So. 2d 1072, 1077 (La. App. 2 Cir. 1985); *Hanks v. Shreveport Yellow Cabs*, 187 So. 817, 819 (La. App. 2 Cir. 1939)) (emphasis added).

[112] *Aymond v. State, Dep't of Revenue and Tax'n*, 95-1663 (La. App. 1 Cir. 4/4/96), 672 So. 2d 273, 275.

[113] *Id.*

[114] *Id.*

[115] *Id.* at 276.

was not negligent or that the defendant acquired the plaintiff's property through the plaintiff's unilateral mistake, or that the defendant acted in complete innocence and perfect good faith."[116] However, "[i]f the owner expressly or impliedly assents to or ratifies the taking, use, or disposition of his property, he cannot recover for conversion of the property."[117] Defendants have not expressly stipulated to liability for this claim and are entitled to pursue any defenses available to them. Therefore, there is still a genuine dispute of material fact as to whether Plaintiffs assented to Defendants' taking of their wages prior to raising the issue with Jimmy Cho in 2025. Accordingly, the Court denies summary judgment as to the conversion claim.

## V. Conclusion

In light of Defendants' stipulations, the Court grants summary judgment in favor of Plaintiffs as to Defendants' liability for the FLSA unpaid overtime claims, improper credit card fee claims, failure to provide notice claims, Plaintiff Connor Pulliam's retaliation claim, and the LWPA unpaid wages claims, leaving the calculation of damages on these claims to the jury at trial. However, the award of attorneys' fees, costs, and liquidated damages under the FLSA will be the subject of post-trial briefings. Further, the Court grants summary judgment in favor of Defendants regarding the LWPA illegal fine claims, dismissing said claims with prejudice. The Court denies summary judgment as to all other claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment[118] is **GRANTED IN PART AND DENIED IN PART.** The motion is granted to the extent it seeks

---

[116] *Id.*

[117] *Id.*

[118] Rec. Doc. 52.

dismissal of the LWPA illegal fine claims. The motion is denied in all other respects.

IT IS FURTHER ORDERED that the LWPA illegal fine claims against Defendants are **DISMISSED WITH PREJUDICE**.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment[119] is **GRANTED IN PART AND DENIED IN PART**. The motion is granted to the extent that it seeks a determination of liability as to the FLSA unpaid overtime claims, improper credit card fee claims, failure to provide notice claims, Plaintiff Connor Pulliam's retaliation claim, and the LWPA unpaid wages claims. The motion is denied in all other respects.

**NEW ORLEANS, LOUISIANA**, this <u>10th</u> day of August, 2026.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[119] Rec. Doc. 51.