## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release (the "Agreement") is made as of _____, 2026, by and between CONNOR PULLIAM, ERIC TRUONG, MAJELLA "MJ" VILLAEBA, KATHERIN TEMPLETON, ASSATA SIMPSON, and PAKANAN TONSAKUL, individually and on behalf of those similarly situated, together with every Opt-In Plaintiff who filed a consent to join on or before August 13, 2026 (collectively, "Plaintiffs"), on the one hand, and BANANA BLOSSOM THAI CAFÉ, LLC and RATTANASAK "JIMMY" CHOTIKARNKUL (collectively, "Defendants"), on the other hand.

WHEREAS, Banana Blossom Thai Café, LLC operates a restaurant in Gretna, Louisiana, and has been owned and operated by Rattanasak Chotikarnkul, who uses the alias "Jimmy Cho," since 2009;

WHEREAS, Plaintiffs are current and former employees of Banana Blossom;

WHEREAS, on June 30, 2025, Plaintiffs filed suit against Defendants in the United States District Court for the Eastern District of Louisiana, *Pulliam, et al. v. Banana Blossom Thai Café, LLC, et al.*, No. 2:25-cv-01341-NJB-MBN (the "Lawsuit"), alleging that Defendants failed to pay overtime, took an unlawful tip credit, deducted credit card processing fees from employee tips, required servers to share tips with salaried kitchen staff and managers, failed to keep the records required by 29 C.F.R. Part 516, and retaliated against employees who complained, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, the Louisiana Wage Payment Act, La. R.S. 23:631, *et seq.*, and the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, *et seq.*, and asserting a claim for conversion of wages;

WHEREAS, on June 24, 2026, the Court granted Plaintiffs' *Motion to Certify FLSA Collective Action* (R. Doc. 37), notice issued to potential collective members, and the period for filing consents to join closes on August 13, 2026;

WHEREAS, on June 22, 2026, the Court granted Plaintiffs' *Motion to Compel* and awarded Plaintiffs their attorney's fees (R. Doc. 36), and the Court thereafter conducted show-cause proceedings concerning Defendants' discovery conduct (R. Docs. 25, 38, 43, 49);

WHEREAS, the Parties engaged in written discovery, document production, subpoenas to third parties, a Rule 30(b)(6) deposition of Banana Blossom, depositions of Rattanasak Chotikarnkul, Kulisara Jinawong, and Christian Cuong Van Nguyen, a settlement conference before Magistrate Judge North on May 19, 2026, a further settlement conference on July 23, 2026,

and a pre-trial conference before Judge Brown on August 3, 2026, and the matter is set for jury trial beginning August 17, 2026;

WHEREAS, in the Joint Pre-Trial Order (R. Doc. 50), the Parties jointly stated that Defendants implemented company-wide policies of not paying overtime at one and one-half times the regular rate, deducting credit card fees from employee tips, requiring servers to participate in a tip pool with salaried kitchen staff and managers while taking a tip credit, and not maintaining the records required by 29 C.F.R. Part 516;

WHEREAS, in a ruling on summary judgment (R. Doc. 63), the Court "summary judgment in favor of Plaintiffs as to Defendants' liability for the FLSA unpaid overtime claims, improper credit card fee claims, failure to provide notice claims, Plaintiff Connor Pulliam's retaliation claim, and the LWPA unpaid wages claims, leaving the calculation of damages on these claims to the jury at trial."

WHEREAS, Defendants, solely to avoid the burden, expense, and uncertainty of continued litigation and trial, have agreed to resolve the Lawsuit on the terms set forth in this Agreement;

WHEREAS, the Parties agree that a bona fide dispute exists over the quantum of hours worked, the quantum of the tip credit, the amount of tips diverted, and other remedies, and that this Agreement resolves that dispute;

WHEREAS, the Parties wish to fully and finally resolve the Lawsuit and all claims asserted or that could have been asserted therein;

NOW THEREFORE, in consideration of the foregoing and of the mutual covenants and promises set forth below, the sufficiency of which is conclusively acknowledged, the Parties agree as follows:

## I. DEFINITIONS

1.1     "Agreement" means this Confidential Settlement Agreement and Release, together with its Exhibits.

1.2     "Class Period" means the period from June 30, 2022 through the date of this Agreement.

1.3     "Initial Violation Period" means the period from June 30, 2022 through May 1, 2025.

