**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CONNOR PULLIAM, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-1341** |
| **BANANA BLOSSOM THAI CAFÉ, ET AL.** | **SECTION: "G"(5)** |

# ORDER

Plaintiffs Connor Pulliam, Eric Truong, Majella Villaeba, Katherine Templeton, Assata Simpson, and Pakanan Tonsakul (collectively, "Plaintiffs") bring this case, individually and on behalf of others similarly situated, against Defendants Banana Blossom Thai Café, LLC ("Banana Blossom") and Rattanasak Chotikarnul ("Jimmy Cho") (collectively, "Defendants") for allegedly violating the Fair Labor Standards Act ("FLSA"), retaliating against employees who complained of said violations, violating the Louisiana Wage Payment Act ("LWPA"), and other violations of Louisiana law.[1] Before the Court is the parties' "Joint Motion for Stipulated Judgment Preliminarily Approving Settlement and Release Agreement."[2] Having considered the motion, the memorandum in support, the record, and the applicable law, the Court defers its ruling on the motion pending further briefing as to the exact award to each Plaintiff, and the parties' calculation of the requested costs and attorneys' fee award.

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 66.

## I. Background

Plaintiffs filed this putative class action on June 30, 2025, alleging violations of the FLSA and Louisiana law.[3] Plaintiffs allege that they are all employees of Banana Blossom.[4] Further, Plaintiffs allege that Jimmy Cho, who owns Banana Blossom, "has engaged in persistent wage theft from his employees for years."[5] Specifically, Plaintiffs claim that Jimmy Cho refused to pay time-and-a-half for overtime, illegally deducted credit card fees from employees' tips, and required servers to participate in an illegal tip pool.[6]

Plaintiffs assert that, along with other unnamed plaintiffs, they are part of two classes of putative plaintiffs, which consist of "Putative Overtime Class Members" and "Putative Tip Pool Class Members."[7] Plaintiffs contend that Putative Overtime Class Members consist of:

> All non-exempt individuals who (1) are or were employed by Banana Blossom Thai Café, LLC at any point from three years prior to the date of filing this complaint up to and including the date of final judgment in this matter, (2) are either the Named Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b); and (3) worked more than forty hours in at least one workweek and were subject to Banana Blossom's blanket practice and/or policy of not paying overtime wages to employees working more than forty (40) hour per week.[8]

Plaintiffs aver that the Putative Tip Pool Class Members consist of:

> All non-exempt individuals who (1) are or were employed by Banana Blossom Thai Café, LLC at any point from three years prior to the date of filing this complaint up to and including the date of final judgment in this matter, (2) are either the Named

---

[3] Rec. Doc. 1 at 3.

[4] *Id.* at 1.

[5] *Id.*

[6] *Id.*

[7] *Id.* at 4–5.

[8] *Id.* at 4.

Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b); and (3) were subject to a tip credit being taken by Banana Blossom.[9]

Moreover, Plaintiffs assert that once the FLSA violations were brought to Defendants' attention Defendants retaliated against them by "imposing new restrictions on them and terminating benefits."[10] Further, Plaintiffs assert claims against Defendants under Louisiana law, contending that Defendants' actions amounted to: illegal fines due to the deduction of credit card processing fees from Plaintiffs' checks,[11] conversion and misappropriation of the monies wrongfully withheld from Plaintiffs' paychecks,[12] failure to pay wages,[13] and a violation of the Louisiana Unfair Trade Practices Act.[14]

On June 24, 2026, the Court granted Plaintiffs' "Motion for Collective Action Certification."[15] Following the collective action certification, five individuals opted-in to the collective action.[16]On August 13, 2026, the parties filed the instant motion for settlement approval.[17]

## <u>II. Parties' Arguments</u>

The parties contend that they have agreed to settle this matter for $900,000 pursuant to a

[9] *Id.*

[10] *Id.* at 22.

[11] *See* La. Rev. Stat. § 23:631.

[12] *See* La. Civ. Code art. 2315.

[13] *See* La. Rev. Stat. § 23:621, et seq.

[14] *See* La. Rev. Stat. § 51:1401, et seq.

[15] Rec. Docs. 31, 37.

[16] Camran White, Kaylen Marbry, Vincent Nguyen, Mariecar Garcia, Vera Garcia. Rec. Docs. 46, 65.

[17] Rec. Doc. 66.