1.4    "Consent Judgment" means the judgment attached as Exhibit B, executed by Defendants contemporaneously with this Agreement and held by Plaintiffs' Counsel, to be filed only upon an uncured Event of Default as provided in Section VI.

1.5    "Court" means the United States District Court for the Eastern District of Louisiana.

1.6    "Defendants" means Banana Blossom Thai Café, LLC and Rattanasak "Jimmy" Chotikarnkul.

1.7    "Effective Date" means the date on which the first Party executes this Agreement.

1.8    "Named Plaintiffs" means Connor Pulliam, Eric Truong, Majella "MJ" Villaeba, Katherin Templeton, Assata Simpson, Pakanan Tonsakul, Mariecar Garcia, Vera Garcia, Vincent Nguyen, and Camran White.

1.9    "Opt-In Plaintiff" means every person who filed a consent to join the collective action with the Court on or before August 13, 2026 and who has not withdrawn that consent. The Parties will attach the final list of Opt-In Plaintiffs as Exhibit A within seven (7) days after August 13, 2026.

1.10    "Plaintiffs" means the Named Plaintiffs and the Opt-In Plaintiffs, together with their agents, representatives, heirs, executors, administrators, beneficiaries, trustees, estates, successors, and assigns.

1.11    "Plaintiffs' Counsel" means Most & Associates, including William Most and Hope Phelps, and Kenneth C. Bordes, Attorney at Law, L.L.C., including Kenneth C. Bordes and Abigail Floresca.

1.12    "Released Parties" means Defendants Banana Blossom Thai Café, LLC and Rattanasak Chotikarnkul.

1.13    "Settlement Amount" means NINE HUNDRED THOUSAND AND 00/100 DOLLARS ($900,000.00), inclusive of THREE HUNDRED AND SIXTY THOUSAND AND 00/100 DOLLARS ($360,000.00) of attorney fees, and THREE THOUSAND FIVE HUNDRED SIXTY-TWO AND 36/100 DOLLARS ($3,562.36) of costs, payable to Plaintiffs as set forth in Section III.

1.14    "Settlement Payment" means each installment of the Settlement Amount described in Section 3.2.

## II.  COURT APPROVAL

2.1     Within seven (7) days after the Effective Date, the Parties will jointly move the Court for a stipulated judgment preliminarily approving this Agreement, and will thereafter move for final approval and for entry of an order of dismissal with prejudice that expressly retains jurisdiction to enforce this Agreement.

2.2     If the Court conditions approval on a material modification of this Agreement, the Agreement is null and void ab initio unless counsel for both sides confirm their agreement to the modification in writing to the Court within ten (10) business days.

2.3     The Parties will jointly request that the Court, in its order of dismissal, expressly retain jurisdiction over the enforcement of this Agreement. See *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994).

## III.  SETTLEMENT AMOUNT, ALLOCATION, AND PAYMENT

3.1     Allocation. Defendants will pay, and Plaintiffs will receive, the Settlement Amount of NINE HUNDRED THOUSAND AND 00/100 DOLLARS ($900,000.00), allocated as follows in settlement of Plaintiffs' claims for unpaid minimum wages, unpaid overtime wages, unlawfully retained or diverted tips, liquidated damages under 29 U.S.C. § 216(b), penalty wages under La. R.S. 23:632, and statutory damages under La. R.S. 51:1409, attorney fees, and costs.

3.2     Payment Schedule. Defendants will pay the Settlement Amount as follows:

(a)     Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00) within fifteen (15) days after the Court enters an order approving this Agreement, or within thirty (30) days after the Effective Date, whichever is later; and

(b)     The remaining Six Hundred and Fifty Thousand and 00/100 Dollars ($650,000.00) in twelve (12) consecutive monthly installments. The first eleven monthly installments of Fifty Four Thousand One Hundred Sixty-Six and 66/100 Dollars ($54,166.66) each, and the twelfth and final monthly installment of Fifty Four Thousand One Hundred Sixty-Six and 74/100 Dollars ($54,166.74), the first due thirty (30) days after timely payment of the payment noted in subsection 3.2(a) within the Effective Date and each subsequent installment due on the same day of each succeeding month until paid in full.

3.3     Manner of Payment. Each Settlement Payment will be made by wire transfer or certified funds payable to "Most & Associates Client Trust Account" and delivered to Plaintiffs' Counsel. Payment to Plaintiffs' Counsel's trust account constitutes payment to Plaintiffs for purposes of this Agreement.