"Settlement Agreement" ($536,437.64 to Plaintiffs,[18] $3,562.36 in costs, and $360,000 in attorneys' fees).[19] The parties note that the settlement was reached on the "eve" of trial after both sides had "taken the case through certification, Defendants' depositions, a granted motion to compel, and show-cause proceedings."[20] Moreover, the parties submit that both sides are represented by counsel and negotiated at arm's length.[21] The parties further contend that the settlement "resolves a bona fide dispute" over Plaintiffs' wage claims, overtime claims, their statutory penalty and liquidated damages claims, retaliation claims, Louisiana Unfair Trade Practices Act claims, conversion claims, attorneys' fees, and costs.[22]

The parties contend that the settlement fund is distributed among Plaintiffs by a formula that weighs two objective factors with regard to the violations and claims related to each timeframe: "each Plaintiff's length of employment during the Initial Violation Period which is June 30, 2022 through May 1, 2025, and each Plaintiff's length of employment during the [Class Period], which is May 2, 2025 to present."[23] "The Initial Violation Period is more heavily weighted than the [Class Period] (10% of the Initial Violation Period), as a majority of the conduct related to the claims ceased as of May 2025."[24]

---

[18] The parties do not include this exact figure in the motion. Instead, the Court calculated it by subtracting the costs and attorneys' fees from the total settlement amount outlined in the motion ($900,000 - ($3,562.36 + $360,000) = $536,437.64). *Id.* at 2.

[19] *Id.* There appears to by a typo on the motion stating that the settlement amount is "Nine Hundred Fifty Thousand and 00/100 Dollars ($900,000.00)." *Id.* at 1. Because the $900,000 settlement figure is consistent throughout the motion and its attachments, aside from the described error, the Court interprets the settlement amount as $900,000.

[20] *Id.* at 1; Rec. Doc. 66-1 at 1.

[21] Rec. Doc. 66 at 1.

[22] *Id.*

[23] Rec. Doc. 66-1 at 4.

[24] *Id.*

Turning to Plaintiffs' attorneys' fees and costs, the parties note that under both the FLSA and LWPA a prevailing employee is entitled to recover reasonable attorneys' fees and costs from the employer.[25] The parties submit that those fees and costs are negotiated and included in the agreed settlement amount, and those amounts are represented as $360,000 for attorneys' fees and $3,562.36 and costs to be included in the $900,000 settlement amount.[26]

As to the structure through which the settlement will be paid, the parties represent that Defendants will pay $250,000 up front and the remaining $650,000 in twelve monthly installments.[27] Therefore, the parties request that this Court retain jurisdiction until the settlement amount is paid in full.[28]

## **III. Law and Analysis**

### ***A. Legal Standard***

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."[29] If the settlement reflects "a reasonable compromise over issues," the court may approve it.[30] In such actions, the court "shall ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."[31]

---

[25] *Id.* (citing 29 U.S.C. § 216(b); La. Rev. Stat. § 23:632(C)).

[26] *Id.* at 5.

[27] *Id.*

[28] *Id.*

[29] *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Emp't Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982) (citations omitted); *see also* 29 U.S.C. § 216(b).

[30] *Villegas v. Regions Bank*, No. H–11–904, 2013 WL 76719, at *2 (S.D. Tex. Jan. 4, 2013).

[31] 29 U.S.C. § 216(b)

### *B. Analysis*

#### 1. Unpaid Overtime, Unlawfully Retained Tips, Retaliation, and Liquidated Damages

The FLSA provides for actual damages in unpaid overtime wages, as well as an "additional equal amount as liquidated damages."[32] "A district court may decline to award liquidated damages if the court finds that the employer acted in good faith and had reasonable grounds to believe that its actions complied with the FLSA."[33]

The Settlement Agreement provides for payments to Plaintiffs totaling $536,437.64.[34] This amount "resolves the wage claim and the liquidated damages and penalty claims that the Fair Labor Standards Act, the Louisiana Wage Payment Act, the Louisiana Unfair Trade Practices Act, and retaliation violations that resulted and persisted attached to that conduct."[35] The individual award for each Plaintiff is calculated as follows:

1. Each Plaintiff's length of employment during the Initial Violation Period is divided by the longest length of employment among all Plaintiffs, producing a ratio between zero and one.

2. Each Plaintiff's length of employment during the Class Period is divided by ten times the longest length of employment among all Plaintiffs, producing a ratio between zero and point one (0.10).

3. The two ratios are added to produce that Plaintiff's individual weighted score.

4. Each Plaintiff's share is that Plaintiff's individual weighted score divided by the sum of all individual weighted scores.[36]

---

[32] *Black v. SettlePou, P.C.*, 732 F.3d 492, 501 (5th Cir. 2013) (citing 29 U.S.C. § 216(b)); *see also Ransom v. M. Patel Enters, Inc.*, 734 F.3d 377, 387 (5th Cir. 2013) (citing 29 U.S.C. § 216(b)).

[33] *Black*, 732 F.3d at 501 (citation and internal quotation marks omitted).

[34] Rec. Doc. 66 at 2.

[35] Rec. Doc. 66-1 at 1.

[36] Rec. Doc. 66-3 at 5. The "Initial Violation Period" ran from June 30, 2022 through May 1, 2025, and the "Class Period" ran from May 2, 2025 to the August 13, 2026.