3.4     Prepayment. Defendants may prepay any portion of the Settlement Amount at any time without penalty.

3.5     Allocation Among Plaintiffs. After pro rata reduction of attorney fees and full reimbursement of costs as described in Section IV and V below, settlement funds will be allocated among Plaintiffs on a pro rata basis determined by a weighted score for each Plaintiff using two weighted factors: length of employment during the Initial Violation Period, June 30, 2022 through May 1, 2025, and length of employment during the Class Period outside of the Initial Violation Period after May 1, 2025 (time outside of the initial violation period is weighted at ten percent compared the Initial Violation Period). Each Plaintiff's length of employment during the Initial Violation Period is divided by the longest length of employment among all Plaintiffs, producing a ratio between zero and one. Each Plaintiff's length of employment during the Class Period is divided by ten times the longest length of employment among all Plaintiffs, producing a ratio between zero and point one (0.10). The two ratios are added to produce that Plaintiff's individual weighted score. Each Plaintiff's share is that Plaintiff's individual weighted score divided by the sum of all individual weighted scores. The resulting calculations are attached as Exhibit A. Each Plaintiff will receive a copy of Exhibit A showing only that Plaintiff's own calculation.

3.6     Tax Treatment. Settlement Payments will be made without withholding, and Defendants may issue an IRS Form 1099 to Plaintiff counsel and each Plaintiff for the amount that Plaintiff receives. Each Plaintiff is solely responsible for the tax consequences of his or her recovery. Neither Defendants nor Plaintiffs' Counsel has given, and no Plaintiff has relied on, any tax advice.

## IV.  ATTORNEY'S FEES AND COSTS

4.1     Attorney Fees and Costs Claims. Plaintiffs are the prevailing parties and are entitled to their reasonable attorney's fees and costs under 29 U.S.C. § 216(b) and La. R.S. 23:632. It is further agreed that attorney's fees and costs are resolved and are represented as $360,000.00 of the $900,000.00 amount referenced in Section III, and costs are represented as $3,562.36 of the $900,000.00 amount in Section III.

4.2    Prior Fee Award. Defendants' payment of the attorney's fees awarded in R. Doc. 36 is acknowledged as satisfied and is not affected by this Agreement.

## V.  SETTLEMENT ADMINISTRATION

5.1    Plaintiffs' Counsel will administer the settlement and will bear the cost of doing so, and may in their discretion engage a third-party administrator at their own expense.

5.2    Within twenty-one (21) days after Plaintiffs' Counsel receives a Settlement Payment, Plaintiffs' Counsel will distribute that payment to Plaintiffs in the pro rata amounts calculated under Section 3.5, after removal of all current costs and the applicable portion of attorney fees per that Settlement Payment. Plaintiffs' Counsel may, in their discretion, hold distributions and make them in fewer, larger disbursements where doing so serves accuracy and uniformity.

5.3    Checks will be sent to the last known address of each Plaintiff as stated on that Plaintiff's consent form or as otherwise provided to Plaintiffs' Counsel. If a check is returned as undeliverable, Plaintiffs' Counsel will make a diligent effort to locate the Plaintiff and will resend the check once. If a check is returned a second time, Plaintiffs' Counsel will hold the funds for ninety (90) days and thereafter deliver them to the Louisiana unclaimed property fund in that Plaintiff's name.

## VI.  DEFAULT, ACCELERATION, AND CONSENT JUDGMENT

6.1    Event of Default. An "Event of Default" occurs if Defendants fail to make any Settlement Payment in full on the date it is due, or fail to perform any other material obligation under this Agreement.

6.2    Notice and Cure. Plaintiffs' Counsel will give written notice of an Event of Default to Defendants' counsel by email and certified mail. Defendants have ten (10) days from the date of that notice to cure. The cure period applies to the first two Events of Default only; a third Event of Default requires no notice and affords no cure period.

6.3    Acceleration. Upon an uncured Event of Default, the entire unpaid balance of the Settlement Amount becomes immediately due and payable in full, together with judicial interest from the date of default and the reasonable attorney's fees and costs Plaintiffs incur in enforcing this Agreement.

6.4    Consent Judgment. Contemporaneously with the execution of this Agreement, Defendants will execute the Consent Judgment attached as Exhibit B in favor of Plaintiffs, *in solido*, in the full amount of the Settlement Amount, subject to credit for all payments actually received. Plaintiffs' Counsel will hold the executed Consent Judgment and will not file it unless an Event of Default occurs and is not timely cured. Upon an uncured Event of Default, Plaintiffs may file the Consent Judgment together with an affidavit of Plaintiffs' Counsel stating the amount paid and the amount remaining, and may move the Court to enter it in the accelerated amount. Defendants waive any objection to the entry of the Consent Judgment other than an objection that payment was in fact made.