Applying this formula will result in a settlement award for each Plaintiff. Further, although Plaintiffs' original claims include liquidated damages, costs, and attorneys' fees, the parties have agreed that these amounts are included in the total $900,000 settlement amount.[37] However, the parties do not provide the exact award that will be given to each Plaintiff if this settlement is approved. Accordingly, the Court hereby orders the parties to provide additional briefing on this issue.

**2. Reasonable Attorneys' Fees**

"Determining a reasonable attorney's fee is a matter that is committed to the sound discretion of a trial judge, . . . but the judge's discretion is not unlimited."[38] The burden is on the plaintiff to demonstrate the amount of attorney's fees, including any adjustment or enhancement.[39] A court abuses its discretion when it awards attorney's fees without "a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement."[40]

Courts in the Fifth Circuit engage in a two-step process to assess attorney's fees arising under the FLSA.[41] First, a lodestar is calculated by multiplying the number of hours reasonably

---

[37] Rec. Doc. 66-1 at 4.

[38] *Perdue v. Kenny A. ex. rel. Winn,* 559 U.S. 542, 558 (2010) (internal quotations and citations omitted).

[39] *Jackson v. Host Int'l, Inc.*, 426 F. App'x 215, 225 (5th Cir. 2011).

[40] *Perdue*, 559 U.S. at 558.

[41] Traditionally, courts have considered the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) when calculating attorney's fees. In *Perdue,* the Supreme Court noted that the *Johnson* factors were "[o]ne possible method" for determining reasonable attorney's fees, but that the factors "gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." 559 U.S. at 550–551. Since *Perdue*, however, the Fifth Circuit and the Eastern District of Louisiana have continued to weigh the *Johnson* factors when considering whether to decrease or enhance the lodestar in FLSA attorney's fee cases. *See, e.g., Ransom,* 734 F.3d at 388; *Black,* 732 F.3d at 502; *J & J Sports Prods., Ins. V. Evolution Entm't Grp., LLC,* No. 13-5178, 2014 WL 6065601, at *4 (E.D. La. Nov. 12, 2014) (Morgan, J.). Accordingly, this Court does the same. *See Ahmed v. Bros. Food Mart, et al*., No. 13-5948, Rec. Doc. 33 (E.D. La. Sept. 12, 2014) (Brown, J.).

expended by an appropriate hourly rate in the community for such work.[42] "[T]here is a strong presumption that the lodestar figure is reasonable."[43] However, after calculating the lodestar, a district court may decrease or enhance the amount of attorney's fees based on the relative weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*[44] The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar award already took that factor into account.[45] Such reconsideration is "impermissible double-counting."[46]

A lodestar reduction may be warranted by a plaintiff's failure to demonstrate billing judgment following settlement of a FLSA claim. In *Saizan,* the Fifth Circuit explained:

> [p]laintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment. Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant. The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgement.[47]

The parties merely submit that Plaintiffs are entitled to attorneys' fees and that they have "agreed that attorney's fees . . . are resolved and are represented as" $360,000 of the $900,000

---

[42] *Perdue,* 559 U.S. at 546.

[43] *Id.* at 553–54.

[44] *Black,* 732 F.3d at 502 (citing *Johnson,* 488 F.2d at 717–19). The *Johnson* factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

[45] *Saizan v. Delta Concrete Products Co.,* 448 F.3d 795, 800 (5th Cir. 2006) (citation omitted).

[46] *Id.*

[47] *Id.* at 799.

amount.[48] However, the parties provide no explanation as to how they reached their calculation of attorneys' fees, except that the parties agreed to that amount. The parties do not provide the Court with any information regarding the hourly rates charged by counsel or the total number of hours expended on this case. Therefore, the Court cannot determine whether the proposed attorneys' fee is reasonable considering the time expended by counsel. Accordingly, the Court will defer its decision on the fairness of the settlement pending further briefing as to the parties' calculation of the attorneys' fee award.

**3. Costs**

Finally, the parties assert that costs in this matter total $3,562.36.[49] However, the parties provide no breakdown as to the specific costs incurred that add up to the total amount requested.

In an action against an employer for unpaid minimum wages or unpaid overtime wages, the Court "shall . . . allow . . . costs of the action."[50] Because the parties do not provide the details necessary to confirm the requested costs the Court will defer its decision on the fairness of the settlement pending further briefing as to the parties' calculation of the costs award.

## IV. Conclusion

For the reasons stated above, the Court defers its decision on the fairness of the settlement pending further briefing as to the exact award to each Plaintiff, and the parties' calculation of the requested costs and attorneys' fee award. Accordingly,

**IT IS HEREBY ORDERED** that the parties further brief the Court on their calculations of each Plaintiff's individual award, the attorneys' fee award, and the costs award.

---

[48] Rec. Doc. 66-1 at 4–5.

[49] *Id.* at 5.

[50] 29 U.S.C. § 216(b)

**IT IS FURTHER ORDERED** that the parties provide such additional briefing by September 4, 2026.

**NEW ORLEANS, LOUISIANA**, this 17th day of August, 2026.

Nannette Jolivette Brown

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**