6.5    Full Satisfaction. Upon payment of the Settlement Amount in full, Plaintiffs' Counsel will return the original Consent Judgment to Defendants' counsel and will file a satisfaction of judgment if any judgment has been entered.

6.6    Solidary Liability. Banana Blossom Thai Café, LLC and Rattanasak Chotikarnkul are bound *in solido* for the Settlement Amount and for every other monetary obligation under this Agreement.

## VII.  STIPULATED FINDINGS

7.1    Purpose. The findings in this Section are material to Plaintiffs' agreement to accept payment over time rather than proceed to trial on August 17, 2026. Defendants make these stipulations knowingly, on advice of counsel, and with the express intent that they be conclusive and binding in any subsequent proceeding between the Parties, including any proceeding under 11 U.S.C. § 523.

7.2    Stipulated Facts. Defendants stipulate that, during the Class Period:

(a)    Defendants required servers to contribute tips to a tip pool that included salaried kitchen staff and managers who were not eligible participants in a valid tip pool, while simultaneously claiming a tip credit against the minimum wage owed to those servers;

(b)    Defendants deducted credit card processing fees from employees' tips, including on transactions Defendants' own point-of-sale system identified as debit transactions on which no such fee was charged to Defendants;

(c) Defendants did not pay employees one and one-half times the regular rate for hours worked in excess of forty in a workweek;

(d) Defendants did not make, keep, and preserve the records required by 29 U.S.C. § 211(c) and 29 C.F.R. Part 516, and did not preserve tip pool records that would have shown the amounts diverted;

(e) Rattanasak Chotikarnkul personally implemented and maintained each of the practices described in subparagraphs (a) through (d), acted as the decision maker in all respects as to how Banana Blossom operated, and knew that employees were not receiving the wages and tips those practices withheld from them; and

(f) Defendants responded to employee complaints about these practices by barring Connor Pulliam from picking up shifts and terminating Katherin Templeton.

7.3 Stipulated Characterization. Defendants stipulate that the conduct described in Section 7.2 was willful; that it was undertaken with the intent to obtain money and property belonging to Plaintiffs; that Defendants held Plaintiffs' tips in a fiduciary capacity and failed to account for them; and that the resulting injury to Plaintiffs was both willful and malicious within the meaning of 11 U.S.C. § 523(a)(6).

7.4 Preclusive Effect. The Parties intend the findings in Sections 7.2 and 7.3 to be actually litigated, necessarily determined, and conclusively established for all purposes, and to be given preclusive effect in any later proceeding, including any proceeding to determine the dischargeability of this debt under 11 U.S.C. § 523(a)(2), (a)(4), or (a)(6). See *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991).

7.5 No Waiver of Discharge. Nothing in this Agreement is intended to operate as a waiver of any right to a discharge in bankruptcy, and no provision of this Agreement should be construed as such a waiver. Defendants' obligation is to the stipulated facts and characterizations set forth above, which the Parties intend to be binding as findings; the legal effect of those findings on dischargeability is reserved to the bankruptcy court.

7.6 Limited Use. The stipulations in this Section are made for the purposes stated in Section 7.1 and for enforcement of this Agreement. They are not admissions for any other purpose, and Section IX governs all matters not addressed in this Section.

7.7     Agreement and Court Approval Moving Forward. Defendants acknowledge and agree that: a.) it shall maintain records in accordance with the FLSA Rules and Regulations, 29 C.F.R. Part 516, *et seq.*, b.) adhere to minimum wage and overtime requirements as called for under the FLSA, 29 U.S.C. 201, *et seq.*, c.) adhere to rules and regulations related to any tip pooling, 29 C.F.R. 531.54, d.) refrain from charging employees any fees, fines, or charges in excess of the actual charge, e.) compensate any discharged or resigned employee all wages owed, without applying any unlawful fine or deduction, upon such termination of employment within the timelines proscribed under the Louisiana Wage Payment Act, La. R.S. 23:631, *et seq.*, and f.) refrain from any retaliation or adverse employment actions against anyone who complains about, questions, or seeks clarification regarding Defendants' pay practices.

## VIII.  RELEASE

8.1     In consideration of the payments described in Sections III and IV, each Plaintiff, on his or her own behalf and on behalf of his or her trustees, guardians, receivers, administrators, executors, agents, heirs, and assigns, releases and forever discharges the Released Parties from all claims asserted in the Lawsuit and all claims arising out of or relating to the payment of wages, overtime, tips, or other compensation during that Plaintiff's employment with Defendants through the Effective Date, including claims under the Fair Labor Standards Act (including claims for liquidated damages and attorney's fees), the Louisiana Wage Payment Act, La. R.S. 23:631, *et seq.*, the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, *et seq.*, claims for conversion of wages, and claims for retaliation asserted in the Lawsuit.

8.2     This release does not extend to any claim arising after the Effective Date, to any claim for the enforcement of this Agreement, or to any workers' compensation claim.

8.3     Defendants will not take any retaliatory or discriminatory action against any Plaintiff because of that person's participation in the Lawsuit or in this settlement. Any claim arising from an act of retaliation occurring after the Effective Date is expressly reserved.

8.4     Each Plaintiff represents that he or she is the sole owner of the claims released in this Section, has not assigned or transferred any of them, and knows of no other pending claim against Defendants concerning the subject matter of the Lawsuit.

## IX.  DISMISSAL AND RETENTION OF JURISDICTION

9.1     Within seven (7) days after the Court enters an order granting final approval, the Parties will jointly file a stipulation of dismissal with prejudice under Federal Rule of Civil Procedure 41(a)(1), in the form attached as Exhibit C, and will request that the order of dismissal expressly retain jurisdiction over the enforcement of this Agreement until the Settlement Amount is paid in full.

9.2     The Court retains jurisdiction to resolve any dispute concerning the administration, interpretation, or enforcement of this Agreement, and to enter the Consent Judgment upon an uncured Event of Default.

## X.  MISCELLANEOUS

10.1     This Agreement is governed by Louisiana law, without regard to its conflict of laws provisions. Any dispute arising out of this Agreement will be brought in this Court.

10.2     This Agreement contains the entire understanding between the Parties on its subject matter and supersedes any prior understanding. Any amendment must be in writing and signed by each Party.

10.3     If any provision of this Agreement is held invalid or unenforceable after Court approval, the remainder remains in full force and effect.

10.4     No waiver of any term on one occasion is a waiver of any other term or of any later breach of the same term.

10.5     This Agreement binds and benefits the Parties and their successors, heirs, executors, administrators, representatives, and assigns.

10.6     This Agreement is the result of arm's-length negotiation between represented parties, including two settlement conferences before Magistrate Judge North. No presumption applies against either Party as the drafter.

10.7     This Agreement may be executed in counterparts and by electronic signature, each of which constitutes an original.

## XI.  CERTIFICATION

11.1    The signatories certify that they are authorized to execute this Agreement on behalf of themselves and their respective Parties. The Parties understand that the facts or the law may differ from what they presently understand or believe, and they are not relying on any oral or other statement in signing this Agreement.

11.2    By signing, each Party certifies that he, she, or it has read and understands this Agreement and has had the opportunity to consult counsel concerning it.

WHEREFORE, the Parties, by their duly authorized agents or counsel, have executed this Agreement as of the dates set forth below.

**PLAINTIFFS:**

Sworn to and subscribed at _____, Louisiana, in the presence of the undersigned competent witnesses, and me, Notary Public, on this _____ day of _____, 2026.

Dated: _____         _____
                               Connor Pulliam
                               on his or her own behalf and on behalf of all Plaintiffs

Witnesses:

_____         _____
Printed name: _____              NOTARY PUBLIC

_____
Printed name: _____


Sworn to and subscribed at _____, Louisiana, in the presence of the undersigned competent witnesses, and me, Notary Public, on this _____ day of _____, 2026.

Dated: _____         _____
                               Eric Truong
                               on his or her own behalf and on behalf of all Plaintiffs

Witnesses:

_____         _____
Printed name: _____              NOTARY PUBLIC

_____
Printed name: _____


Sworn to and subscribed at _____, Louisiana, in the presence of the undersigned competent witnesses, and me, Notary Public, on this _____ day of _____, 2026.

Dated: _____         _____
                               Majella "MJ" Villaeba
                               on his or her own behalf and on behalf of all Plaintiffs

Witnesses:

_____         _____
Printed name: _____              NOTARY PUBLIC

_____
Printed name: _____

Sworn to and subscribed at _____, Louisiana, in the presence of the undersigned competent witnesses, and me, Notary Public, on this _____ day of _____, 2026.

Dated: _____        _____

Katherin Templeton
on his or her own behalf and on behalf of all Plaintiffs

Witnesses:

_____        _____
Printed name: _____                        NOTARY PUBLIC

_____
Printed name: _____


Sworn to and subscribed at _____, Louisiana, in the presence of the undersigned competent witnesses, and me, Notary Public, on this _____ day of _____, 2026.

Dated: _____        _____

Assata Simpson
on his or her own behalf and on behalf of all Plaintiffs

Witnesses:

_____        _____
Printed name: _____                        NOTARY PUBLIC

_____
Printed name: _____


Sworn to and subscribed at _____, Louisiana, in the presence of the undersigned competent witnesses, and me, Notary Public, on this _____ day of _____, 2026.

Dated: _____        _____

Pakanan Tonsakul
on his or her own behalf and on behalf of all Plaintiffs

Witnesses:

_____        _____
Printed name: _____                        NOTARY PUBLIC

_____
Printed name: _____

Sworn to and subscribed at _____, Louisiana, in the presence of the undersigned competent witnesses, and me, Notary Public, on this ____ day of _____, 2026.

Dated: _____        _____
                             Mariecar Garcia
                             on his or her own behalf and on behalf of all Plaintiffs

Witnesses:

_____        _____
Printed name: _____                        NOTARY PUBLIC

_____
Printed name: _____


Sworn to and subscribed at _____, Louisiana, in the presence of the undersigned competent witnesses, and me, Notary Public, on this ____ day of _____, 2026.

Dated: _____        _____
                             Vera Garcia
                             on his or her own behalf and on behalf of all Plaintiffs

Witnesses:

_____        _____
Printed name: _____                        NOTARY PUBLIC

_____
Printed name: _____


Sworn to and subscribed at _____, Louisiana, in the presence of the undersigned competent witnesses, and me, Notary Public, on this ____ day of _____, 2026.

Dated: _____        _____
                             Vincent Nguyen
                             on his or her own behalf and on behalf of all Plaintiffs

Witnesses:

_____        _____
Printed name: _____                        NOTARY PUBLIC

_____
Printed name: _____


Sworn to and subscribed at _____, Louisiana, in the presence of the undersigned competent witnesses, and me, Notary Public, on this ____ day of _____, 2026.

Dated: _____         _____
                               Camran White
                               on his or her own behalf and on behalf of all Plaintiffs

Witnesses:

_____         _____
Printed name: _____                    NOTARY PUBLIC

_____
Printed name: _____

**DEFENDANTS:**

Sworn to and subscribed at _____, Louisiana, in the presence of the undersigned competent witnesses, and me, Notary Public, on this _____ day of _____, 2026.

Dated: _____         _____
                               BANANA BLOSSOM THAI CAFÉ, LLC

By: _____         Title: _____

Witnesses:

_____         _____
Printed name: _____                    NOTARY PUBLIC

_____
Printed name: _____

Sworn to and subscribed at _____, Louisiana, in the presence of the undersigned competent witnesses, and me, Notary Public, on this _____ day of _____, 2026.

Dated: _____         _____
                               RATTANASAK "JIMMY" CHOTIKARNKUL
                               individually

Witnesses:

_____         _____
Printed name: _____              _      NOTARY PUBLIC

_____
Printed name: _____

**APPROVED AS TO FORM:**

MOST & ASSOCIATES, L.L.C.                              BUTLER McDONALD

_____          _____
William Most (La. Bar No. 36914)                    John D. Perez (La. Bar No. 39302)
Hope Phelps (La. Bar No. 37259)                    Mark R. Ladd (La. Bar No. 30847)
201 St. Charles Ave., Ste. 2500 #9685           2450 Severn Ave., Suite 400
New Orleans, LA 70170                                   Metairie, LA 70001
Counsel for Plaintiffs                                       Counsel for Defendants


KENNETH C. BORDES, ATTORNEY AT LAW, LLC

_____
Kenneth C. Bordes (La. Bar No. 35668)
Abigail Floresca (La. Bar No. 41248)
3914 Canal St., New Orleans, LA 70119
Counsel for Plaintiffs

**EXHIBITS**

Exhibit A — List of Plaintiffs and Allocation Calculations

Exhibit B — Consent Judgment

Exhibit C — Stipulation of Dismissal with Prejudice